# EXHIBIT B-6

YSCEF DOC. NO. 9

RECEIVED NYSCEF: 08/31/202

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

In re:  All Plaintiffs in CHILD VICTIMS ACT NYC
LITIGATION v. In re: All Defendants in CHILD VICTIMS
ACT NYC LITIGATION

Index №.    950000/2020

GEORGE J. SILVER, J:

Upon the court's own motion, it is hereby

ORDERED that the Clerk of Court, New York County, is directed to issue, without fee, a Master Index Number for the sole purpose of adjudicating a forthcoming Order to Show to Cause Issue challenging the contents of this court's Confidentiality Order dated September 18, 2020. The Master Index number will be used solely for the purpose of accepting the forthcoming Order to Show Cause and any responsive papers related thereto. For management purposes, the Master Index Number, and pleadings and papers accompanying it, shall bear the caption "In re: All Plaintiffs in CHILD VICTIMS ACT NYC LITIGATION v. In re: All Defendants in CHILD VICTIMS ACT NYC LITIGATION." The Master Index number assigned to the forthcoming Order to Show Cause in New York County shall be "950000/2020," and shall be created in the New York State Courts Electronic Filing ("NYSCEF") system. However, while the Master Index number relates to the general challenge to the court's Confidentiality Order, any papers or pleadings having specific application to an individual action shall be filed under the individual case caption and index number related to that action.

The court directs that only documents, applications and responsive papers related to the forthcoming Order to Show Cause be e-filed via NYSCEF under this Master Index number and any documents which do not apply or relate to such shall not be addressed and will be deleted.

The foregoing constitutes the decision and order of this court.

Dated:  October 14, 2020

GEORGE J. SILVER, J.S.C.

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2



SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
------------------------------------------------------------ x
                                                             :
                                                             :
                                                             :      **CONFIDENTIALITY ORDER**
**In re: CHILD VICTIMS ACT LITIGATION** :
                                                             :      **CASE MANAGEMENT**
                                                             :      **ORDER ("CMO") No. 2**
                                                             :
                                                             :
------------------------------------------------------------ x


**CONFIDENTIALITY ORDER**
**Pursuant to Sec. IX of CMO 2**


WHEREAS this court finds good cause exists for the issuance of this confidentiality order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and

WHEREAS this confidentiality order shall remain in effect unless otherwise modified;

IT IS HEREBY ORDERED that all persons and entities subject to this order – including without limitation the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

**I.      Applicability.**

1.      The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

2.      Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

3.      Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this

SCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

order regardless of whether the non-party is or becomes bound by the terms of this order.

## II.    Use and Disclosure of Confidential Discovery Materials.

1.    No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim.  The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation.  Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation.  In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation.

2.    Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information.  Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order.  Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

3.    The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III.    Confidential Designation.

1.    Any party may designate all or portions of Discovery Materials as "Confidential Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

a.    "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically, medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. Gen. Bus.

2

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b.     "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein. Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information. Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition. Where it would not be cost effective or would be burdensome, however, the Producing

YSCEF DOC. NO. 8                                                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2.   <u>Depositions</u>.  When a deposition includes the disclosure of Confidential Information:

    a.   Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation.  During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information.  The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

    b.   The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3.   <u>Documents</u>.  With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4.   <u>Electronically Stored Information</u>.  Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION."  If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

4

YSCEF DOC. NO. 8                                      RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

### IV.    Disclosure of Confidential Information.

Confidential Information will not be disclosed by the Receiving Party except as permitted by this order.

1.    <u>Permissible Disclosures.</u>  A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

   a.    the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers;

   b.    such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

   c.    the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

   d.    the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

   e.    the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms;

   f.    a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

   g.    any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

   h.    this court, including any appellate court, its support and administrative personnel; and

SCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

        i.      any court reporter and associated support staff employed in this litigation.

2.    <u>Authorized Disclosures.</u>  A Receiving Party may disclose Confidential Information if: (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3.    <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates.</u>  Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4.    <u>Challenges to Designation as Confidential Information.</u>  A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection. The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed. If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer. The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing. In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later. "Writing" and "written notice" shall include electronic communications.

YSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## V.    Identities of Abuse Survivors.

1.    <u>Possible Abuse Survivors Who Are Plaintiffs and/or Who Are Otherwise Represented by Counsel.</u>

a.    Where a document contains the name of a Plaintiff who has filed suit under a pseudonym, the Producing Party shall redact the name and replace it with the pseudonym.  The Producing Party shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by pseudonym and identify the attorneys representing each of them.  Any such list is Confidential Information.

b.    Where a document references the name of a Plaintiff who has filed suit in his or her own name, the Producing Party shall produce the document without redaction but shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by their name and identify the attorneys representing each of them.  Any such list is Confidential Information.

c.    Where a document references the name of a person who may be a survivor of child sex abuse, but the Producing Party is not aware that the person has filed suit, the Producing Party shall redact the person's name and replace it with a unique "Doe code" that allows the person to be tracked across documents.  However, if the Producing Party is on notice that such a person may be represented by counsel, the Producing Party will simultaneously produce to the Receiving Party's counsel a list of these individuals by Doe code and identify the attorneys representing them.  Any such list is Confidential Information.

d.    No party or their counsel will contact a Plaintiff or a person identified by a "Doe code" who is represented by counsel unless permission to do so is given by that Plaintiff or person's counsel.  Rather, any party or their counsel who believes in good faith that contacting a Plaintiff or person identified by a "Doe code" is important to the party's claim or defenses may do so only through contact with the attorney representing that Plaintiff or person identified by a "Doe code."

e.    If permission to speak with the Plaintiff or person identified by a "Doe code" is denied or not responded to within a reasonable time, a party or their counsel may ask the court and/or other designated personnel appointed by the court for such communication.

2.    <u>Possible Abuse Survivors Who Are Not Represented by Counsel.</u>

7

YSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

a.  If a Producing Party does not believe that a person identified by a "Doe code" is represented by counsel, the Producing Party will create a list of the "Doe codes" for such persons with a key that contains the true names and identifying information for these individuals (the "Unrepresented Survivors List"). Any such list is Confidential Information but shall not be shared with anyone other than the court and/or other designated personnel appointed by the court.

b.  A party or their counsel may seek to contact an Unrepresented Survivor on the Unrepresented Survivors List through the following procedure:

    i.  The party or their counsel must submit an email or letter to the court and/or other designated personnel appointed by the court that sets forth their good faith belief that an Unrepresented Survivor may have discoverable information for the party's case. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be copied on the email or letter to the court and/or other designated personnel appointed by the court.

    ii.  The court and/or other designated personnel appointed by the court, after conferring with Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to understand if there are other parties who wish to speak to the same person, shall contact the Unrepresented Survivor, explain that information is being sought to assist with a party's claims or defenses, and inquire if the Unrepresented Survivor has any objection to being contacted.

    iii.  If the Unrepresented Survivor agrees to be contacted, the court and/or other designated personnel appointed by the court shall so advise the requesting party or their counsel by email or letter, and copy Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. The court and/or other designated personnel appointed by the court shall also advise the requesting party or their counsel of the Unrepresented Survivor's preferred means of being contacted.

    iv.  If an Unrepresented Survivor advises the court and/or other designated personnel appointed by the court that he or she does <u>not</u> want to be contacted, the court and/or other designated personnel appointed by the court shall advise the party or their counsel who made the request, by email or letter, with a copy to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Thereafter, the court and/or

YSCEF DOC. NO. 8                                                RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

other designated personnel appointed by the court shall provide the full name and last known address of the Unrepresented Survivor to the party or their counsel who made the request and to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Upon being provided with the identity of the Unrepresented Survivor, the parties in the action in which the relief is sought, Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel will coordinate the issuance and service of a subpoena on the Unrepresented Survivor in order to avoid duplicative subpoenas and to lessen any burden or hardship that such subpoena may cause to an Unrepresented Survivor.    Other than service of the subpoena, no party or their counsel, or anybody acting on their behalf, may contact the Unrepresented Survivor prior to the deposition pursuant to the subpoena.

v.     Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be charged with coordinating, to the extent practicable, all motions, subpoenas, and depositions concerning Unrepresented Survivors in order to avoid duplicative motions and to lessen any burden or hardship that such motions or subpoenas may cause to an Unrepresented Survivor.

vi.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be given at least 20 days' notice by email of any deposition that may be noticed of an Unrepresented Survivor for the purpose of coordinating attendance at the deposition by other parties who have claims or defenses where information possessed by the Unrepresented Survivor may be discoverable and minimizing, to the extent practicable, any burden on the Unrepresented Survivor.

vii.   The court and/or other designated personnel appointed by the court shall maintain a copy of deposition transcripts of Unrepresented Survivors so the transcripts may be used by other parties with claims or defenses where the transcript may contain discoverable information.

c.    Nothing contained herein shall prevent a party or their counsel from contacting a person where the identity of the person was learned through sources other than documents produced pursuant to this Section.

YSCEF DOC. NO. 8                                                              RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## VI.    Procedures for Filing Confidential Discovery Materials with the Court.

1.    If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action.  The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2.    Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Party shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission.  If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer.  Any party may use its portion of any such joint letter to request full briefing of the dispute.  The Moving Party shall be responsible for submitting the joint letter to the court.

3.    Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling.  If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4.    Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

## VII.    Inadvertent Disclosure.

a.    Confidential Information.  If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation.  The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b.    Privileged Materials.  If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney

YSCEF DOC. NO. 8                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

work product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.   Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure.  In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.  Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii. If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information.  Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.   Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing

[SCEF DOC. NO. 8                                                          RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Party. Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the privileged content during the course of this matter.

## VIII.  Additional Provisions

1.  Prior Bad Acts, Subsequent Bad Acts and Corrective Measures. Generally, consistent with the substance of this order, records of: 1) prior bad acts, not limited to previous accusations of sexual abuse, against an alleged sexual abuse perpetrator; or 2) subsequent bad acts, not limited to consequent accusations of sexual abuse, by an alleged sexual abuse perpetrator and corrective measures by an institution, are discoverable, and will be disclosed upon request.

2.  Treatment of Discovery Materials Upon Termination of Action. Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until  sixty (60) days after all such claims are terminated, including any appeals.  Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action.  Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

3.  No Waiver.  Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of:  (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence.  In addition, nothing in this order

YSCEF DOC. NO. 8                                              RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4.    <u>Non-Applicability of Order</u>.  The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information has become public in violation of this order.  No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5.    <u>Notices</u>.  Transmission by electronic mail is acceptable for all notification purposes under this order.

6.    <u>Modification</u>.  This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court.  The court reserves the right to modify this order for any reason that the court deems appropriate.

7.    <u>Duration.</u>  This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8.    <u>Survival</u>.  After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record.  This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

Dated:  September 18, 2020

_George J. Silver_
GEORGE J. SILVER, J.S.C.

(SCEF DOC. NO. 8

RECEIVED NYSCEF: 08/31/202

**Exhibit A**                                        CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I, _____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order. I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted. I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [                    ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.


Dated:_____           Signature: _____
                                  Printed Name: _____

14

YSCEF DOC. NO. 10                                    RECEIVED NYSCEF: 08/31/202

**SUPREME COURT OF THE STATE OF NEW YORK COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND**

|  |  |
|---|---|
| : | |
| : | |
| : | **DECISION AND ORDER RE:** |
| : | |
| In re: **CHILD VICTIMS ACT LITIGATION** : | **CONFIDENTIALITY ORDER** |
| : | |
| : | **CASE MANAGEMENT** |
| : | **ORDER ("CMO") No. 2** |

The following motions are decided in accordance with the attached decision and order of the Court:

| Index 950950/2020 | Seq. 001 (Motion & Cross-Motion) |
|---|---|
| Index 950000/2020 | Seq. 002 |
| Index 950000/2020 | Seq. 003 |
| Index 950000/2020 | Seq. 004 |
| Index 950000/2020 | Seq. 005 |
| Index 950000/2020 | Seq. 006 |
| Index 950000/2020 | Seq. 007 |
| Index 950000/2020 | Seq. 009 |
| Index 950000/2020 | Seq. 001 |
| Index 999999/2020 | Seq. 002 |
| Index 999999/2020 | Seq. 003 |
| Index 999999/2020 | Seq. 004 |
| Index 999999/2020 | Seq. 005 |
| Index 999999/2020 | Seq. 006 |
| Index 999999/2020 | Seq. 001 |
| Index 70061/2020E | Seq. 001 |
| Index 950137/2019 | Seq. 003 |
| Index 512321/2020 | Seq. 005 |
| Index 502720/2020 | Seq. 001 |
| Index 400044/2020 | Seq. 001 |

The Court further directs that a copy of this decision and order be uploaded to all existing, and future, cases being litigated under the Child Victims Act (L. 2019 c.11) ("CVA") in the Supreme Court of the State of New York in the counties of Bronx, Kings, New York, Queens, and Richmond.

**Dated:** March 30, 2021                **Hon.** *George J. Silver*

                                GEORGE J. SILVER, J.S.C.

1. CHECK ONE.................................... ☐ CASE DISPOSED IN ITS ENTIRETY  ■ CASE STILL ACTIVE

2. MOTION IS....................................... ☐ GRANTED  ☐ DENIED  ■ GRANTED IN PART  ☐ OTHER

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
-------------------------------------------------------------- x
                                            :

                                            :     **DECISION AND ORDER RE:**

**In re: CHILD VICTIMS ACT LITIGATION** :

                                            :     **CONFIDENTIALITY ORDER**

                                            :

                                            :     **CASE MANAGEMENT**

                                            :     **ORDER ("CMO") No. 2**
-------------------------------------------------------------- x

       With the instant application, defendants in cases filed under the Child Victims Act (L. 2019 c.11) ("CVA") in New York City move to vacate and/or modify this court's Confidentiality Order issued in conjunction with the litigation. In opposition, plaintiffs prosecuting cases under the CVA in New York City argue that this court's Confidentiality Order should stand without major modification.

## BACKGROUND

       In 2019, New York State enacted the CVA which, *inter alia*, (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18 (*see* CPL §30.10 [f] ); (2) extended the time which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years old (*see* CPLR §208[b]); and (3) opened a one-year window reviving civil actions for which the statute of limitations has already run (even in cases that were litigated and dismissed on limitations grounds), commencing six months after the effective date of the measure, i.e. August 14, 2019 (*see* CPLR §214-g).[1]

       When enacting the CVA, New York's Legislature did not create a comprehensive set of procedural rules and discovery standards for how cases would be litigated under the statute. Recognizing this, shortly after the revival period opened, the court appointed a CVA Steering

---

[1] Due to the COVID-19 public health emergency, on May 8, 2010, New York Governor Andrew Cuomo ("Governor Cuomo") issued an executive order extending the look back window for victims to file claims under the Child Victims Act until January 14, 2021. On August 3, 2020, Governor Cuomo signed into law an additional extension of the special filing period by a full year. Claims under the statute can now be filed until August 14, 2021.

YSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 08/31/202

Committee, consisting of defense attorneys representing institutional CVA defendants ("DLC") and plaintiffs' attorneys representing numerous CVA plaintiffs ("PLC") in actions in the Supreme Court for Bronx, Kings, New York, Queens, and Richmond Counties, to liaise between the court and all CVA counsel. Thereafter, on February 24, 2020, the court issued Case Management Order No. 1 ("CMO 1"), which "applies to all actions filed or hereafter filed in the Supreme Court in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the [CVA]." Then, on June 18, 2020, the court issued Case Management Order No. 2 ("CMO 2"), annexing to it as Exhibit C, the "Standard Automatic Disclosures Directed at Defendants," which set forth broad categories of documents to be produced by CVA defendants subject to objection. Section IX(A)(1) of CMO 2 directed the DLC and PLC to either jointly submit a proposed Confidentiality Order or to submit alternate proposals to the court by June 22, 2020 and stayed CVA defendants' disclosure obligations pending entry of a Confidentiality Order.

On June 22, 2020, the DLC and PLC each submitted their proposals with accompanying letter briefs. The court then held two conferences regarding the parties' submissions and entertained oral argument by the respective liaison committees. Following the second conference held on September 10, 2020, the DLC submitted a second letter brief on September 11, 2020. On September 18, 2020, the court issued the Confidentiality Order.

## ARGUMENTS

With the instant application the DLC, and additional defendants, seek to vacate or modify the Confidentiality Order by arguing that it improperly abrogates defendants' statutory, common law, and federal and state constitutional rights in excess of the authority of this court.

### I.    Section VIII(1)

Most prominently, defendants contend that Section VIII(1) of the Confidentiality Order improperly and prematurely ruled that records concerning (i) prior and subsequent undefined "bad acts" by "an alleged sexual abuse perpetrator" and (ii) subsequent "corrective measures" taken by an institutional defendant "are discoverable, and will be disclosed upon request." More specifically, the DLC challenges Section VIII(1) of the Confidentiality Order by arguing that it "goes out of its way to direct disclosure of records regarding subsequent corrective measures that are not permitted under New York State law and the disclosure of which would constitute an improper invasion and intrusion of religious institutional CVA [d]efendants' First Amendment rights." In addition, the DLC contends that Section VIII(1) lacks specificity with respect to what constitutes a "bad act," and whether that term broadly applies to conduct unrelated to allegations of child sex abuse. Because Section VIII(1) directs disclosure without affording parties the right to object, and move for a protective order, the DLC states that it runs athwart of defendants' rights to due process and liberty.

In opposition, the PLC contends that the Confidentiality Order's requirement that defendants produce records of an alleged abuser's other "bad acts" is entirely consistent with the CVA and CPLR §3101(a)'s liberal discovery standard. Citing authorities in both the First and Second Department, the PLC avers that where there is any possibility that requested information may be used as evidence-in-chief, in cross-examination, or on rebuttal, it is deemed material for

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

discovery purposes, and therefore should be disclosed (*see e.g., First Equity Realty v. Harmony Group, II*, 129 NYS3d 777, 777 [1st Dept 2020]; *Matter of Metro-North Train Accident of Feb. 3, 2015*, 178 AD3d 931, 933 [2d Dept 2019]). The PLC further emphasizes that courts have long recognized the distinct standards that govern the discoverability and admissibility of evidence – and, critically, that "[p]retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof" (*Fell v. Presbyterian Hosp. in N.Y. at Columbia-Presbyterian Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983]).

In accordance with liberal disclosure rules, the PLC emphasizes that courts have repeatedly held that documents and information about prior and subsequent incidents, as well as remedial efforts taken, may be discoverable under CPLR §3101's liberal standard – even if ultimately inadmissible at trial (*see, e.g. Bigman v. Dime Sav. Bank, FSB*, 153 AD2d 912, 914 [2d Dept 1989]). The PLC underscores that "it is inconceivable that records of an abuser's 'prior bad acts' and 'subsequent bad acts' would not be useful in the context of…negligent retention, negligent hiring, or negligent supervision claims." Where, as here, the concern at issue is one of discoverability, rather than admissibility, the PLC contends that plaintiffs should be entitled to the disclosure of the records deemed discoverable by this court in its Confidentiality Order.

Even so, the DLC retorts by emphasizing that discovery of "bad acts" should be specifically defined by this court, and should encompass only prior incidents of child sexual abuse rather than broadly defined prior "misconduct" that may be wholly irrelevant to the claims at issue in a particular lawsuit. Moreover, defendant Diocese of Brooklyn, and other religious entities, contend that the Confidentiality Order's requirement of the disclosure of subsequent corrective measures impinges upon canon law, and the decision-making process of religious groups that may find themselves tasked with the responsibility of having to fire one of their ministers.[2]

Furthermore, certain defendants within the sphere of education seek to shield the production of records of "bad acts" and "corrective measures" by invoking the Family Educational Rights and Privacy Act of 1974 ("FERPA," or the "Buckley Amendment"), a federal statute which protects student "education records" from disclosure without their knowledge and/or consent.

In response, the PLC highlights that the Appellate Division, Second Department, has expressly held that disciplinary records, including a perpetrator's other instances of "violent and assaultive behavior," are relevant and thus discoverable as to whether an educational institution failed to adequately supervise that perpetrator (*see, e.g., Graham v. West Babylon Union Free Sch. Dist.*, 262 AD2d 605, 606 [2d Dept 1999] ["records of any past instances of violent and assaultive behavior on the part of the defendant Marc Maggio clearly would be relevant to the plaintiff's claim that the defendant West Babylon Union Free School District failed to adequately supervise Maggio"]).

The PLC also posits that the Appellate Division, Second Department, has elaborated that complaints or records of prior incidents are not even considered "education records" that warrant protection under FERPA (*Culbert v. City of New York*, 254 AD2d 385, 387 [2d Dept 1998]). To

---

[2] Defendant Diocese of Brooklyn elaborated on their arguments concerning the nuanced church-state issues of First Amendment jurisprudence at oral argument on December 16, 2020 through arguments proffered by Mark E. Chopko, Esq.

YSCEF DOC. NO. 10                                              RECEIVED NYSCEF: 08/31/202

be sure, courts have interpreted FERPA's definition of "education records" (i.e., "information directly related to a student") to include only "records relating to an individual student's performance," and not records compiled to "maintain the physical security and safety of the agency or institution" (*see Culbert*, 254 AD2d at 387). As such, plaintiffs maintain that FERPA does not apply to the disclosure of reported complaints of abuse within an educational setting.

Even assuming that FERPA does apply, the PLC argues that disclosure of educational records is still warranted where a court has expressly ordered the production of such records (*see e.g., Staten v. City of New York*, 90 AD3d 893, 895 [2d Dept 2011]). Where privacy concerns of students are weighed against the requesting parties' need for information, the PLC contends that the requesting parties' need for information should prevail, without question, since the information requested is relevant to the issue of an institution or employer's knowledge of an abuser's propensity for sexual misconduct – a necessary element of negligent retention, hiring, and supervision claims.

Beyond the observations above, City defendants contend that the necessity to disclose prior and subsequent incidents of alleged sexual abuse would necessarily require them to violate Section 50-b of the Civil Rights Law, which protects the identities of victims of sex crimes, thereby placing the City defendants at risk for additional civil liability. Specifically, under Section 50-b, "the identity of any victim of a sex offense" shall be confidential, including that no public officers or employees shall disclose any document "which tends to identify such a victim" unless an exception applies (Civil Rights Law §50-b[1]). City defendants argue that this court's Confidentiality Order defies the mandates of Section 50-b, and imposes upon them a disclosure requirement at odds with existing law.

In opposition, the PLC argues that City defendants' generalized reference to Section 50-b is overbroad as many of the requested documents plaintiffs are seeking do not actually identify a victim of a sex crime, and therefore fall outside the ambit of the statute. In addition, to the extent that any requested documents do, in fact, identify a sex crime victim, the PLC avers that plaintiffs may still be entitled to disclosure under Section 50-b(2)(b), upon a showing of good cause for discovery and upon notice to the identified victim and public officer charged with prosecuting the offense.

City defendants and foster care defendants also cite a variety of disparate, mutually-exclusive laws and court rules that address the protection of certain records, such as foster records. However, in opposition the PLC emphasizes that such laws must yield to court orders requiring the disclosure of such records. Where, as here, the court has provided that a category of records, including foster care records, should be disclosed, the PLC argues that defendants must comply with the court's directives or raise a particularized objection.

Finally, defendant Rockefeller University, an institution that houses a large volume of medical records, argues that requiring it to disclose prior bad acts and subsequent corrective measures would violate the Health Insurance Portability and Accountability Act ("HIPAA"), the New York State Mental Hygiene Law, or any other medical privileges by requiring the production of protected health information. In opposition, the PLC argues that the Confidentiality Order protects the privacy and other interests of third parties by requiring each defendant to redact the

4

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

names of likely abuse survivors who have not filed a lawsuit of their own and who are not represented by counsel. Moreover, the PLC contends that where privileged health information is found to be "material and necessary," it may be disclosed if "circumstances warrant overcoming the privilege" (*Cole v. Panos* [128 AD3d 880 [2d Dept 2015]). In the case of defendant Rockefeller University, the PLC also underscores the fact that most of the information sought by a plaintiff may not be health information at all, such as complaints or concerns that a health care provider was sexually abusing patients. In the PLC's view, such complaints or concerns may not be health information in the first instance because they are not about the person's health care, were not made for their care or treatment, and were not intended to be confidential or to remain confidential.

## II.    Sections II(1), III(1)(a), and IV(1)(a)

Next, defendants argue that Sections II(1) and IV(1)(a) of the Confidentiality Order improperly entitle a plaintiff in one CVA action to confidential discovery produced in another CVA action merely because they are suing the same party regardless of whether different alleged abusers, locations, and years of alleged abuse are involved. Since the CVA actions at issue are usually not consolidated class actions or coordinated mass torts, defendants aver that the sharing of wholly irrelevant, immaterial, and unnecessary records among disparate and diverse CVA actions confuses the record by becoming the subject of needless deposition testimony and impertinent expert opinion. Accordingly, the DLC asks for this court to vacate Sections II(1) and IV(1)(a) to prevent the sharing of discovery beyond the litigation in which it is exchanged.

In addition, the DLC submits that Section III(1)(a) of the Confidentiality Order should include information of a personal nature as being encompassed within the meaning of "Confidential Information." The DLC contends that the absence of information of a personal nature, which would cover the likes of occupational and educational records, when defining "Confidential Information" opens the door for the disclosure of a deluge of categories of information in several CVA lawsuits from disparate parties and non-parties. To protect against that, defendants submit that Section III(1)(a) should be modified to include information of a personal nature so that categories of information such as occupational and educational records are not automatically subject to disclosure while only the most sensitive information, for which a confidential designation is appropriate, is protected from disclosure.

In opposition, the PLC contends that "[w]here it is widely known these horrific acts were committed by serial abusers and systematically concealed by these institutions, the substantial overlap of common records and testimony calls out for parties to share information in specified instances, thereby avoiding a tremendous waste of time and resources." To be sure, the PLC contends that information sharing "would level the information disparity between victims and these large institutions." The PLC highlights that in Section 10 of the CVA, the legislature specifically directed the chief administrator of the courts to "promulgate rules for the timely adjudication of revived actions brought pursuant to section two hundred fourteen-g of the civil practice law and rules" (N.Y. Judiciary Law § 219-d). In the PLC's view, "[t]here is no question that a prohibition on discovery-sharing, as urged by defendants, would needlessly frustrate this statutory goal, thereby resulting in protracted and costly litigation."

YSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 08/31/202

Second, the PLC contends that discovery-sharing supports the CVA's goal of case coordination. For instance, the PLC states that where a coordinated deposition of a defendant representative is requested, discovery-sharing could promote efficiency by allowing all plaintiffs who have filed claims against that same defendant to participate in the deposition. Third, the PLC emphasizes that discovery-sharing also better ensures consistency in discovery responses for all plaintiffs suing common defendants by guaranteeing matching disclosures across the board. Finally, the PLC highlights that discovery sharing has been endorsed in clergy cases litigated in the states of California and Washington. In addressing defendants' concerns about unfettered disclosure, the PLC underscores that the Confidentiality Order explicitly directs all persons receiving confidential information to maintain that confidentiality.

### III.    Section IV(4)

Next, the DLC argues that Section IV(4) of the Confidentiality Order improperly imposes an obligation on defendants to justify confidentiality and privilege designations. The DLC avers that the general practice in New York regarding challenges to confidentiality and privilege designations permits the receiving party to seek relief by motion to de-designate challenged information. By contrast, the DLC posits that the Confidentiality Order improperly sets up a system by which the producing party is required to seek judicial relief each time a receiving party disagrees with a designation, almost certainly guaranteeing motion practice will follow. Were the court to modify its Confidentiality Order to require the receiving party to incur the litigation costs of moving to lift a confidentiality designation, the DLC argues that motion practice would be decreased. The DLC notes that several institutional defendants are required to designate third-party information, such as records covered by a patient-physician privilege, as confidential. Were a plaintiff to arbitrarily disagree that such records are confidential, the DLC argues that it would be placed in the unenviable situation of having to move for relief that otherwise would seem self-evident.

In opposition, the PLC argues that the Appellate Division, First Department, has made it clear that CPLR §3101(a)'s liberal standard for discovery is intended to facilitate public access to court proceedings and records (*see e.g.*, *MSCI Inc. v. Jacob*, 120 AD3d 1072, 1075 [1st Dept 2014] ["New York strongly encourages open and full disclosure as a matter of policy"]).Given this presumption of openness and full disclosure, the PLC emphasizes that it naturally follows that an individual or entity seeking a protective order bears the initial burden to establish that any specified information should be protected from discovery (*see e.g.*, *Liberty Petroleum Realty, LLC v. Gulf Oil, L.P.*, 164 AD3d 401, 403-404 [1st Dept 2018][affirming that a party seeking a protective order "bears the initial burden to show that the information sought is irrelevant or that the process will not lead to legitimate discovery and, only then does the burden shift to the subpoenaing party to demonstrate that the information sought is material and necessary" and noting that the inverse rule of "plac[ing] the initial burden on the party seeking disclosure" would be inconsistent with New York law]). The PLC contends that Section IV(4) is consistent with that principle insofar as the Confidentiality Order provides that a producing party designating certain information as confidential, "will have the burden of justifying the propriety of its designation" in the face of any challenge (*see* Confidentiality Order, §IV[4]).

YSCEF DOC. NO. 10                                          RECEIVED NYSCEF: 08/31/202

The PLC argues that defendants' attempt to reverse this presumption "is entirely unsupported by law or logic." First, the PLC underscores that courts have expressly held that parties who label information as "confidential" bear the burden of justifying those designations Next, the PLC emphasizes that if the inverted rule urged by defendants were adopted, nothing would prevent defendants from designating each and every document as confidential, thereby forcing plaintiffs to undertake to unseal the entirety of its production. This, in the PLC's estimation, is "the exact opposite of openness and accessibility." Finally, the PLC avers that defendants' potential to designate discoverable documents as confidential may well thwart the aims at efficiency contemplated by the Confidentiality Order, including a process to avoid numerous, duplicative motions for a protective order or to compel.

## IV.    Section V

The DLC next contends that Section V of the Confidentiality Order imposes broad unconstitutional duties on defendants that are contrary to the CPLR and vitiates defendants' rights, privileges, and protections under the CPLR, including their work product privilege. To be sure, the DLC argues that defendants are subject to disparate and varying laws and regulations that prohibit them from disclosing the identities of non-parties contained in produced records absent a specific authorization. The DLC contends that Section V of the Confidentiality Order improperly attempts to circumvent these protections, many of which are inviolable and others of which require the requesting party to establish individualized prerequisites before such information can be disclosed.

Notably, Section (V)(1)(a) of the Confidentiality Order directs defendants to redact the name of any person who has filed a CVA action under pseudonym, and replace it with a "doe code" in the documents produced in discovery and then to supply to each plaintiff a list of the counsel for each de-identified plaintiff. Pursuant to Section (V)(1)(b), where a document references the name of a plaintiff who has filed suit in his or her own name, the Confidentiality Order directs defendants to "produce the document without redaction" and "simultaneously produce to the [r]eceiving [p]arty's counsel a list of these [p]laintiffs by their name and identify the attorneys representing each of them." In addition, pursuant to Section V(1)(c), defendants are required to maintain a centralized database of "Doe Codes" to track persons "who may be a survivor of child sex abuse," but have not filed a lawsuit.

The DLC argues that these provisions, and in particular Section V(1)(c), require defendants' counsel to offer opinions and impressions about who may be a survivor of abuse, indisputably impinging upon and violating defendants' privileged conversations with their counsel to elicit judicial admissions based on client confidences and secrets. The DLC further avers that this portion of the Confidentiality Order further impinges upon defendants' rights by requiring then to further create a key that contains the true names and identifying information for these individuals" which is to be shared with the court and unidentified persons chosen by the court to have the privilege of viewing this database.

At its core, the DLC contends that Section V allows the court to assume the role of investigator for the parties, thereby coopting, interfering with, and invading work product privileges and protection of parties and their counsel. The DLC further contends that the court's

requirement that counsel seek its approval before conducting a non-party investigation or contacting non-parties has the potential to suffocate factfinding attempts within CVA lawsuits. In sum, to the extent that Section V of the Confidentiality Order imposes duties and obligations that do not exist under law, the DLC argues that it should be modified or vacated in its entirety.

In opposition, the PLC argues that Section V of Confidentiality Order sets forth procedures for the exchange of discoverable, non-privileged information. The PLC also states that defendants' request to shield discoverable facts under the guise of attorney-client and work-product privileges is vague and unfounded. The PLC also challenges defendants' assertions that the framework contemplated by this court forces defendants to assume the role of investigator. To be sure, the PLC posits that ascertaining whether someone is an abuse survivor rests on objective factual realities. Those factual realities, the PLC further states, "include publicly-filed lawsuits under the CVA, as well as direct complaints from abuse survivors identifying themselves as such (or letters from individuals identifying themselves as abuse survivors or identifying others as potential abuse survivors)." Consequently, the PLC surmises that the Confidentiality Order does not compel defendants to produce privileged documents or to divulge confidential communications with counsel. Finally, the PLC posits that while attorneys may ultimately analyze documents and facts, and devise a legal strategy based on those facts, it is their legal advice to their clients that is privileged, not the underlying facts involved. Accordingly, the PLC posits that Section V of the Confidentiality Order does not run athwart of defendants' rights under existing New York law.

## DISCUSSION

Disclosure in civil actions is generally governed by CPLR §3101(a), which directs: "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof." Courts have consistently held that "[t]he words, 'material and necessary', are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v. Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]; *see also Andon v. 302–304 Mott St. Assoc.*, 94 NY2d 740, 746 [2000] ). A party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is "material and necessary"—i.e., relevant—regardless of whether discovery is sought from another party (*see* CPLR §3101[a][1] ) or a nonparty (CPLR §3101[a][4]; *see e.g. Matter of Kapon v. Koch*, 23 NY3d 32 [2014] ). The "statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise" (*Spectrum Sys. Intl. Corp. v. Chemical Bank*, 78 NY2d 371, 376 [1991]).

Nevertheless, the right to disclosure, although broad, is not unlimited. CPLR §3101 itself "establishes three categories of protected materials, also supported by policy considerations: privileged matter, absolutely immune from discovery (CPLR §3101[b]); attorney's work product, also absolutely immune (CPLR §3101[c]); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship" (*Spectrum*, 78 NY2d at 376–377, *supra*). The burden of establishing a right to protection under these provisions is with the party asserting it—"the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (*id.* at 377).

YSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 08/31/202

In addition, "'[p]retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof,' including material which might be used in cross-examination" (*Polygram Holding, Inc. v Cafaro*, 42 AD3d 339, 341 [1st Dept 2007] *quoting Fell v Presbyterian Hosp. in City of N.Y. at Columbia-Presbyt. Med. Ctr.*, 98 AD3d 624, 625 [1983]).

Finally, New York's Uniform Rules for Trial Courts Section 202.69 (*see* 22 NYCRR 202.69) allows a coordinating justice of a particular litigation to manage discovery and "issue case management orders after consultation with counsel."

Here, following the enactment of the CVA, plaintiffs and defendants litigating cases under the statute within New York City expressed a desire to establish uniform rules that would streamline the discovery process and fulfill the statute's goal of timely and expeditiously resolving such matters. To that end, I appointed a representative CVA Steering Committee consisting of the aforementioned DLC and PLC following the initial commencement of CVA actions within New York City. In the ensuing weeks, I met with the DLC and PLC to discuss issues within the litigation and solicited opinions regarding how best to coordinate discovery in CVA cases. Those meetings coalesced into the formation of CMO 1, which was the product of negotiation and consultation between the DLC and PLC. CMO 1 was issued on February 24, 2020. Thereafter, following additional negotiation and consultation between the DLC and PLC, CMO 2 was constructed, and subsequently issued on June 18, 2020. Relevantly, CMO 2 contained "Standard Automatic Disclosures Directed at Defendants," which set forth broad categories of documents to be produced by CVA defendants subject to objection. Section IX(A)(1) of CMO 2 directed the DLC and PLC to either jointly submit a proposed Confidentiality Order or to submit alternate proposals to the court by June 22, 2020, and stayed CVA defendants' disclosure obligations pending entry of a Confidentiality Order.

On June 22, 2020, the DLC and PLC each submitted their proposals with accompanying letter briefs. The court then held two conferences regarding the parties' submissions and entertained oral argument by the respective liaison committees. Following the second conference held on September 10, 2020, the DLC submitted a second letter brief on September 11, 2020. On September 18, 2020, I issued the Confidentiality Order.

The ultimate objective when this court fashioned CMO 1, CMO 2, and the Confidentiality Order, the provisions of which are consistent with the CPLR, was to allow the parties to obtain reasonably necessary documents and information without imposing undue burdens in order to permit the parties to evaluate the cases, reach early settlements, and prepare unsettled cases for trial. Discovery in CVA cases is likely to be complex, time-consuming, and expensive, and this court strives to minimize costs by ensuring that streamlined discovery is conducted. In doing so, this court has broadly interpreted the discovery obligations of both plaintiffs and defendants alike with the hope that CVA cases can be resolved without prompting expensive and drawn out disclosure periods. This approach has been consistently approved by the Appellate Division, First Department, as evidenced by its holdings in connection with challenges to case management orders drafted in connection with the New York City Asbestos Litigation (*see Matter of New York City Asbestos Litig.*, 130 AD3d 489 [1st Dept. 2015][ Coordinating justice has the authority to "issue

case management orders after consultation with counsel"]; *Matter of New York City Asbestos Litig.*, 159 AD3d 576 [1st Dept 2018][Finding that procedural protocols in new CMO, as well as other provisions challenged by defendants that were either present in preceding CMOs or appear for the first time in new CMO, do not deprive defendants of their due process or other constitutional rights, even where they do not strictly conform to the CPLR, and that the Coordinating Justice had the authority to issue these provisions absent defendants' consent]; *see also In re New York City Asbestos Litig. (Georgia-Pacific)*, 109 AD3d 7 [1st Dept 2013]; *In re NYC Asbestos Litigation (Ames v Kentile Floors)*, Index No. 107574/08, at *2 [Sup. Ct. NY. Co. June 17, 2009, Heitler, J.], *aff'd* 66 AD3d 600 [1st Dept 2009]).

Prior to this court's issuance of CMO 1, CMO 2, and the Confidentiality Order, defendants and plaintiffs litigating cases under the CVA had an opportunity to be heard. Defendants' present disagreement with the court's Confidentiality Order is not enough to warrant its vacatur where defendants were afforded ample opportunity to present arguments and proposals concerning the items raised therein. To be sure, as has been observed in other contexts, the Confidentiality Order need not be disturbed merely because some of its provisions are said to be at odds with the CPLR (*see Matter of New York City Asbestos Litig.*, 159 AD3d 576, *supra*). Rather, because this court properly solicited the input of the DLC and PLC before issuing the Confidentiality Order, it has plenary authority to implement the disclosure objectives set forth within it (*id.*). As such, defendants' challenges to the viability of this court's Confidentiality Order are unfounded.

Nevertheless, insofar as this court's Confidentiality Order contemplates by its very terms that it shall be subject to revision, the court will weigh and rule upon the issues presented by the parties in the hopes of issuing an Amended Confidentiality Order that is broadly accepted by both the DLC and PLC.

## I.    Section VIII(1)

With respect to Section VIII(1) of the Confidentiality Order, the court has considered the parties respective arguments, and finds that the provision can remain subject to slight modification and clarification (*see* annexed Amended Confidentiality Order).

As previously articulated, courts have consistently held that CPLR 3101(a)'s allowance for "full disclosure of all matter material and necessary in the prosecution or defense of an action" should be "'interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy'" in order to focus the issues in advance of trial (*see, e.g., Matter of Metro- North Train Accident of Feb. 3, 2015*, 178 AD3d 931, 933 [2d Dept 2019]). Where there is the possibility that the requested information may be used as evidence-in-chief, in cross-examination, or on rebuttal, it is deemed material for discovery purposes (*Metro-North Train Accident*, 178 AD3d at 933-934). Critically, the right to pretrial disclosure "extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof" (*Fell v. Presbyterian Hosp. in N.Y. at Columbia-Presbyterian Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983]). Here, even if evidence of an alleged abuser's "prior bad acts" may not be deemed admissible at trial, it is unquestionable that the disclosure of such acts would be "material and necessary" within the context of CVA actions where negligent retention, negligent hiring, or negligent supervision claims are pleaded. As defendants recognize, a "necessary element" of

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

negligent retention, hiring, and supervision claims is whether an institution or employer, such as a church, "knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v. Roman Catholic Diocese*, 229 AD2d 159, 161, 164 [2d Dept 1997] [plaintiffs stated causes of action for negligent retention and negligent supervision where their bill of particulars alleged the Catholic church had actual or constructive notice of a priest's "propensity to sexually abuse children" based on statements made by infant plaintiffs and by the priest himself to other priests]).   To be sure, jurisprudence within the Appellate Division, Second Department, supports the inference that information about an alleged abuser's "prior bad acts" is necessary and relevant to a determination of whether an institution or employer was aware of an alleged abuser's propensity to sexually abuse children (*see Nevaeh T. v. City of New York*, 132 AD3d 840, 842 [2d Dept 2015]).

        Contrary to defendants' assertions, the question of discoverability with respect to the disclosure of an alleged abuser's "prior bad acts" is separate and distinct from that of whether such evidence will, ultimately, be deemed admissible at trial.   To be sure, one cannot conflate the CPLR's broad discovery rules by invoking standards for the admissibility of evidence of other "bad acts" at trial.   Nevertheless, it is also worth noting that evidence of an alleged abuser's other "bad acts" may well be deemed admissible as evidence of actual or constructive knowledge or for non-propensity reasons, such as one's motive or intent (*see DeJesus v. Moshiashvili*, 176 AD3d 649, 650 [1st Dept 2019]).

        Moreover, although some defendants posit that disclosure of an alleged abuser's prior bad acts would lead to the dissemination of protected educational, health, and agency records in contravention of multiple laws, such assertions are without merit.   First, the Confidentiality Order allows for the dissemination of records of "prior bad acts" housed by an institution subject to redaction.   Second, defendants are not without recourse if they believe that certain records should not be disclosed.   To be sure, the PLC would consent to meet and confer with the DLC and even submit a subset of documents deemed protected to the court for *in camera* review.   Third, the City defendants' generalized opposition to disclosure of records of "prior bad acts" by citing Section 50-b of the Civil Rights Law is overbroad as many of the requested documents plaintiffs are seeking do not actually identify a victim of a sex crime, and therefore fall outside the ambit of the statute.   Likewise, the City defendants' opposition to the dissemination of agency records, like foster care records, must accede to the directives of this court's order in the absence of a particularized objection.   Finally, the Confidentiality Order does not run afoul of HIPAA since most of the information sought by plaintiffs is not health information.   To be sure, complaints or concerns that a health care provider was sexually abusing patients are not health information in the strictest sense as such complaints and concerns would not have been raised for the purpose of care or treatment, and were not intended to be confidential.   As such, the court will not disturb Section VIII(1) of the Confidentiality Order as it relates to defendants need to disclose an alleged abuser's "prior bad act."   The court does, however, see a need to expand on the meaning of "prior bad acts" by giving the term a definition that the parties can in turn use to inform their disclosure obligations (*see* annexed Amended Confidentiality Order).

        In addition, upon review, the court finds that there is a need to remove the portion of Section VIII(1) of the Confidentiality Order that calls for the disclosure of "subsequent corrective measures." Reflecting on the arguments advanced by numerous defendants, the court finds that

YSCEF DOC. NO. 10                                    RECEIVED NYSCEF: 08/31/202

such a provision cannot be broadly applied to all defendants without irrevocably infringing upon the rights of some. Specifically, the court observes the arguments raised by the Diocese of Brooklyn and others relating to canon law. As highlighted by the Diocese of Brooklyn, the United States Supreme Court has held that church authorities have the freedom to organize and govern themselves according to their own law and policy, including the right to select and discipline ministers, free from state interference (*Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94, 116 [1952]). That bar against interference includes attempts to award damages to litigants whose claims implicate a church's selection and discipline of its ministers (*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 194 [2012]).

Were the court to countenance the disclosure of "subsequent corrective measures," it would be interfering with the province of ecclesiastical decision-making. Such a move would run counter to the United States Supreme Court's instruction to other secular courts not to subject religious institutions to having to defend their beliefs and practices in a court of law. Inviting questions into whether a church took any "corrective measures" by altering a priest's sacramental status, and the degree to which it adhered to canon law, presents the type of situation that would impermissibly require a religious institution to defend its beliefs and practices. Therefore, discovery and examination in that regard is barred. Nevertheless, plaintiffs could individually seek, and potentially receive, from defendants disclosure of information regarding the assignment to ministry without offending constitutional constraints, as such assignments – removed from inquiry into corrective conduct – carry with them the responsibility of supervision and oversight that is at issue in many CVA cases. Consequently, the court refuses to invite broad disclosure in all CVA cases of undefined "subsequent corrective measures" that may well implicate issues surrounding church defendants' internal governance, including church decisions regarding the ecclesiastical statuses of their priests and the church's own sacramental policies. Therefore, Section VIII(1) is amended to exclude the broad disclosure of "subsequent corrective measures."

## II.    Sections II(1), III(1)(a), and IV(1)(a)

As drafted, this court's Confidentiality Order allows a recipient of defendants' discovery to share that information with "the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers" (*see* Confidentiality Order, Section IV[1][a]). In addition, the Confidentiality Order prohibits recipients of discovery from disseminating the information "to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim" (*see* Confidentiality Order, §II[1]).

At their core, the sharing provisions contained within the Confidentiality Order simply allow an individual attorney representing one victim to request discovery information from another victim's attorney, so long as the cases involve a common party or abuser, to avoid the time and expense of duplicative discovery requests and motions in each separate action. This coordinated approach is aligned with the CVA's central objective of adjudicating cases filed under the statute within a timely manner. Several institutional parties have been repeatedly named in CVA lawsuits. Where plaintiffs have filed lawsuits against the same alleged abusers and institutions, it is incontestable that a substantial overlap exists with respect to common records and files. The

YSCEF DOC. NO. 10                                          RECEIVED NYSCEF: 08/31/202

necessity for this court to efficiently and expeditiously adjudicate all CVA matters before it calls out for parties to share information in specified instances, thereby avoiding a tremendous waste of time and resources.  Indeed, in Section 10 of the CVA, the legislature specifically directed the chief administrator of the courts to "promulgate rules for the timely adjudication of revived actions brought pursuant to section two hundred fourteen-g of the civil practice law and rules" (N.Y. Judiciary Law § 219-d).  Defendants request for this court to  prohibit discovery-sharing would frustrate this statutory goal, and result in protracted and costly litigation.

As highlighted in the PLC's briefs, defendant Rockefeller University has been named in several CVA lawsuits based on alleged acts of sexual assault committed by Dr. Reginald Archibald.   It would be highly inefficient, as the PLC underscores, for "each plaintiff to individually request, and for [defendant] Rockefeller [University] to separately produce, the exact same information regarding the grand jury investigation of Dr. Archibald and Rockefeller University during 1960-1961."  The need for efficiency presupposes that discovery sharing occur in such cases.   Other cases filed with this court under the CVA demand the same common-sense approach that would apply to a defendant like Rockefeller University.

In addition, discovery-sharing supports the CVA's goal of case coordination. Specifically, the legislature established dedicated parts within the New York State Supreme Court to adjudicate claims under the CVA, required special training of judges, and provided trial preference for older abuse victims (22 NYCRR § 202.72).  In furtherance of that objective, this court, along with the DLC and PLC, has already  worked to create CMO 1 and CMO 2, and has implemented standard disclosures as well as coordinated motion practice. As the litigation progresses, collaboration with respect to deposition-taking will be necessary.  Such collaboration will require discovery-sharing with to all plaintiffs who  have filed claims against the same defendant.  Discovery-sharing will help facilitate such collaboration.  Indeed, discovery-sharing has been ordered by courts across the country adjudicating claims of child sex abuse (see Clergy Cases II Order, No. JCCP4297 [CA Super. Ct. June 7, 2006][discovery-sharing ordered in California child sex abuse cases]; see A.G. v. Corp. of the Catholic Archbishop of Seattle, 162 Wn. App. 16 [Wash. Ct. App. 2011][ Washington Court of Appeals authorized discovery-sharing in multiple child sex abuse cases against the Archdiocese of Seattle]).

Contrary to defendants' position, this court's decision to allow plaintiffs' attorneys to share specific information about a common abuser is squarely within its broad discretion to settle matters relating to disclosure in  accordance with CPLR §§ 3101(a) and 104.  Notably, CPLR §104 specifically provides that "[t]he civil practice law and rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every civil judicial proceeding."  Once again, discovery-sharing satisfies that objective. Even so, defendants submit that at the very least Section III(1)(a) should be modified to include information of a personal nature so that categories of information such as occupational and educational records are not automatically subject to disclosure.  In response, plaintiffs appear to concede that there are instances where personnel files may be irrelevant if claims of negligent retention, hiring, or supervision, are not advanced.  But where such claims are advanced, and a necessary element of the proof required involves an institution or employer's knowledge of whether an abuser had a propensity to commit the subject misdeeds, there can be no question that complaints or records in an alleged abuser's files are

13

YSCEF DOC. NO. 10                                          RECEIVED NYSCEF: 08/31/202

directly relevant to defendants' knowledge of his or her propensity to commit the acts alleged. As such, disclosure of personnel files is warranted in such instances. At this juncture, Insofar as the Confidentiality Order already contemplates that all persons receiving confidential information are required to maintain that confidentiality, the court does not see a need to adopt the proposed amendment to Section III(1)(a) sought by defendants.

In sum, the court sees no need to disturb the discovery-sharing provisions set forth in Sections II(1), III(1)(a), and IV(1)(a) of the Confidentiality Order.

### III.    Section IV(4)

Next, defendants argue that Section IV(4) of the Confidentiality Order improperly imposes an obligation on defendants to justify confidentiality and privilege designations. The court disagrees with that assessment. As highlighted by the PLC, an individual or entity seeking a protective order bears the initial burden to establish that any specified information should be protected from discovery (*see Liberty Petroleum*, 164 AD3d 401, *supra*). In line with that philosophy, defendants seeking to designate certain information as confidential, "will have the burden of justifying the propriety of [that] designation" in the face of any challenge (*see* Confidentiality Order, Section IV[4]). If the court reversed this rule, as urged by defendants, nothing would prevent defendants from designating each and every document as confidential. Faced with that scenario, plaintiffs would then be forced to make myriad applications seeking to unseal records. Such an outcome would run counter to openness and accessibility that this court's Confidentiality Order seeks to achieve. Moreover, the DLC's suggestion that the burden be shifted to plaintiffs would likely frustrate the aims at efficiency contemplated by the Confidentiality Order, including a process to avoid numerous, duplicative motions for a protective order or to compel. The cases cited by defendants in their moving papers do not require a different result, as none squarely address the initial burden one must overcome when designating a document as confidential. Even so, defendants' concerns must be balanced against the overwhelming need to expeditiously process and resolve CVA lawsuits.

As such, the court preserves Section IV(4) in its current form.

### V.    Section V

Finally, defendants seek removal of Section V of the Confidentiality Order on account of its direction that defendants disclose the identities of non-parties contained in produced records absent specific authorizations. Defendants contend that such a practice could place them in unenviable position of having to violate varying and regulations that prohibit them from disclosing the identities of non-parties (e.g. the Buckley Amendment, the Americans with Disabilities Act). Defendants also question Section V's direction that CVA defendants redact the name of any person who has filed a CVA action under pseudonym, and replace it with a "doe code" in documents produced in discovery and then to supply to each plaintiff a list of counsel. In addition, defendants oppose Section V's requirement that they maintain a centralized database of "doe codes" to track persons "who may be a survivor of child sex abuse." Such a provision, defendants posit, would require defendants' counsel to offer opinions and impressions about who may be a survivor of child sex abuse, a practice likely to infringe upon privileged conversations with their clients.

14

Contrary to defendants' assertions, the determination of whether someone is an abuse survivor largely rests on indiscriminate facts such as publicly filed documents, as well as direct complaints from abuse survivors identifying themselves as such. Likewise, while attorneys may ultimately analyze those facts and devise a legal strategy, the facts alone are not privileged. Indeed, the attorney-client privilege "applies only to confidential communications with counsel" and "does not immunize the underlying faction information…from disclosure to an adversary" (*Niesig v. Team I*, 76 NY2d 363, 372 [1990]).

Here, Section V of the Confidentiality Order compels defendants to identify potential abuse survivors based on discoverable facts rather than attorneys' interpretation and analysis of those facts. As such, the disclosure of underlying facts surrounding potential abuse survivors does not violate the attorney-client privilege. Likewise, the work product doctrine does not immunize underlying facts from disclosure, and the party asserting this privilege bears the burden of showing that materials were prepared exclusively for litigation purposes (*Cioffi v. S.M. Foods, Inc.*, 142 AD3d 520, 522 [2d Dept 2016]).

Nevertheless, defendants voice legitimate concerns with respect to the practical application of Section V of the Confidentiality Order. For instance, the court's requirement that counsel seek its approval before conducting a non-party investigation or contacting non-parties has the potential to disturb defendants' factfinding attempts. Likewise, the requirement that defendants maintain a "key that contains the true names and identifying information for [identified] individuals" to be shared with the court and presently unidentified personnel chosen by the court could be unduly burdensome in the aggregate. Indeed, creation and maintenance of databases, as contemplated by the court, may well upset the aims at efficiency contemplated by this court.

As such, even though the court does not consider Section V of the Confidentiality Order as offensive to existing legal precedent, its vacatur is warranted in light of the court's concerns with respect to its implementation. Accordingly, the court strikes the language contained within Section V of the Confidentiality Order in its entirety.

## DIRECTIVES

The court reserves its right to issue directives subsequent to the issuance of this decision and order where necessary. The changes to the Confidentiality Order adopted by this court are reflected in the annexed Amended Confidentiality Order, which in turn replaces the Confidentiality Order issued by this court on September 18, 2020. As such, it is hereby

ORDERED that Section VIII(1) of the Confidentiality Order is amended in accordance with the annexed Amended Confidentiality Order; and it is further

ORDERED that Sections II(1), III(1)(a), and IV(1)(a) of the Confidentiality Order shall remain in place as reflected in this court's Confidentiality Order dated September 18, 2020; and it is further

ORDERED that Section IV(4) of the Confidentiality Order shall remain in place as reflected in this court's Confidentiality Order dated September 18, 2020; and it is further

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

ORDERED that Section V of the Confidentiality Order is rescinded in accordance with the annexed Amended Confidentiality Order.

This constitutes the decision and order of the court.

**Dated**: March 30, 2021

GEORGE J. SILVER, J.S.C.

16

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

# AMENDED CONFIDENTIALITY ORDER

YSCEF DOC. NO. 10                                              RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
------------------------------------------------------------ x
                                              :
                                              :
                                              :    **AMENDED**
**In re: CHILD VICTIMS ACT LITIGATION** :    **CONFIDENTIALITY ORDER**
                                              :
                                              :    **CASE MANAGEMENT**
                                              :    **ORDER ("CMO") No. 2**
                                              :
                                              :
------------------------------------------------------------ x


**CONFIDENTIALITY ORDER**
**Pursuant to Sec. IX of CMO 2**


WHEREAS this court finds good cause exists for the issuance of this confidentiality order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and

WHEREAS this confidentiality order shall remain in effect unless otherwise modified;

IT IS HEREBY ORDERED that all persons and entities subject to this order – including without limitation the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

I.      **Applicability.**

1.      The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

2.      Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

1

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

3.    Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this order regardless of whether the non-party is or becomes bound by the terms of this order.

## II.    Use and Disclosure of Confidential Discovery Materials.

1.    No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim.  The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation.  Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation.  In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation.

2.    Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information.  Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order.  Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

3.    The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III.    Confidential Designation.

1.    Any party may designate all or portions of Discovery Materials as "Confidential Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

a.    "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically,

2

YSCEF DOC. NO. 10                                            RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. Gen. Bus. Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b.  "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein. Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information. Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition. Where it would not be

3

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

cost effective or would be burdensome, however, the Producing Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2.    Depositions.  When a deposition includes the disclosure of Confidential Information:

a.    Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation.  During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information.  The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

b.    The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3.    Documents.  With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4.    Electronically Stored Information.  Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION." If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

YSCEF DOC. NO. 10                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

**IV.    Disclosure of Confidential Information.**

Confidential Information will not be disclosed by the Receiving Party except as permitted by this order.

1.    Permissible Disclosures.   A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

a.    the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers;

b.    such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

c.    the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

d.    the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

e.    the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms;

f.    a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

g.    any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

h.    this court, including any appellate court, its support and administrative personnel; and

YSCEF DOC. NO. 10                                          RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

i.    any court reporter and associated support staff employed in this litigation.

2.    <u>Authorized Disclosures.</u>    A Receiving Party may disclose Confidential Information if:  (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3.    <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates.</u>  Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4.    <u>Challenges to Designation as Confidential Information.</u>  A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection.  The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed.  If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer.  The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing.  In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later.  "Writing" and "written notice" shall include electronic communications.

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

**V.**   ~~Identities of Abuse Survivors.~~ **[RESCINDED]**

~~1.    Possible Abuse Survivors Who Are Plaintiffs and/or Who Are Otherwise Represented by Counsel.~~

~~a.    Where a document contains the name of a Plaintiff who has filed suit under a pseudonym, the Producing Party shall redact the name and replace it with the pseudonym. The Producing Party shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by pseudonym and identify the attorneys representing each of them. Any such list is Confidential Information.~~

~~b.    Where a document references the name of a Plaintiff who has filed suit in his or her own name, the Producing Party shall produce the document without redaction but shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by their name and identify the attorneys representing each of them. Any such list is Confidential Information.~~

~~c.    Where a document references the name of a person who may be a survivor of child sex abuse, but the Producing Party is not aware that the person has filed suit, the Producing Party shall redact the person's name and replace it with a unique "Doe code" that allows the person to be tracked across documents. However, if the Producing Party is on notice that such a person may be represented by counsel, the Producing Party will simultaneously produce to the Receiving Party's counsel a list of these individuals by Doe code and identify the attorneys representing them. Any such list is Confidential Information.~~

~~d.    No party or their counsel will contact a Plaintiff or a person identified by a "Doe code" who is represented by counsel unless permission to do so is given by that Plaintiff or person's counsel. Rather, any party or their counsel who believes in good faith that contacting a Plaintiff or person identified by a "Doe code" is important to the party's claim or defenses may do so only through contact with the attorney representing that Plaintiff or person identified by a "Doe code."~~

~~e.    If permission to speak with the Plaintiff or person identified by a "Doe code" is denied or not responded to within a reasonable time, a party or their counsel may ask the court and/or other designated personnel appointed by the court for such communication.~~

~~2.    Possible Abuse Survivors Who Are Not Represented by Counsel.~~

7

YSCEF DOC. NO. 10                                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

a. ~~If a Producing Party does not believe that a person identified by a "Doe code" is represented by counsel, the Producing Party will create a list of the "Doe codes" for such persons with a key that contains the true names and identifying information for these individuals (the "Unrepresented Survivors List"). Any such list is Confidential Information but shall not be shared with anyone other than the court and/or other designated personnel appointed by the court.~~

b. ~~A party or their counsel may seek to contact an Unrepresented Survivor on the Unrepresented Survivors List through the following procedure:~~

   i. ~~The party or their counsel must submit an email or letter to the court and/or other designated personnel appointed by the court that sets forth their good faith belief that an Unrepresented Survivor may have discoverable information for the party's case. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be copied on the email or letter to the court and/or other designated personnel appointed by the court.~~

   ii. ~~The court and/or other designated personnel appointed by the court, after conferring with Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to understand if there are other parties who wish to speak to the same person, shall contact the Unrepresented Survivor, explain that information is being sought to assist with a party's claims or defenses, and inquire if the Unrepresented Survivor has any objection to being contacted.~~

   iii. ~~If the Unrepresented Survivor agrees to be contacted, the court and/or other designated personnel appointed by the court shall so advise the requesting party or their counsel by email or letter, and copy Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. The court and/or other designated personnel appointed by the court shall also advise the requesting party or their counsel of the Unrepresented Survivor's preferred means of being contacted.~~

   iv. ~~If an Unrepresented Survivor advises the court and/or other designated personnel appointed by the court that he or she does not want to be contacted, the court and/or other designated personnel appointed by the court shall advise the party or their counsel who made the request, by email or letter, with a copy to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Thereafter, the court and/or~~

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

other designated personnel appointed by the court shall provide the full name and last known address of the Unrepresented Survivor to the party or their counsel who made the request and to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Upon being provided with the identity of the Unrepresented Survivor, the parties in the action in which the relief is sought, Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel will coordinate the issuance and service of a subpoena on the Unrepresented Survivor in order to avoid duplicative subpoenas and to lessen any burden or hardship that such subpoena may cause to an Unrepresented Survivor. Other than service of the subpoena, no party or their counsel, or anybody acting on their behalf, may contact the Unrepresented Survivor prior to the deposition pursuant to the subpoena.

v. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be charged with coordinating, to the extent practicable, all motions, subpoenas, and depositions concerning Unrepresented Survivors in order to avoid duplicative motions and to lessen any burden or hardship that such motions or subpoenas may cause to an Unrepresented Survivor.

vi. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be given at least 20 days' notice by email of any deposition that may be noticed of an Unrepresented Survivor for the purpose of coordinating attendance at the deposition by other parties who have claims or defenses where information possessed by the Unrepresented Survivor may be discoverable and minimizing, to the extent practicable, any burden on the Unrepresented Survivor.

vii. The court and/or other designated personnel appointed by the court shall maintain a copy of deposition transcripts of Unrepresented Survivors so the transcripts may be used by other parties with claims or defenses where the transcript may contain discoverable information.

c. Nothing contained herein shall prevent a party or their counsel from contacting a person where the identity of the person was learned through sources other than documents produced pursuant to this Section.

9

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## VI.    Procedures for Filing Confidential Discovery Materials with the Court.

1.    If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action.  The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2.    Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Party shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission.  If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer.  Any party may use its portion of any such joint letter to request full briefing of the dispute.  The Moving Party shall be responsible for submitting the joint letter to the court.

3.    Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling.  If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4.    Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

## VII.    Inadvertent Disclosure.

a.    Confidential Information. If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation.  The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b.    Privileged Materials. If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

work product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.     Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure. In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.    Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii.   If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.     Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing

11

YSCEF DOC. NO. 10                                      RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Party. Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the privileged content during the course of this matter.

## VIII.  Additional Provisions

1.  Prior Bad Acts, ~~Subsequent Bad Acts and Corrective Measures~~. Generally, consistent with the substance of this order, records of: 1) prior bad acts,[1] ~~not limited to~~including previous accusations of sexual abuse, against an alleged sexual abuse perpetrator; ~~or 2) subsequent bad acts, not limited to consequent accusations of sexual abuse, by an alleged sexual abuse perpetrator and corrective measures by an institution,~~ are discoverable, and will be disclosed upon request.

2.  Treatment of Discovery Materials Upon Termination of Action.  Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until sixty (60) days after all such claims are terminated, including any appeals. Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action. Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

---

[1] For purposes of Section VIII(1), "Prior Bad Acts" are broadly defined to include documents, reports, complaints, notations within personnel files, and elsewhere, of previous accusations of abuse against an alleged sexual abuse perpetrator.

YSCEF DOC. NO. 10                                    RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

3.   No Waiver.  Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of:  (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence.  In addition, nothing in this order shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4.   Non-Applicability of Order.  The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information has become public in violation of this order.  No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5.   Notices.  Transmission by electronic mail is acceptable for all notification purposes under this order.

6.   Modification.  This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court.  The court reserves the right to modify this order for any reason that the court deems appropriate.

7.   Duration.  This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8.   Survival.  After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record.  This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

**Dated:** March 30, 2021

GEORGE J. SILVER, J.S.C.

13

YSCEF DOC. NO. 10

RECEIVED NYSCEF: 08/31/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I, _____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order. I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted. I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [            ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.

Dated:_____          Signature: _____
                                 Printed Name: _____

14

YSCEF DOC. NO. 39                                          RECEIVED NYSCEF: 07/10/202

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND**
------------------------------------------------------x
                  :
                  :
                  :     **SECOND AMENDED**
In re: **CHILD VICTIMS ACT LITIGATION**  :     **CONFIDENTIALITY ORDER**
                  :
                  :
                  :
                  :
------------------------------------------------------x

**CONFIDENTIALITY ORDER**
**Pursuant to Sec. IX of CMO 2**

      WHEREAS on February 24, 2020, the Court issued Case Management Order No. 1 (CMO 1);

      *WHEREAS Section IX of Case Management Order No. 2 ("CMO 2"), dated June 16, 2020, contemplated the issuance of a confidentiality order that would apply to disclosure in all Child Victims Act ("CVA") (L. 2019 c.11) Actions venued in the Counties of Bronx, Kings, New York, Queens, and Richmond;*

      *WHEREAS pursuant to Section IX (A) (1) of CMO2, on June 22, 2020, Plaintiffs' Liaison Counsel (the "PLC") and Defendants' Liaison Counsel (the "DLC") each submitted alternative proposed Confidentiality Orders to the Court;*

      *WHEREAS on September 18, 2020, the Court issued a Confidentiality Order governing the pre-trial phase of actions litigated under the CVA;*

      *WHEREAS the Court granted leave for the DLC and CVA Defendants to move to vacate the September 18, 2020 Confidentiality Order, and created New York County Index Number 95000/2020 and Kings County Index Number 999999/2020 as master index numbers available for vacatur motions to be filed referable to all CVA cases in the aforementioned counties of the First and Second Departments, respectively, of the Appellate Division of the Supreme Court of the State of New York;*

      *WHEREAS following submission of several motions to vacate and/or modify the Confidentiality Order and oral argument on those motions, on March 30, 2021, the Court issued a Decision and Order regarding the Confidentiality Order, to which was annexed an Amended Confidentiality Order showing in redline the Sections of the September 18, 2020 Confidentiality Order that were amended and/or rescinded, and which Decision provided the rationale for each section that was amended and/or rescinded as shown in the annexed redline (see March 30, 2021 Decision and Order with Amended Confidentiality Order annexed hereto as Exhibit B);*

      *WHEREAS the DLC and several CVA Defendants filed Notices of Appeal from the*

YSCEF DOC. NO. 39

RECEIVED NYSCEF: 07/10/202

*March 30, 2021 Decision and Order in both the Appellate Division, First Department and the Appellate Division, Second Department;*

*WHEREAS on May 21, 2021, the Appellate Division, Second Department, issued an Order transferring the appeals from the March 30, 2021 Order noticed in the Appellate Division, Second Department under the Kings County master index number, 999999/2020 to the Appellate Division, First Department;*

*WHEREAS the DLC and CVA Defendants applied to the Appellate Division, First Department for interim relief, requesting that court to stay, inter alia, Sections II (1), III (1) (a), IV (1) (a) (the sharing provisions) and IV (4) of the March 30, 2021 Amended Confidentiality Order;*

*WHEREAS on July 15, 2021, the Appellate Division, First Department, issued an Order granting the applications for interim relief to the extent of staying the sharing provisions pending appeal of the March 30, 2021 Decision and Order and Amended Confidentiality Order, directing the appellants to perfect their appeals for the October 2021 Term, and, on the court's own motion, consolidating each of the appeals from the March 30, 2021 Decision and Order and Amended Confidentiality Order and directing that they be perfected on a single record; and*

*WHEREAS on December 7, 2021, the Appellate Division, First Department issued a unanimous Decision and Order, Matter of Child Victims Act NYC Litig. (200 AD3d 476, 478 [1st Dept 2021]), modifying the language in Sections II (1), III (1) (a) (i), and IV (1) (a) of the Amended Confidentiality Order (see December 7, 2021 Appellate Division Decision and Order annexed hereto as Exhibit C);*

*WHEREAS this court finds good cause exists for the issuance of this Second Amended Confidentiality Order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and*

*WHEREAS the provisions of this Second Amended Confidentiality Order, as set forth below, shall remain in effect unless modified;*

*NOW, THEREFORE this Court promulgates this Second Amended Confidentiality Order implementing the reasoning and modifications directed by this Court's March 30, 2021 Decision and Order (as to the former section V [rescinded] and section VIII (1) [modified]) and the Appellate Division, First Department in its December 7, 2021 Decision and Order:*

IT IS HEREBY ORDERED that all persons and entities subject to this order, including, without limitation, the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

I.    **Applicability.**

1.    The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but

YSCEF DOC. NO. 39

RECEIVED NYSCEF: 07/10/202

not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

2.    Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

3.    Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this order regardless of whether the non-party is or becomes bound by the terms of this order.

## II.    Use and Disclosure of Confidential Discovery Materials.

1.    No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to *any person not authorized to receive such materials pursuant to § IV herein, or any person not reasonably involved* in a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation")) with respect to such a claim *(consistent with § IV (e) herein)*.

2.    Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information. Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order. Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

3.    The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III.    Confidential Designation.

1.    Any party may designate all or portions of Discovery Materials as "Confidential

Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

a.    "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically, medically, financially, commercially sensitive information and/or *personal information, including educational and employment records, and* private information as defined in NY Shield Act, N.Y. Gen. Bus. Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b.    "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein. Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information. Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition. Where it would not be cost effective or would be burdensome, however, the Producing Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2.    <u>Depositions</u>.    When a deposition includes the disclosure of Confidential Information:

   a.    Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation. During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information. The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

   b.    The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3.    <u>Documents</u>. With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4.    <u>Electronically Stored Information</u>. Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION." If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

YSCEF DOC. NO. 39                                                    RECEIVED NYSCEF: 07/10/202

## IV.    Disclosure of Confidential Information.

Confidential Information will not be disclosed by the Receiving Party except as permitted by this Order.

1.    <u>Permissible Disclosures.</u>  A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

a.    the parties to a civil claim related to allegations of child sexual abuse *involving the same alleged abuser. Not less than 20 days prior to such disclosure, the Receiving Party must provide notice of the intended disclosure to the Producing Party, specifying the date thereof, identity of the intended recipient(s), and nature of the documents to be disclosed;*

b.    such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

c.    the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

d.    the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

e.    the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms. *The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation. Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation. In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation;*

f.    a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

YSCEF DOC. NO. 39                                          RECEIVED NYSCEF: 07/10/202

g.    any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

h.    this court, including any appellate court, its support and administrative personnel; and

i.    any court reporter and associated support staff employed in this litigation.

2.    <u>Authorized Disclosures.</u> A Receiving Party may disclose Confidential Information if: (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3.    <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates</u>. Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4.    <u>Challenges to Designation as Confidential Information</u>. A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection. The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed. If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer. The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing. In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later. "Writing" and "written notice" shall include electronic communications.

7

YSCEF DOC. NO. 39                                    RECEIVED NYSCEF: 07/10/202

V.    **Identities of Abuse Survivors.** *[RESCINDED]*

VI.   **Procedures for Filing Confidential Discovery Materials with the Court.**

1.    If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action. The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2.    Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Part shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission. If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer. Any party may use its portion of any such joint letter to request full briefing of the dispute. The Moving Party shall be responsible for submitting the joint letter to the court.

3.    Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling. If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4.    Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

VII.  **Inadvertent Disclosure.**

a.    <u>Confidential Information</u>. If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation. The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b.    <u>Privileged Materials</u>. If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney work

8

YSCEF DOC. NO. 39                                                    RECEIVED NYSCEF: 07/10/202

product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.    Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure. In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.    Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii.    If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.    Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing Party. Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the

YSCEF DOC. NO. 39                                              RECEIVED NYSCEF: 07/10/202

privileged content during the course of this matter.

## VIII.   Additional Provisions

1.   Prior Bad Acts. Generally, consistent with the substance of this order, records of prior bad acts[1], including previous accusations of sexual abuse, against an alleged sexual abuse perpetrator, are discoverable, and will be disclosed upon request.

2.   Treatment of Discovery Materials Upon Termination of Action. Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until sixty (60) days after such claims are terminated, including appeals. Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action. Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

3.   No Waiver. Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of: (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence. In addition, nothing in this order shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4.   Non-Applicability of Order. The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information

---

[1] For purposes of Section VIII(1), "Prior Bad Acts" are broadly defined to include documents, reports, complaints, notations within personnel files, and elsewhere, of previous accusations of abuse against an alleged sexual abuse perpetrator.

YSCEF DOC. NO. 39                                      RECEIVED NYSCEF: 07/10/202

has become public in violation of this order. No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5. <u>Notices.</u> Transmission by electronic mail is acceptable for all notification purposes under this order.

6. <u>Modification</u>. This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court. The court reserves the right to modify this order for any reason that the court deems appropriate.

7. <u>Duration.</u> This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8. <u>Survival</u>. After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

**Dated: July 6, 2022**

_____
ALEXANDER M. TISCH, J.S.C.

_____
LAURENCE LOVE, J.S.C.

11

# EXHIBIT A

YSCEF DOC. NO. 39                                    RECEIVED NYSCEF: 07/10/202

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I,_____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order. I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted. I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [                    ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.

Dated:_____    Signature: _____

                                  Printed Name:_____

# EXHIBIT B

YSCEF DOC. NO. 399                                          RECEIVED NYSCEF: 03/30/202

**SUPREME COURT OF THE STATE OF NEW YORK COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND**

|                                          |     |                                          |
| ---------------------------------------- | --- | ---------------------------------------- |
|                                          |  :  | **DECISION AND ORDER RE:**               |
| In re: **CHILD VICTIMS ACT LITIGATION**  |  :  | **CONFIDENTIALITY ORDER**                |
|                                          |  :  | **CASE MANAGEMENT ORDER ("CMO") No. 2**  |

The following motions are decided in accordance with the attached decision and order of the Court:

| Index 950000/2020 | Seq. 001 (Motion & Cross-Motion) |
| ----------------- | -------------------------------- |
| Index 950000/2020 | Seq. 002 |
| Index 950000/2020 | Seq. 003 |
| Index 950000/2020 | Seq. 004 |
| Index 950000/2020 | Seq. 005 |
| Index 950000/2020 | Seq. 006 |
| Index 950000/2020 | Seq. 007 |
| Index 950000/2020 | Seq. 009 |
| Index 950000/2020 | Seq. 001 |
| Index 999999/2020 | Seq. 002 |
| Index 999999/2020 | Seq. 003 |
| Index 999999/2020 | Seq. 004 |
| Index 999999/2020 | Seq. 005 |
| Index 999999/2020 | Seq. 006 |
| Index 999999/2020 | Seq. 001 |
| Index 70061/2020E | Seq. 001 |
| Index 950137/2019 | Seq. 003 |
| Index 512321/2020 | Seq. 005 |
| Index 502720/2020 | Seq. 001 |
| Index 400044/2020 | Seq. 001 |

The Court further directs that a copy of this decision and order be uploaded to all existing, and future, cases being litigated under the Child Victims Act (L. 2019 c.11) ("CVA") in the Supreme Court of the State of New York in the counties of Bronx, Kings, New York, Queens, and Richmond.

**Dated:** March 30, 2021                     Hon. _George J. Silver_
                                                          GEORGE J. SILVER, J.S.C.

------------------------------------------------------------------------------------

1. CHECK ONE.................................  ☐ CASE DISPOSED IN ITS ENTIRETY   ■ CASE STILL ACTIVE

2. MOTION IS...................................  ☐ GRANTED   ☐ DENIED   ■ GRANTED IN PART   ☐ OTHER

YSCEF DOC. NO. 399                                                    RECEIVED NYSCEF: 03/30/202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
-------------------------------------- x
                                        :
                                        :
                                        :    **DECISION AND ORDER RE:**
**In re: CHILD VICTIMS ACT LITIGATION** :
                                        :    **CONFIDENTIALITY ORDER**
                                        :
                                        :    **CASE MANAGEMENT**
                                        :    **ORDER ("CMO") No. 2**
-------------------------------------- x


        With the instant application, defendants in cases filed under the Child Victims Act (L. 2019
c.11) ("CVA") in New York City move to vacate and/or modify this court's Confidentiality Order
issued in conjunction with the litigation. In opposition, plaintiffs prosecuting cases under the CVA
in New York City argue that this court's Confidentiality Order should stand without major
modification.

## BACKGROUND

        In 2019, New York State enacted the CVA which, *inter alia*, (1) extended the statute of
limitations on criminal cases involving certain sex offenses against children under 18 (*see* CPL
§30.10 [f] ); (2) extended the time which civil actions based upon such criminal conduct may be
brought until the child victim reaches 55 years old (*see* CPLR §208[b]); and (3) opened a one-year
window reviving civil actions for which the statute of limitations has already run (even in cases
that were litigated and dismissed on limitations grounds), commencing six months after the
effective date of the measure, i.e. August 14, 2019 (*see* CPLR §214-g).[1]

        When enacting the CVA, New York's Legislature did not create a comprehensive set of
procedural rules and discovery standards for how cases would be litigated under the statute.
Recognizing this, shortly after the revival period opened, the court appointed a CVA Steering

---

[1] Due to the COVID-19 public health emergency, on May 8, 2010, New York Governor Andrew Cuomo
("Governor Cuomo") issued an executive order extending the look back window for victims to file claims
under the Child Victims Act until January 14, 2021. On August 3, 2020, Governor Cuomo signed into law
an additional extension of the special filing period by a full year. Claims under the statute can now be filed
until August 14, 2021.

Committee, consisting of defense attorneys representing institutional CVA defendants ("DLC") and plaintiffs' attorneys representing numerous CVA plaintiffs ("PLC") in actions in the Supreme Court for Bronx, Kings, New York, Queens, and Richmond Counties, to liaise between the court and all CVA counsel. Thereafter, on February 24, 2020, the court issued Case Management Order No. 1 ("CMO 1"), which "applies to all actions filed or hereafter filed in the Supreme Court in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the [CVA]." Then, on June 18, 2020, the court issued Case Management Order No. 2 ("CMO 2"), annexing to it as Exhibit C, the "Standard Automatic Disclosures Directed at Defendants," which set forth broad categories of documents to be produced by CVA defendants subject to objection. Section IX(A)(1) of CMO 2 directed the DLC and PLC to either jointly submit a proposed Confidentiality Order or to submit alternate proposals to the court by June 22, 2020 and stayed CVA defendants' disclosure obligations pending entry of a Confidentiality Order.

On June 22, 2020, the DLC and PLC each submitted their proposals with accompanying letter briefs. The court then held two conferences regarding the parties' submissions and entertained oral argument by the respective liaison committees. Following the second conference held on September 10, 2020, the DLC submitted a second letter brief on September 11, 2020. On September 18, 2020, the court issued the Confidentiality Order.

## ARGUMENTS

With the instant application the DLC, and additional defendants, seek to vacate or modify the Confidentiality Order by arguing that it improperly abrogates defendants' statutory, common law, and federal and state constitutional rights in excess of the authority of this court.

**I.      Section VIII(1)**

Most prominently, defendants contend that Section VIII(1) of the Confidentiality Order improperly and prematurely ruled that records concerning (i) prior and subsequent undefined "bad acts" by "an alleged sexual abuse perpetrator" and (ii) subsequent "corrective measures" taken by an institutional defendant "are discoverable, and will be disclosed upon request." More specifically, the DLC challenges Section VIII(1) of the Confidentiality Order by arguing that it "goes out of its way to direct disclosure of records regarding subsequent corrective measures that are not permitted under New York State law and the disclosure of which would constitute an improper invasion and intrusion of religious institutional CVA [d]efendants' First Amendment rights." In addition, the DLC contends that Section VIII(1) lacks specificity with respect to what constitutes a "bad act," and whether that term broadly applies to conduct unrelated to allegations of child sex abuse. Because Section VIII(1) directs disclosure without affording parties the right to object, and move for a protective order, the DLC states that it runs athwart of defendants' rights to due process and liberty.

In opposition, the PLC contends that the Confidentiality Order's requirement that defendants produce records of an alleged abuser's other "bad acts" is entirely consistent with the CVA and CPLR §3101(a)'s liberal discovery standard. Citing authorities in both the First and Second Department, the PLC avers that where there is any possibility that requested information may be used as evidence-in-chief, in cross-examination, or on rebuttal, it is deemed material for

discovery purposes, and therefore should be disclosed (*see e.g., First Equity Realty v. Harmony Group, II*, 129 NYS3d 777, 777 [1st Dept 2020]; *Matter of Metro-North Train Accident of Feb. 3, 2015*, 178 AD3d 931, 933 [2d Dept 2019]). The PLC further emphasizes that courts have long recognized the distinct standards that govern the discoverability and admissibility of evidence – and, critically, that "[p]retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof" (*Fell v. Presbyterian Hosp. in N.Y. at Columbia-Presbyterian Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983]).

In accordance with liberal disclosure rules, the PLC emphasizes that courts have repeatedly held that documents and information about prior and subsequent incidents, as well as remedial efforts taken, may be discoverable under CPLR §3101's liberal standard – even if ultimately inadmissible at trial (*see, e.g. Bigman v. Dime Sav. Bank, FSB*, 153 AD2d 912, 914 [2d Dept 1989]). The PLC underscores that "it is inconceivable that records of an abuser's 'prior bad acts' and 'subsequent bad acts' would not be useful in the context of…negligent retention, negligent hiring, or negligent supervision claims." Where, as here, the concern at issue is one of discoverability, rather than admissibility, the PLC contends that plaintiffs should be entitled to the disclosure of the records deemed discoverable by this court in its Confidentiality Order.

Even so, the DLC retorts by emphasizing that discovery of "bad acts" should be specifically defined by this court, and should encompass only prior incidents of child sexual abuse rather than broadly defined prior "misconduct" that may be wholly irrelevant to the claims at issue in a particular lawsuit. Moreover, defendant Diocese of Brooklyn, and other religious entities, contend that the Confidentiality Order's requirement of the disclosure of subsequent corrective measures impinges upon canon law, and the decision-making process of religious groups that may find themselves tasked with the responsibility of having to fire one of their ministers.[2]

Furthermore, certain defendants within the sphere of education seek to shield the production of records of "bad acts" and "corrective measures" by invoking the Family Educational Rights and Privacy Act of 1974 ("FERPA," or the "Buckley Amendment"), a federal statute which protects student "education records" from disclosure without their knowledge and/or consent.

In response, the PLC highlights that the Appellate Division, Second Department, has expressly held that disciplinary records, including a perpetrator's other instances of "violent and assaultive behavior," are relevant and thus discoverable as to whether an educational institution failed to adequately supervise that perpetrator (*see, e.g., Graham v. West Babylon Union Free Sch. Dist.*, 262 AD2d 605, 606 [2d Dept 1999] ["records of any past instances of violent and assaultive behavior on the part of the defendant Marc Maggio clearly would be relevant to the plaintiff's claim that the defendant West Babylon Union Free School District failed to adequately supervise Maggio"]).

The PLC also posits that the Appellate Division, Second Department, has elaborated that complaints or records of prior incidents are not even considered "education records" that warrant protection under FERPA (*Culbert v. City of New York*, 254 AD2d 385, 387 [2d Dept 1998]). To

---

[2] Defendant Diocese of Brooklyn elaborated on their arguments concerning the nuanced church-state issues of First Amendment jurisprudence at oral argument on December 16, 2020 through arguments proffered by Mark E. Chopko, Esq.

YSCEF DOC. NO. 399                                    RECEIVED NYSCEF: 03/30/202

be sure, courts have interpreted FERPA's definition of "education records" (i.e., "information directly related to a student") to include only "records relating to an individual student's performance," and not records compiled to "maintain the physical security and safety of the agency or institution" (*see Culbert*, 254 AD2d at 387). As such, plaintiffs maintain that FERPA does not apply to the disclosure of reported complaints of abuse within an educational setting.

Even assuming that FERPA does apply, the PLC argues that disclosure of educational records is still warranted where a court has expressly ordered the production of such records (*see e.g., Staten v. City of New York*, 90 AD3d 893, 895 [2d Dept 2011]). Where privacy concerns of students are weighed against the requesting parties' need for information, the PLC contends that the requesting parties' need for information should prevail, without question, since the information requested is relevant to the issue of an institution or employer's knowledge of an abuser's propensity for sexual misconduct – a necessary element of negligent retention, hiring, and supervision claims.

Beyond the observations above, City defendants contend that the necessity to disclose prior and subsequent incidents of alleged sexual abuse would necessarily require them to violate Section 50-b of the Civil Rights Law, which protects the identities of victims of sex crimes, thereby placing the City defendants at risk for additional civil liability. Specifically, under Section 50-b, "the identity of any victim of a sex offense" shall be confidential, including that no public officers or employees shall disclose any document "which tends to identify such a victim" unless an exception applies (Civil Rights Law §50-b[1]). City defendants argue that this court's Confidentiality Order defies the mandates of Section 50-b, and imposes upon them a disclosure requirement at odds with existing law.

In opposition, the PLC argues that City defendants' generalized reference to Section 50-b is overbroad as many of the requested documents plaintiffs are seeking do not actually identify a victim of a sex crime, and therefore fall outside the ambit of the statute. In addition, to the extent that any requested documents do, in fact, identify a sex crime victim, the PLC avers that plaintiffs may still be entitled to disclosure under Section 50-b(2)(b), upon a showing of good cause for discovery and upon notice to the identified victim and public officer charged with prosecuting the offense.

City defendants and foster care defendants also cite a variety of disparate, mutually-exclusive laws and court rules that address the protection of certain records, such as foster records. However, in opposition the PLC emphasizes that such laws must yield to court orders requiring the disclosure of such records. Where, as here, the court has provided that a category of records, including foster care records, should be disclosed, the PLC argues that defendants must comply with the court's directives or raise a particularized objection.

Finally, defendant Rockefeller University, an institution that houses a large volume of medical records, argues that requiring it to disclose prior bad acts and subsequent corrective measures would violate the Health Insurance Portability and Accountability Act ("HIPAA"), the New York State Mental Hygiene Law, or any other medical privileges by requiring the production of protected health information. In opposition, the PLC argues that the Confidentiality Order protects the privacy and other interests of third parties by requiring each defendant to redact the

names of likely abuse survivors who have not filed a lawsuit of their own and who are not represented by counsel. Moreover, the PLC contends that where privileged health information is found to be "material and necessary," it may be disclosed if "circumstances warrant overcoming the privilege" (*Cole v. Panos* (128 AD3d 880 [2d Dept 2015]). In the case of defendant Rockefeller University, the PLC also underscores the fact that most of the information sought by a plaintiff may not be health information at all, such as complaints or concerns that a health care provider was sexually abusing patients. In the PLC's view, such complaints or concerns may not be health information in the first instance because they are not about the person's health care, were not made for their care or treatment, and were not intended to be confidential or to remain confidential.

## II.    Sections II(1), III(1)(a), and IV(1)(a)

Next, defendants argue that Sections II(1) and IV(1)(a) of the Confidentiality Order improperly entitle a plaintiff in one CVA action to confidential discovery produced in another CVA action merely because they are suing the same party regardless of whether different alleged abusers, locations, and years of alleged abuse are involved. Since the CVA actions at issue are usually not consolidated class actions or coordinated mass torts, defendants aver that the sharing of wholly irrelevant, immaterial, and unnecessary records among disparate and diverse CVA actions confuses the record by becoming the subject of needless deposition testimony and impertinent expert opinion. Accordingly, the DLC asks for this court to vacate Sections II(1) and IV(1)(a) to prevent the sharing of discovery beyond the litigation in which it is exchanged.

In addition, the DLC submits that Section III(1)(a) of the Confidentiality Order should include information of a personal nature as being encompassed within the meaning of "Confidential Information." The DLC contends that the absence of information of a personal nature, which would cover the likes of occupational and educational records, when defining "Confidential Information" opens the door for the disclosure of a deluge of categories of information in several CVA lawsuits from disparate parties and non-parties. To protect against that, defendants submit that Section III(1)(a) should be modified to include information of a personal nature so that categories of information such as occupational and educational records are not automatically subject to disclosure while only the most sensitive information, for which a confidential designation is appropriate, is protected from disclosure.

In opposition, the PLC contends that "[w]here it is widely known these horrific acts were committed by serial abusers and systematically concealed by these institutions, the substantial overlap of common records and testimony calls out for parties to share information in specified instances, thereby avoiding a tremendous waste of time and resources." To be sure, the PLC contends that information sharing "would level the information disparity between victims and these large institutions." The PLC highlights that in Section 10 of the CVA, the legislature specifically directed the chief administrator of the courts to "promulgate rules for the timely adjudication of revived actions brought pursuant to section two hundred fourteen-g of the civil practice law and rules" (N.Y. Judiciary Law § 219-d). In the PLC's view, "[t]here is no question that a prohibition on discovery-sharing, as urged by defendants, would needlessly frustrate this statutory goal, thereby resulting in protracted and costly litigation."

Second, the PLC contends that discovery-sharing supports the CVA's goal of case coordination. For instance, the PLC states that where a coordinated deposition of a defendant representative is requested, discovery-sharing could promote efficiency by allowing all plaintiffs who have filed claims against that same defendant to participate in the deposition. Third, the PLC emphasizes that discovery-sharing also better ensures consistency in discovery responses for all plaintiffs suing common defendants by guaranteeing matching disclosures across the board. Finally, the PLC highlights that discovery sharing has been endorsed in clergy cases litigated in the states of California and Washington. In addressing defendants' concerns about unfettered disclosure, the PLC underscores that the Confidentiality Order explicitly directs all persons receiving confidential information to maintain that confidentiality.

**III.    Section IV(4)**

Next, the DLC argues that Section IV(4) of the Confidentiality Order improperly imposes an obligation on defendants to justify confidentiality and privilege designations. The DLC avers that the general practice in New York regarding challenges to confidentiality and privilege designations permits the receiving party to seek relief by motion to de-designate challenged information. By contrast, the DLC posits that the Confidentiality Order improperly sets up a system by which the producing party is required to seek judicial relief each time a receiving party disagrees with a designation, almost certainly guaranteeing motion practice will follow. Were the court to modify its Confidentiality Order to require the receiving party to incur the litigation costs of moving to lift a confidentiality designation, the DLC argues that motion practice would be decreased. The DLC notes that several institutional defendants are required to designate third- party information, such as records covered by a patient-physician privilege, as confidential. Were a plaintiff to arbitrarily disagree that such records are confidential, the DLC argues that it would be placed in the unenviable situation of having to move for relief that otherwise would seem self- evident.

In opposition, the PLC argues that the Appellate Division, First Department, has made it clear that CPLR §3101(a)'s liberal standard for discovery is intended to facilitate public access to court proceedings and records (*see e.g., MSCI Inc. v. Jacob*, 120 AD3d 1072, 1075 [1st Dept 2014] ["New York strongly encourages open and full disclosure as a matter of policy"]).Given this presumption of openness and full disclosure, the PLC emphasizes that it naturally follows that an individual or entity seeking a protective order bears the initial burden to establish that any specified information should be protected from discovery (*see e.g., Liberty Petroleum Realty, LLC v. Gulf Oil, L.P.*, 164 AD3d 401, 403-404 [1st Dept 2018][affirming that a party seeking a protective order "bears the initial burden to show that the information sought is irrelevant or that the process will not lead to legitimate discovery and, only then does the burden shift to the subpoenaing party to demonstrate that the information sought is material and necessary" and noting that the inverse rule of "plac[ing] the initial burden on the party seeking disclosure" would be inconsistent with New York law]). The PLC contends that Section IV(4) is consistent with that principle insofar as the Confidentiality Order provides that a producing party designating certain information as confidential, "will have the burden of justifying the propriety of its designation" in the face of any challenge (*see* Confidentiality Order, §IV[4]).

6

The PLC argues that defendants' attempt to reverse this presumption "is entirely unsupported by law or logic." First, the PLC underscores that courts have expressly held that parties who label information as "confidential" bear the burden of justifying those designations Next, the PLC emphasizes that if the inverted rule urged by defendants were adopted, nothing would prevent defendants from designating each and every document as confidential, thereby forcing plaintiffs to undertake to unseal the entirety of its production. This, in the PLC's estimation, is "the exact opposite of openness and accessibility." Finally, the PLC avers that defendants' potential to designate discoverable documents as confidential may well thwart the aims at efficiency contemplated by the Confidentiality Order, including a process to avoid numerous, duplicative motions for a protective order or to compel.

## IV.    Section V

The DLC next contends that Section V of the Confidentiality Order imposes broad unconstitutional duties on defendants that are contrary to the CPLR and vitiates defendants' rights, privileges, and protections under the CPLR, including their work product privilege. To be sure, the DLC argues that defendants are subject to disparate and varying laws and regulations that prohibit them from disclosing the identities of non-parties contained in produced records absent a specific authorization. The DLC contends that Section V of the Confidentiality Order improperly attempts to circumvent these protections, many of which are inviolable and others of which require the requesting party to establish individualized prerequisites before such information can be disclosed.

Notably, Section (V)(1)(a) of the Confidentiality Order directs defendants to redact the name of any person who has filed a CVA action under pseudonym, and replace it with a "doe code" in the documents produced in discovery and then to supply to each plaintiff a list of the counsel for each de-identified plaintiff. Pursuant to Section (V)(1)(b), where a document references the name of a plaintiff who has filed suit in his or her own name, the Confidentiality Order directs defendants to "produce the document without redaction" and "simultaneously produce to the [r]eceiving [p]arty's counsel a list of these [p]laintiffs by their name and identify the attorneys representing each of them." In addition, pursuant to Section V(1)(c), defendants are required to maintain a centralized database of "Doe Codes" to track persons "who may be a survivor of child sex abuse," but have not filed a lawsuit.

The DLC argues that these provisions, and in particular Section V(1)(c), require defendants' counsel to offer opinions and impressions about who may be a survivor of abuse, indisputably impinging upon and violating defendants' privileged conversations with their counsel to elicit judicial admissions based on client confidences and secrets. The DLC further avers that this portion of the Confidentiality Order further impinges upon defendants' rights by requiring then to further create a key that contains the true names and identifying information for these individuals" which is to be shared with the court and unidentified persons chosen by the court to have the privilege of viewing this database.

At its core, the DLC contends that Section V allows the court to assume the role of investigator for the parties, thereby coopting, interfering with, and invading work product privileges and protection of parties and their counsel. The DLC further contends that the court's

requirement that counsel seek its approval before conducting a non-party investigation or contacting non-parties has the potential to suffocate factfinding attempts within CVA lawsuits. In sum, to the extent that Section V of the Confidentiality Order imposes duties and obligations that do not exist under law, the DLC argues that it should be modified or vacated in its entirety.

In opposition, the PLC argues that Section V of Confidentiality Order sets forth procedures for the exchange of discoverable, non-privileged information. The PLC also states that defendants' request to shield discoverable facts under the guise of attorney-client and work-product privileges is vague and unfounded. The PLC also challenges defendants' assertions that the framework contemplated by this court forces defendants to assume the role of investigator. To be sure, the PLC posits that ascertaining whether someone is an abuse survivor rests on objective factual realities. Those factual realities, the PLC further states, "include publicly-filed lawsuits under the CVA, as well as direct complaints from abuse survivors identifying themselves as such (or letters from individuals identifying themselves as abuse survivors or identifying others as potential abuse survivors)." Consequently, the PLC surmises that the Confidentiality Order does not compel defendants to produce privileged documents or to divulge confidential communications with counsel. Finally, the PLC posits that while attorneys may ultimately analyze documents and facts, and devise a legal strategy based on those facts, it is their legal advice to their clients that is privileged, not the underlying facts involved. Accordingly, the PLC posits that Section V of the Confidentiality Order does not run athwart of defendants' rights under existing New York law.

## DISCUSSION

Disclosure in civil actions is generally governed by CPLR §3101(a), which directs: "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof." Courts have consistently held that "[t]he words, 'material and necessary', are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v. Crowell–Collier Publ. Co.*, 21 NY2d 403, 406 [1968]*; see also Andon v. 302–304 Mott St. Assoc.*, 94 NY2d 740, 746 [2000] ). A party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is "material and necessary"—i.e., relevant—regardless of whether discovery is sought from another party (*see* CPLR §3101[a][1] ) or a nonparty (CPLR §3101[a][4]; *see e.g. Matter of Kapon v. Koch*, 23 NY3d 32 [2014] ). The "statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise" (*Spectrum Sys. Intl. Corp. v. Chemical Bank*, 78 NY2d 371, 376 [1991]).

Nevertheless, the right to disclosure, although broad, is not unlimited. CPLR §3101 itself "establishes three categories of protected materials, also supported by policy considerations: privileged matter, absolutely immune from discovery (CPLR §3101[b]); attorney's work product, also absolutely immune (CPLR §3101[c]); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship" (*Spectrum*, 78 NY2d at 376–377, *supra*). The burden of establishing a right to protection under these provisions is with the party asserting it—"the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (*id.* at 377).

YSCEF DOC. NO. 399                                                    RECEIVED NYSCEF: 03/30/202

In addition, "'[p]retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof,' including material which might be used in cross-examination" (*Polygram Holding, Inc. v Cafaro*, 42 AD3d 339, 341 [1st Dept 2007] *quoting Fell v Presbyterian Hosp. in City of N.Y. at Columbia-Presbyt. Med. Ctr.*, 98 AD2d 624, 625 [1983]).

Finally, New York's Uniform Rules for Trial Courts Section 202.69 (*see* 22 NYCRR 202.69) allows a coordinating justice of a particular litigation to manage discovery and "issue case management orders after consultation with counsel."

Here, following the enactment of the CVA, plaintiffs and defendants litigating cases under the statute within New York City expressed a desire to establish uniform rules that would streamline the discovery process and fulfill the statute's goal of timely and expeditiously resolving such matters. To that end, I appointed a representative CVA Steering Committee consisting of the aforementioned DLC and PLC following the initial commencement of CVA actions within New York City. In the ensuing weeks, I met with the DLC and PLC to discuss issues within the litigation and solicited opinions regarding how best to coordinate discovery in CVA cases. Those meetings coalesced into the formation of CMO 1, which was the product of negotiation and consultation between the DLC and PLC. CMO 1 was issued on February 24, 2020. Thereafter, following additional negotiation and consultation between the DLC and PLC, CMO 2 was constructed, and subsequently issued on June 18, 2020. Relevantly, CMO 2 contained "Standard Automatic Disclosures Directed at Defendants," which set forth broad categories of documents to be produced by CVA defendants subject to objection. Section IX(A)(1) of CMO 2 directed the DLC and PLC to either jointly submit a proposed Confidentiality Order or to submit alternate proposals to the court by June 22, 2020, and stayed CVA defendants' disclosure obligations pending entry of a Confidentiality Order.

On June 22, 2020, the DLC and PLC each submitted their proposals with accompanying letter briefs. The court then held two conferences regarding the parties' submissions and entertained oral argument by the respective liaison committees. Following the second conference held on September 10, 2020, the DLC submitted a second letter brief on September 11, 2020. On September 18, 2020, I issued the Confidentiality Order.

The ultimate objective when this court fashioned CMO 1, CMO 2, and the Confidentiality Order, the provisions of which are consistent with the CPLR, was to allow the parties to obtain reasonably necessary documents and information without imposing undue burdens in order to permit the parties to evaluate the cases, reach early settlements, and prepare unsettled cases for trial. Discovery in CVA cases is likely to be complex, time-consuming, and expensive, and this court strives to minimize costs by ensuring that streamlined discovery is conducted. In doing so, this court has broadly interpreted the discovery obligations of both plaintiffs and defendants alike with the hope that CVA cases can be resolved without prompting expensive and drawn out disclosure periods. This approach has been consistently approved by the Appellate Division, First Department, as evidenced by its holdings in connection with challenges to case management orders drafted in connection with the New York City Asbestos Litigation (*see Matter of New York City Asbestos Litig.*, 130 AD3d 489 [1st Dept. 2015][ Coordinating justice has the authority to "issue

case management orders after consultation with counsel"]; *Matter of New York City Asbestos Litig.*, 159 AD3d 576 [1st Dept 2018][Finding that procedural protocols in new CMO, as well as other provisions challenged by defendants that were either present in preceding CMOs or appear for the first time in new CMO, do not deprive defendants of their due process or other constitutional rights, even where they do not strictly conform to the CPLR, and that the Coordinating Justice had the authority to issue these provisions absent defendants' consent]; *see also In re New York City Asbestos Litig. (Georgia-Pacific)*, 109 AD3d 7 [1st Dept 2013]; *In re NYC Asbestos Litigation (Ames v Kentile Floors)*, Index No. 107574/08, at *2 [Sup. Ct. NY. Co. June 17, 2009, Heitler, J.], *aff'd* 66 AD3d 600 [1st Dept 2009]).

    Prior to this court's issuance of CMO 1, CMO 2, and the Confidentiality Order, defendants and plaintiffs litigating cases under the CVA had an opportunity to be heard. Defendants' present disagreement with the court's Confidentiality Order is not enough to warrant its vacatur where defendants were afforded ample opportunity to present arguments and proposals concerning the items raised therein. To be sure, as has been observed in other contexts, the Confidentiality Order need not be disturbed merely because some of its provisions are said to be at odds with the CPLR (*see Matter of New York City Asbestos Litig.*, 159 AD3d 576, *supra*). Rather, because this court properly solicited the input of the DLC and PLC before issuing the Confidentiality Order, it has plenary authority to implement the disclosure objectives set forth within it (*id.*). As such, defendants' challenges to the viability of this court's Confidentiality Order are unfounded.

    Nevertheless, insofar as this court's Confidentiality Order contemplates by its very terms that it shall be subject to revision, the court will weigh and rule upon the issues presented by the parties in the hopes of issuing an Amended Confidentiality Order that is broadly accepted by both the DLC and PLC.

## I.    Section VIII(1)

    With respect to Section VIII(1) of the Confidentiality Order, the court has considered the parties respective arguments, and finds that the provision can remain subject to slight modification and clarification (*see* annexed Amended Confidentiality Order).

    As previously articulated, courts have consistently held that CPLR 3101(a)'s allowance for "full disclosure of all matter material and necessary in the prosecution or defense of an action" should be "'interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy'" in order to focus the issues in advance of trial (*see, e.g., Matter of Metro-North Train Accident of Feb. 3, 2015*, 178 AD3d 931, 933 [2d Dept 2019]). Where there is the possibility that the requested information may be used as evidence-in-chief, in cross-examination, or on rebuttal, it is deemed material for discovery purposes (*Metro-North Train Accident*, 178 AD3d at 933-934). Critically, the right to pretrial disclosure "extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof" (*Fell v. Presbyterian Hosp. in N.Y. at Columbia-Presbyterian Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983]). Here, even if evidence of an alleged abuser's "prior bad acts" may not be deemed admissible at trial, it is unquestionable that the disclosure of such acts would be "material and necessary" within the context of CVA actions where negligent retention, negligent hiring, or negligent supervision claims are pleaded. As defendants recognize, a "necessary element" of

10

negligent retention, hiring, and supervision claims is whether an institution or employer, such as a church, "knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v. Roman Catholic Diocese*, 229 AD2d 159, 161, 164 [2d Dept 1997] [plaintiffs stated causes of action for negligent retention and negligent supervision where their bill of particulars alleged the Catholic church had actual or constructive notice of a priest's "propensity to sexually abuse children" based on statements made by infant plaintiffs and by the priest himself to other priests]). To be sure, jurisprudence within the Appellate Division, Second Department, supports the inference that information about an alleged abuser's "prior bad acts" is necessary and relevant to a determination of whether an institution or employer was aware of an alleged abuser's propensity to sexually abuse children (*see Nevaeh T. v. City of New York*, 132 AD3d 840, 842 [2d Dept 2015]).

Contrary to defendants' assertions, the question of discoverability with respect to the disclosure of an alleged abuser's "prior bad acts" is separate and distinct from that of whether such evidence will, ultimately, be deemed admissible at trial. To be sure, one cannot conflate the CPLR's broad discovery rules by invoking standards for the admissibility of evidence of other "bad acts" at trial. Nevertheless, it is also worth noting that evidence of an alleged abuser's other "bad acts" may well be deemed admissible as evidence of actual or constructive knowledge or for non-propensity reasons, such as one's motive or intent (*see DeJesus v. Moshiashvili*, 176 AD3d 649, 650 [1st Dept 2019]).

Moreover, although some defendants posit that disclosure of an alleged abuser's prior bad acts would lead to the dissemination of protected educational, health, and agency records in contravention of multiple laws, such assertions are without merit. First, the Confidentiality Order allows for the dissemination of records of "prior bad acts" housed by an institution subject to redaction. Second, defendants are not without recourse if they believe that certain records should not be disclosed. To be sure, the PLC would consent to meet and confer with the DLC and even submit a subset of documents deemed protected to the court for *in camera* review. Third, the City defendants' generalized opposition to disclosure of records of "prior bad acts" by citing Section 50-b of the Civil Rights Law is overbroad as many of the requested documents plaintiffs are seeking do not actually identify a victim of a sex crime, and therefore fall outside the ambit of the statute. Likewise, the City defendants' opposition to the dissemination of agency records, like foster care records, must accede to the directives of this court's order in the absence of a particularized objection. Finally, the Confidentiality Order does not run afoul of HIPAA since most of the information sought by plaintiffs is not health information. To be sure, complaints or concerns that a health care provider was sexually abusing patients are not health information in the strictest sense as such complaints and concerns would not have been raised for the purpose of care or treatment, and were not intended to be confidential. As such, the court will not disturb Section VIII(1) of the Confidentiality Order as it relates to defendants need to disclose an alleged abuser's "prior bad act." The court does, however, see a need to expand on the meaning of "prior bad acts" by giving the term a definition that the parties can in turn use to inform their disclosure obligations (*see* annexed Amended Confidentiality Order).

In addition, upon review, the court finds that there is a need to remove the portion of Section VIII(1) of the Confidentiality Order that calls for the disclosure of "subsequent corrective measures." Reflecting on the arguments advanced by numerous defendants, the court finds that

YSCEF DOC. NO. 399                                          RECEIVED NYSCEF: 03/30/202

such a provision cannot be broadly applied to all defendants without irrevocably infringing upon the rights of some. Specifically, the court observes the arguments raised by the Diocese of Brooklyn and others relating to canon law. As highlighted by the Diocese of Brooklyn, the United States Supreme Court has held that church authorities have the freedom to organize and govern themselves according to their own law and policy, including the right to select and discipline ministers, free from state interference (*Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94, 116 [1952]). That bar against interference includes attempts to award damages to litigants whose claims implicate a church's selection and discipline of its ministers (*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 194 [2012]).

Were the court to countenance the disclosure of "subsequent corrective measures," it would be interfering with the province of ecclesiastical decision-making. Such a move would run counter to the United States Supreme Court's instruction to other secular courts not to subject religious institutions to having to defend their beliefs and practices in a court of law. Inviting questions into whether a church took any "corrective measures" by altering a priest's sacramental status, and the degree to which it adhered to canon law, presents the type of situation that would impermissibly require a religious institution to defend its beliefs and practices. Therefore, discovery and examination in that regard is barred. Nevertheless, plaintiffs could individually seek, and potentially receive, from defendants disclosure of information regarding the assignment to ministry without offending constitutional constraints, as such assignments – removed from inquiry into corrective conduct – carry with them the responsibility of supervision and oversight that is at issue in many CVA cases. Consequently, the court refuses to invite broad disclosure in all CVA cases of undefined "subsequent corrective measures" that may well implicate issues surrounding church defendants' internal governance, including church decisions regarding the ecclesiastical statuses of their priests and the church's own sacramental policies. Therefore, Section VIII(1) is amended to exclude the broad disclosure of "subsequent corrective measures."

## II.    Sections II(1), III(1)(a), and IV(1)(a)

As drafted, this court's Confidentiality Order allows a recipient of defendants' discovery to share that information with "the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers" (*see* Confidentiality Order, Section IV[1][a]). In addition, the Confidentiality Order prohibits recipients of discovery from disseminating the information "to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim" (*see* Confidentiality Order, §II[1]).

At their core, the sharing provisions contained within the Confidentiality Order simply allow an individual attorney representing one victim to request discovery information from another victim's attorney, so long as the cases involve a common party or abuser, to avoid the time and expense of duplicative discovery requests and motions in each separate action. This coordinated approach is aligned with the CVA's central objective of adjudicating cases filed under the statute within a timely manner. Several institutional parties have been repeatedly named in CVA lawsuits. Where plaintiffs have filed lawsuits against the same alleged abusers and institutions, it is incontestable that a substantial overlap exists with respect to common records and files. The

YSCEF DOC. NO. 399

RECEIVED NYSCEF: 03/30/202

necessity for this court to efficiently and expeditiously adjudicate all CVA matters before it calls out for parties to share information in specified instances, thereby avoiding a tremendous waste of time and resources. Indeed, in Section 10 of the CVA, the legislature specifically directed the chief administrator of the courts to "promulgate rules for the timely adjudication of revived actions brought pursuant to section two hundred fourteen-g of the civil practice law and rules" (N.Y. Judiciary Law § 219-d). Defendants request for this court to prohibit discovery-sharing would frustrate this statutory goal, and result in protracted and costly litigation.

As highlighted in the PLC's briefs, defendant Rockefeller University has been named in several CVA lawsuits based on alleged acts of sexual assault committed by Dr. Reginald Archibald. It would be highly inefficient, as the PLC underscores, for "each plaintiff to individually request, and for [defendant] Rockefeller [University] to separately produce, the exact same information regarding the grand jury investigation of Dr. Archibald and Rockefeller University during 1960-1961." The need for efficiency presupposes that discovery sharing occur in such cases. Other cases filed with this court under the CVA demand the same common-sense approach that would apply to a defendant like Rockefeller University.

In addition, discovery-sharing supports the CVA's goal of case coordination. Specifically, the legislature established dedicated parts within the New York State Supreme Court to adjudicate claims under the CVA, required special training of judges, and provided trial preference for older abuse victims (22 NYCRR § 202.72). In furtherance of that objective, this court, along with the DLC and PLC, has already worked to create CMO 1 and CMO 2, and has implemented standard disclosures as well as coordinated motion practice. As the litigation progresses, collaboration with respect to deposition-taking will be necessary. Such collaboration will require discovery-sharing with to all plaintiffs who have filed claims against the same defendant. Discovery-sharing will help facilitate such collaboration. Indeed, discovery-sharing has been ordered by courts across the country adjudicating claims of child sex abuse (*see Clergy Cases II Orde*r, No. JCCP4297 [CA Super. Ct. June 7, 2006][discovery-sharing ordered in California child sex abuse cases]; *see A.G. v. Corp. of the Catholic Archbishop of Seattle*, 162 Wn. App. 16 [Wash. Ct. App. 2011][ Washington Court of Appeals authorized discovery-sharing in multiple child sex abuse cases against the Archdiocese of Seattle]).

Contrary to defendants' position, this court's decision to allow plaintiffs' attorneys to share specific information about a common abuser is squarely within its broad discretion to settle matters relating to disclosure in accordance with CPLR §§ 3101(a) and 104. Notably, CPLR §104 specifically provides that "[t]he civil practice law and rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every civil judicial proceeding." Once again, discovery-sharing satisfies that objective. Even so, defendants submit that at the very least Section III(1)(a) should be modified to include information of a personal nature so that categories of information such as occupational and educational records are not automatically subject to disclosure. In response, plaintiffs appear to concede that there are instances where personnel files may be irrelevant if claims of negligent retention, hiring, or supervision, are not advanced. But where such claims are advanced, and a necessary element of the proof required involves an institution or employer's knowledge of whether an abuser had a propensity to commit the subject misdeeds, there can be no question that complaints or records in an alleged abuser's files are

directly relevant to defendants' knowledge of his or her propensity to commit the acts alleged. As such, disclosure of personnel files is warranted in such instances. At this juncture, Insofar as the Confidentiality Order already contemplates that all persons receiving confidential information are required to maintain that confidentiality, the court does not see a need to adopt the proposed amendment to Section III(1)(a) sought by defendants.

In sum, the court sees no need to disturb the discovery-sharing provisions set forth in Sections II(1), III(1)(a), and IV(1)(a) of the Confidentiality Order.

**III.    Section IV(4)**

Next, defendants argue that Section IV(4) of the Confidentiality Order improperly imposes an obligation on defendants to justify confidentiality and privilege designations. The court disagrees with that assessment. As highlighted by the PLC, an individual or entity seeking a protective order bears the initial burden to establish that any specified information should be protected from discovery (*see Liberty Petroleum*, 164 AD3d 401, *supra*). In line with that philosophy, defendants seeking to designate certain information as confidential, "will have the burden of justifying the propriety of [that] designation" in the face of any challenge (*see* Confidentiality Order, Section IV[4]). If the court reversed this rule, as urged by defendants, nothing would prevent defendants from designating each and every document as confidential. Faced with that scenario, plaintiffs would then be forced to make myriad applications seeking to unseal records. Such an outcome would run counter to openness and accessibility that this court's Confidentiality Order seeks to achieve. Moreover, the DLC's suggestion that the burden be shifted to plaintiffs would likely frustrate the aims at efficiency contemplated by the Confidentiality Order, including a process to avoid numerous, duplicative motions for a protective order or to compel. The cases cited by defendants in their moving papers do not require a different result, as none squarely address the initial burden one must overcome when designating a document as confidential. Even so, defendants' concerns must be balanced against the overwhelming need to expeditiously process and resolve CVA lawsuits.

As such, the court preserves Section IV(4) in its current form.

**V.    Section V**

Finally, defendants seek removal of Section V of the Confidentiality Order on account of its direction that defendants disclose the identities of non-parties contained in produced records absent specific authorizations. Defendants contend that such a practice could place them in unenviable position of having to violate varying and regulations that prohibit them from disclosing the identities of non-parties (e.g. the Buckley Amendment, the Americans with Disabilities Act). Defendants also question Section V's direction that CVA defendants redact the name of any person who has filed a CVA action under pseudonym, and replace it with a "doe code" in documents produced in discovery and then to supply to each plaintiff a list of counsel. In addition, defendants oppose Section V's requirement that they maintain a centralized database of "doe codes" to track persons "who may be a survivor of child sex abuse." Such a provision, defendants posit, would require defendants' counsel to offer opinions and impressions about who may be a survivor of child sex abuse, a practice likely to infringe upon privileged conversations with their clients.

14

Contrary to defendants' assertions, the determination of whether someone is an abuse survivor largely rests on indiscriminate facts such as publicly filed documents, as well as direct complaints from abuse survivors identifying themselves as such. Likewise, while attorneys may ultimately analyze those facts and devise a legal strategy, the facts alone are not privileged. Indeed, the attorney-client privilege "applies only to confidential communications with counsel" and "does not immunize the underlying faction information…from disclosure to an adversary" (*Niesig v. Team I*, 76 NY2d 363, 372 [1990]).

Here, Section V of the Confidentiality Order compels defendants to identify potential abuse survivors based on discoverable facts rather than attorneys' interpretation and analysis of those facts. As such, the disclosure of underlying facts surrounding potential abuse survivors does not violate the attorney-client privilege. Likewise, the work product doctrine does not immunize underlying facts from disclosure, and the party asserting this privilege bears the burden of showing that materials were prepared exclusively for litigation purposes (*Cioffi v. S.M. Foods, Inc.*, 142 AD3d 520, 522 [2d Dept 2016]).

Nevertheless, defendants voice legitimate concerns with respect to the practical application of Section V of the Confidentiality Order. For instance, the court's requirement that counsel seek its approval before conducting a non-party investigation or contacting non-parties has the potential to disturb defendants' factfinding attempts. Likewise, the requirement that defendants maintain a "key that contains the true names and identifying information for [identified] individuals" to be shared with the court and presently unidentified personnel chosen by the court could be unduly burdensome in the aggregate. Indeed, creation and maintenance of databases, as contemplated by the court, may well upset the aims at efficiency contemplated by this court.

As such, even though the court does not consider Section V of the Confidentiality Order as offensive to existing legal precedent, its vacatur is warranted in light of the court's concerns with respect to its implementation. Accordingly, the court strikes the language contained within Section V of the Confidentiality Order in its entirety.

## DIRECTIVES

The court reserves its right to issue directives subsequent to the issuance of this decision and order where necessary. The changes to the Confidentiality Order adopted by this court are reflected in the annexed Amended Confidentiality Order, which in turn replaces the Confidentiality Order issued by this court on September 18, 2020. As such, it is hereby

ORDERED that Section VIII(1) of the Confidentiality Order is amended in accordance with the annexed Amended Confidentiality Order; and it is further

ORDERED that Sections II(1), III(1)(a), and IV(1)(a) of the Confidentiality Order shall remain in place as reflected in this court's Confidentiality Order dated September 18, 2020; and it is further

ORDERED that Section IV(4) of the Confidentiality Order shall remain in place as reflected in this court's Confidentiality Order dated September 18, 2020; and it is further

YSCEF DOC. NO. 199

RECEIVED NYSCEF: 03/30/202

ORDERED that Section V of the Confidentiality Order is rescinded in accordance with the annexed Amended Confidentiality Order.

This constitutes the decision and order of the court.

**Dated**: March 30, 2021

GEORGE J. SILVER, J.S.C.

YSCEF DOC. NO. 399

RECEIVED NYSCEF: 07/30/202

# AMENDED CONFIDENTIALITY ORDER

YSCEF DOC. NO. 399    RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
--------------------------------------- x
                        :

                        :    **AMENDED**

**In re: CHILD VICTIMS ACT LITIGATION :    CONFIDENTIALITY ORDER**

                        :

                        :    **CASE MANAGEMENT**

                        :    **ORDER ("CMO") No. 2**

                        :

--------------------------------------- x

**CONFIDENTIALITY ORDER**
**Pursuant to Sec. IX of CMO 2**

WHEREAS this court finds good cause exists for the issuance of this confidentiality order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and

WHEREAS this confidentiality order shall remain in effect unless otherwise modified;

IT IS HEREBY ORDERED that all persons and entities subject to this order – including without limitation the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

I.     **Applicability.**

          1.     The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

          2.     Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

YSCEF DOC. NO. 199

RECEIVED NYSCEF: 07/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

3.  Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this order regardless of whether the non-party is or becomes bound by the terms of this order.

## II.  Use and Disclosure of Confidential Discovery Materials.

1.  No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim. The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation. Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation. In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation.

2.  Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information. Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order. Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

3.  The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III.  Confidential Designation.

1.  Any party may designate all or portions of Discovery Materials as "Confidential Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

    a.  "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically,

2

YSCEF DOC. NO. 399                                      RECEIVED NYSCEF: 07/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. Gen. Bus. Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b.    "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein.  Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information.  Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition.  Where it would not be

3

YSCEF DOC. NO. 199                                                    RECEIVED NYSCEF: 07/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

cost effective or would be burdensome, however, the Producing Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2.    Depositions.  When a deposition includes the disclosure of Confidential Information:

a.    Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation. During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information.  The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

b.    The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3.    Documents.  With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4.    Electronically Stored Information.  Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION." If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

4

YSCEF DOC. NO. 399                                                    RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## IV.    Disclosure of Confidential Information.

Confidential Information will not be disclosed by the Receiving Party except as permitted by this order.

1.    <u>Permissible Disclosures.</u>    A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

a.    the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers;

b.    such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

c.    the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

d.    the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

e.    the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms;

f.    a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

g.    any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

h.    this court, including any appellate court, its support and administrative personnel; and

YSCEF DOC. NO. 199                                                     RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

          i.     any court reporter and associated support staff employed in this litigation.

2.    <u>Authorized Disclosures.</u>  A Receiving Party may disclose Confidential Information if: (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3.    <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates.</u>  Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4.    <u>Challenges to Designation as Confidential Information.</u>  A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection. The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed. If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer. The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing. In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later. "Writing" and "written notice" shall include electronic communications.

YSCEF DOC. NO. 399                              RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

V.    ~~Identities of Abuse Survivors.~~ [RESCINDED]

  1.    ~~Possible Abuse Survivors Who Are Plaintiffs and/or Who Are Otherwise Represented by Counsel.~~

     a.    ~~Where a document contains the name of a Plaintiff who has filed suit under a pseudonym, the Producing Party shall redact the name and replace it with the pseudonym. The Producing Party shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by pseudonym and identify the attorneys representing each of them. Any such list is Confidential Information.~~

     b.    ~~Where a document references the name of a Plaintiff who has filed suit in his or her own name, the Producing Party shall produce the document without redaction but shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by their name and identify the attorneys representing each of them. Any such list is Confidential Information.~~

     c.    ~~Where a document references the name of a person who may be a survivor of child sex abuse, but the Producing Party is not aware that the person has filed suit, the Producing Party shall redact the person's name and replace it with a unique "Doe code" that allows the person to be tracked across documents. However, if the Producing Party is on notice that such a person may be represented by counsel, the Producing Party will simultaneously produce to the Receiving Party's counsel a list of these individuals by Doe code and identify the attorneys representing them. Any such list is Confidential Information.~~

     d.    ~~No party or their counsel will contact a Plaintiff or a person identified by a "Doe code" who is represented by counsel unless permission to do so is given by that Plaintiff or person's counsel. Rather, any party or their counsel who believes in good faith that contacting a Plaintiff or person identified by a "Doe code" is important to the party's claim or defenses may do so only through contact with the attorney representing that Plaintiff or person identified by a "Doe code."~~

     e.    ~~If permission to speak with the Plaintiff or person identified by a "Doe code" is denied or not responded to within a reasonable time, a party or their counsel may ask the court and/or other designated personnel appointed by the court for such communication.~~

  2.    ~~Possible Abuse Survivors Who Are Not Represented by Counsel.~~

7

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

a. ~~If a Producing Party does not believe that a person identified by a "Doe code" is represented by counsel, the Producing Party will create a list of the "Doe codes" for such persons with a key that contains the true names and identifying information for these individuals (the "Unrepresented Survivors List"). Any such list is Confidential Information but shall not be shared with anyone other than the court and/or other designated personnel appointed by the court.~~

b. ~~A party or their counsel may seek to contact an Unrepresented Survivor on the Unrepresented Survivors List through the following procedure:~~

   i. ~~The party or their counsel must submit an email or letter to the court and/or other designated personnel appointed by the court that sets forth their good faith belief that an Unrepresented Survivor may have discoverable information for the party's case. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be copied on the email or letter to the court and/or other designated personnel appointed by the court.~~

   ii. ~~The court and/or other designated personnel appointed by the court, after conferring with Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to understand if there are other parties who wish to speak to the same person, shall contact the Unrepresented Survivor, explain that information is being sought to assist with a party's claims or defenses, and inquire if the Unrepresented Survivor has any objection to being contacted.~~

   iii. ~~If the Unrepresented Survivor agrees to be contacted, the court and/or other designated personnel appointed by the court shall so advise the requesting party or their counsel by email or letter, and copy Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. The court and/or other designated personnel appointed by the court shall also advise the requesting party or their counsel of the Unrepresented Survivor's preferred means of being contacted.~~

   iv. ~~If an Unrepresented Survivor advises the court and/or other designated personnel appointed by the court that he or she does not want to be contacted, the court and/or other designated personnel appointed by the court shall advise the party or their counsel who made the request, by email or letter, with a copy to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Thereafter, the court and/or~~

YSCEF DOC. NO. 399                                          RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

other designated personnel appointed by the court shall provide the full name and last known address of the Unrepresented Survivor to the party or their counsel who made the request and to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Upon being provided with the identity of the Unrepresented Survivor, the parties in the action in which the relief is sought, Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel will coordinate the issuance and service of a subpoena on the Unrepresented Survivor in order to avoid duplicative subpoenas and to lessen any burden or hardship that such subpoena may cause to an Unrepresented Survivor. Other than service of the subpoena, no party or their counsel, or anybody acting on their behalf, may contact the Unrepresented Survivor prior to the deposition pursuant to the subpoena.

v.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be charged with coordinating, to the extent practicable, all motions, subpoenas, and depositions concerning Unrepresented Survivors in order to avoid duplicative motions and to lessen any burden or hardship that such motions or subpoenas may cause to an Unrepresented Survivor.

vi.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be given at least 20 days' notice by email of any deposition that may be noticed of an Unrepresented Survivor for the purpose of coordinating attendance at the deposition by other parties who have claims or defenses where information possessed by the Unrepresented Survivor may be discoverable and minimizing, to the extent practicable, any burden on the Unrepresented Survivor.

vii.    The court and/or other designated personnel appointed by the court shall maintain a copy of deposition transcripts of Unrepresented Survivors so the transcripts may be used by other parties with claims or defenses where the transcript may contain discoverable information.

c.    Nothing contained herein shall prevent a party or their counsel from contacting a person where the identity of the person was learned through sources other than documents produced pursuant to this Section.

YSCEF DOC. NO. 199                                    RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## VI.  Procedures for Filing Confidential Discovery Materials with the Court.

1.    If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action. The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2.    Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Party shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission. If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer. Any party may use its portion of any such joint letter to request full briefing of the dispute. The Moving Party shall be responsible for submitting the joint letter to the court.

3.    Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling. If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4.    Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

## VII.  Inadvertent Disclosure.

a.    <u>Confidential Information</u>. If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation. The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b.    <u>Privileged Materials</u>. If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney

10

RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

work product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.     Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure. In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.    Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii.   If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.     Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing

11

YSCEF DOC. NO. 399                                    RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Party. Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the privileged content during the course of this matter.

## VIII. Additional Provisions

1. <u>Prior Bad Acts, ~~Subsequent Bad Acts and Corrective Measures~~</u>. Generally, consistent with the substance of this order, records of: 1) prior bad acts,[1] ~~not limited to~~including previous accusations of sexual abuse, against an alleged sexual abuse perpetrator; ~~or 2) subsequent bad acts, not limited to consequent accusations of sexual abuse, by an alleged sexual abuse perpetrator and corrective measures by an institution,~~ are discoverable, and will be disclosed upon request.

2. <u>Treatment of Discovery Materials Upon Termination of Action.</u> Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until sixty (60) days after all such claims are terminated, including any appeals. Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action. Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

---

[1] For purposes of Section VIII(1), "Prior Bad Acts" are broadly defined to include documents, reports, complaints, notations within personnel files, and elsewhere, of previous accusations of abuse against an alleged sexual abuse perpetrator.

YSCEF DOC. NO. 399                                              RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

3.    No Waiver. Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of: (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence. In addition, nothing in this order shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4.    Non-Applicability of Order. The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information has become public in violation of this order. No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5.    Notices. Transmission by electronic mail is acceptable for all notification purposes under this order.

6.    Modification. This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court. The court reserves the right to modify this order for any reason that the court deems appropriate.

7.    Duration. This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8.    Survival. After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

**Dated**: March 30, 2021

_George J. Silver_
GEORGE J. SILVER, J.S.C.

13

YSCEF DOC. NO. 399                                           RECEIVED NYSCEF: 03/30/202

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I, _____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order. I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted. I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [                    ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.

Dated:_____            Signature: _____
                                 Printed Name: _____

14

YSCEF DOC. NO. 39

RECEIVED NYSCEF: 07/10/202

# EXHIBIT C

YSCEF DOC. NO. 39
FILED: APPELLATE DIVISION - 1ST DEPT 12/07/2021 10:46 AM    RECEIVED NYSCEF: 07/10/2022
                                                                           2021-01844
YSCEF DOC. NO. 105    RECEIVED NYSCEF: 12/07/2021

# Supreme Court of the State of New York

# Appellate Division, First Judicial Department

Acosta, P.J., Gische, Webber, Friedman, Kennedy, JJ.

| 14782 | In the Matter of ALL PLAINTIFFS IN CHILD VICTIMS ACT NYC LITIGATION v ALL DEFENDANTS IN CHILD VICTIMS ACT NYC LITIGATION | Index Nos. 950000/20 |
|---|---|---|

Index Nos. 950000/20
999999/20
70061/20E
512321/20
400044/20
151917/19
502720/20
950137/19
950225/19
950051/20

ANITA COOTE,
        Plaintiff-Respondent,

-against-

ARCHDIOCESE of NEW YORK et al.,
        Defendants-Appellants.

Case Nos. 2021-01844
2021-01846
2021-01861
2021-01890
2021-01905
2021-02060
2021-02306
2021-02359
2021-02360

JEREMIAH SUPPES,
        Plaintiff-Respondent,

-against-

DIOCESE OF BROOKLYN,
        Defendant-Appellant,

ST. MARY MAGDALENE PARISH and SCHOOL et al.,
        Defendants.

E.T.,
        Plaintiff-Respondent,

-against-

DIOCESE of BROOKLYN et al.,
        Defendants-Appellants.

BRUCE H. MORRISON, SR.,
      Plaintiff-Respondent,

        -against-

NEW YORK ARCHDIOCESE et al.,
      Defendants,

THE AMERICAN LEGION,
      Defendant-Appellant.

_____

GLORIA PFEIFFER,
      Plaintiff-Respondent,

        -against-

THE ROMAN CATHOLIC DIOCESE of BROOKLYN,
NEW YORK, et al.,
      Defendants,

THE PROVINCE OF ST. MARY of the CAPUCHIN
ORDER,
      Defendant-Appellant.

_____

ANONYMOUS MR.,
      Plaintiff-Respondent,

        -against-

ARCHDIOCESE of NEW YORK et al.,
      Defendants,

THE SOCIETY OF AFRICAN MISSIONS TRUSTEES
COMPANY LIMITED BY GUARANTEE doing business
as SOCIETY OF AFRICAN MISSIONS-IRELAND
PROVINCE et al.,
      Defendants-Appellants.

_____

2

YSCEF DOC. NO. 39

RECEIVED NYSCEF: 07/10/202

ANONYMOUS PM.,
      Plaintiff-Respondent,

      -against-

ARCHDIOCESE of NEW YORK et al.,
      Defendants,

THE SOCIETY OF AFRICAN MISSIONS TRUSTEES
COMPANY LIMITED BY GUARANTEE doing business
as SOCIETY OF AFRICAN MISSIONS-IRELAND
PROVINCE et al.,
      Defendants-Appellants.

———————

JAMES FILARDI,
      Plaintiff-Respondent,

      -against-

THE ROMAN CATHOLIC ARCHDIOCESE OF NEW YORK
et al.,
      Defendants-Appellants.

———————

Leahey & Johnson, P.C., New York (Peter James Johnson and Joanne Filiberti of counsel), for the Archdiocese of New York and Defendants liaison counsel for Child Victims Act (CVA) Litigation, appellants.

McGivney, Kluger, Clark & Intoccia, P.C., New York (Kenneth S. Ross of counsel), for St. Francis de Sales Roman Catholic Church, appellant.

Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success (Christopher Simone of counsel), for The Roman Catholic Diocese of Brooklyn, member firm of Defendants Liaison counsel for CVA Litigation, appellant.

Scahill Law Group P.C., Bethpage (James G. Flynn of counsel), for the Roman Catholic Church of St. Clement Pope, appellant.

Kiernan Trebach LLP, New York (Alexander H. Gillespie of counsel), for the American Legion, appellant.

Hinshaw & Culbertson LLP, New York (Concepcion A. Montoya of counsel), for the Province of St. Mary of the Capuchin Order, appellant.

Lewis Brisbois Bisgaard & Smith LLP, New York (Nicholas Hurzeler of counsel), for The Society of African Missions Trustees Company, appellants.

Harrington, Ocko & Monk LLP, White Plains (Dawn Foster of counsel), for The New York Foundling and Sisters of Charity of Saint Vincent DePaul of New York, appellants.

Vigorito, Barker, Patterson, Nichols & Porter, LLP, Garden City (Joseph P. Muscarella of counsel), for The USA Northeast Province of the Society of Jesus, Inc., The New York Province of the Society of Jesus, The Jesuits of Fordham, Inc., and Mount Manresa, appellants.

Rivkin, Radler LLP, Uniondale (Matthew A. Lampert of counsel), for The New York Province of the Society of Jesus, The USA Northeast Province of The Society of Jesus, Inc., St. Ignatius Retreat House, Inc. and McQuaid Jesuit High School, appellants.

Gair Gair Conason Rubinowitz Bloom Hershenhorn Steigman & Mackauf, New York (Richard M. Steigman of counsel), for plaintiff's liaison counsel for NYC Child Victims Act Litigation, respondents.

James, Vernon & Weeks, P.A., New York (Craig K. Vernon of counsel), for Anita Coote, respondent.

Marsh Law Firm PLLC, New York (James R. Marsh of counsel), for Jeremiah Suppes, respondent.

Herman Law, New York (Stuart S. Mermelstein of counsel), for E.T., respondent.

Nagel Rice, LLP, New York (Bradley L. Rice of counsel), for Bruce H. Morrison Sr., respondent.

Levy Konigsberg, LLP, New York (Matthew J. Shock of counsel), for James A. Filardi, respondent.

YSCEF DOC. NO. 39                                                    RECEIVED NYSCEF: 07/10/202

Order, Supreme Court, Bronx, Kings, New York, Queens, and Richmond Counties (George J. Silver, D.C.A.J.), entered on or about March 30, 2021, which, insofar as appealed from as limited by the briefs, denied defendants' motions to vacate or modify certain provisions of the September 18, 2020 confidentiality order, unanimously modified, on the facts and in the exercise of discretion, to grant the motions to modify the confidentiality order to the extent stated herein, and otherwise affirmed, without costs.

This appeal concerns the thousands of cases commenced across New York City under the recently enacted Child Victims Act (CVA), which extended the time in which certain cases involving sexual misconduct against children could be brought (*see* CPLR 208[b], 214-g). These cases were informally aggregated pursuant to 22 NYCRR 202.72(1) and assigned to Justice Silver as the CVA Regional Part Judge.

Justice Silver issued Case Management Order No. 2 (CMO #2), which delayed disclosure of broad categories of documents to be produced by defendants until entry of a confidentiality order or submission of proposed orders. Following the submission, Justice Silver issued the subject confidentiality order.

Of relevance here, the order allowed any party to designate discovery as "Confidential" to the extent it contained "non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically, medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. General Business Law § 899-aa" or health information. It also permitted disclosure of materials so designated to "the parties" to a civil CVA claim "involving one or more of the same parties or one or more of the same alleged abusers" and prohibited dissemination of such materials to "any person not reasonably involved

5

YSCEF DOC. NO. 39                                    RECEIVED NYSCEF: 07/10/202

in the prosecution, defense, or settlement" of such a claim (the Sharing Provisions). It further provided that, in the event a "Receiving Party" objected to a confidential designation, it was the "Producing Party's" burden to seek relief from the court and to "justify[] the propriety of its designation." The order also specified that there was no waiver of any party's "right to object to any discovery request on any ground," to assert "any applicable privilege or protection," or to apply for "further or additional protective orders" (the No Waiver Provision).

Multiple defendants moved to vacate the Sharing provisions, reverse the burdens set forth in the Challenge Provision, and add additional categories of documents to those that could be designated as Confidential. In addition, defendant The New York Foundling, sought to create procedures for in camera review of foster care and adoption records and defendant Ireland Province, Society of African Missions, Inc. d/b/a Society of African Missions – American Province (SMA), a foreign entity organized under Irish law, sought to limit its disclosure obligations to comply with the European Union (EU) General Data Protection Regulation (GDPR).

Supreme Court held that the Sharing Provisions supported the CVA's goals of efficiency and case coordination. On specific objections to the confidentiality, Supreme Court held that it was not necessary to modify the definition of confidential information because employment and educational records were "directly relevant" to defendants' knowledge of the abusers' propensity to commit the acts alleged. It also held that it was appropriate to place the burden of demonstrating confidentiality on the defendant who made the designation because, otherwise, "nothing would prevent defendants from designating each and every document as confidential," forcing plaintiffs to "make myriad applications seeking to unseal records." We recognize the formidable work done

to craft a confidentiality order in this important and sensitive litigation. For the reasons stated below however, we find that certain limited modification of the confidentiality order is warranted.

In § IV(1)(a), the language "involving one or more of the same parties or one or more of the same alleged abusers," is replaced with "involving the same alleged abuser. Not less than 20 days prior to such disclosure, the Receiving Party must provide notice of the intended disclosure to the Producing Party, specifying the date thereof, identity of the intended recipient(s), and nature of the documents to be disclosed." In § II (1), the language "any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers," is replaced with "any person not authorized to receive such materials pursuant to § IV herein." These modifications are necessary to create consistency between these provisions, to ensure that only material and necessary information is shared, and to protect defendants' rights to object to sharing and to enforce the prohibitions on further dissemination.

In addition, § III(1)(a)(i) is modified to include an additional category of documents that may be designated as confidential – namely, "personal information, including educational and employment records." Although these documents are indisputably relevant, designating them confidential will not affect defendants' obligation to disclose them but only the breadth of their dissemination.

These same provisions also adequately preserve defendants' rights to object to discovery or sharing of documents subject to the European Union's General Data Protection Regulation.

Defendant The New York Foundling is correct that heightened protections are

YSCEF DOC. NO. 39                                   RECEIVED NYSCEF: 07/10/202

afforded to foster care and sealed adoption records (*see* Domestic Relations Law § 114; *Golan v Louise Wise Servs.*, 69 NY2d 343, 347-348 [1987] [adoption records]; Social Services Law § 372[3], [4][a]; *K.B. v SCO Family of Serv.*, 159 AD3d 416, 417 [1st Dept 2018] [foster care records]). However, the no waiver provision (§ VIII [3]) of the confidentiality order already preserves defendants' rights to object to discovery requests for such records, and the above modifications to § IV(1)(a) give defendants 20 days in which to object to the sharing of such documents across actions.  In the event defendant The New York Foundling objects to the discovery request, these records will be submitted for an in camera review by Supreme Court to determine their discoverability.

Section IV (4) properly places the burden of justifying the confidential designation on the Producing Party, as the burden of demonstrating that disclosure is improper is always on the party seeking to avoid disclosure (*see Liberty Petroleum Realty, LLC v Gulf Oil, L.P.*, 164 AD3d 401, 403-404 [1st Dept 2018]; *R.C. Church of the Good Shepherd v Tempco Sys.*, 202 AD2d 257, 257-258 [1st Dept 1994]). Further, Supreme Court providently exercised its discretion in upholding the requirement that the Producing Party make a motion to retain a challenged confidentiality designation. While some confidentiality orders require the Receiving Party to make such motions, the burden of establishing the propriety of the designation is still placed on the Producing Party (*see e.g.* 22 NYCRR 202.70, Appx B, § 4; *Brummer v Wey*, 2019 NY

YSCEF DOC. NO. 39

RECEIVED NYSCEF: 07/10/202

Slip Op 33757[U], *5-9 [Sup Ct, NY County 2019]; *Exeter Law Group LLP v*

*Immortalana Inc.*, 2017 NY Slip Op 30092[U], *2-5 [Sup Ct, NY County 2017]).

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: December 7, 2021

Susanna Molina Rojas
Clerk of the Court