# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
"JOHN DOE" (A PSEUDONYM) AND MARY DOE (A PSEUDONYM),

         Plaintiff,

  -against-

YAAKOV DAVID KLAR, YESHIVA TZOIN YOSEF AND CHAI LIFELINE, INC., CHEDER CHABAD OF MONSEY, YESHIVTH KEHILATH YAKOV OF MONSEY a/k/a YESHIVA KEHILATH YAKOV, INC.,

         Defendants.
-----------------------------------------------------------------------X

Index No.: 951468/2021

**NOTICE OF MOTION**

  **PLEASE TAKE NOTICE**, that upon the annexed affirmation of Darren Epstein, attorney for Plaintiffs, dated 11th day of October, 2024, and upon all the prior pleadings and proceedings herein, the undersigned will move this Court, at 60 Centre Street, New York, New York, Motion Part, Room 119, on November 15, 2024, at 9:30 AM, or as soon thereafter as counsel can be heard, for an Order granting Directed Judgment on the amount of the policy limits available for the Plaintiff, and for such other and further relief as this Court deems just and proper.

  **PLEASE TAKE FURTHER NOTICE**, that pursuant to CPLR 2214(b), these papers have been served on you at least sixteen days before the motion is scheduled to be heard. You must serve your answering papers and any notice of cross-motion with supporting papers, if any, at least seven days before such time. Reply or responding affidavits shall be served at least one day before such time.

DATED: October 11, 2024
New City, New York

							Darren Epstein
							Epstein Legal Services, P.C.
							*Attorney(s) for Plaintiffs*
							*254 South Main Street*
							*Suite 406*
							*New City, NY 10956*
							Phone: (845) 634-6800
							Fax: (845) 634-6801

Sent via E-Filing

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
"JOHN DOE" (A PSEUDONYM) AND MARY DOE (A PSEUDONYM),

                           Plaintiffs,

       -against-

YAAKOV DAVID KLAR, YESHIVA TZOIN YOSEF AND CHAI LIFELINE, INC., CHEDER CHABAD OF MONSEY, YESHIVTH KEHILATH YAKOV OF MONSEY a/k/a YESHIVA KEHILATH YAKOV, INC.,

                           Defendants.
------------------------------------------------------------------X

Index No.: 951468/2021

**AFFIRMATION IN SUPPORT**

Darren Epstein, an attorney, duly admitted to practice in the court of New York State, pursuant to CPLR 2106, affirms the following under penalty of perjury based upon a review of the file and upon information and belief:

1. I am the attorney for the Plaintiffs in the above-entitled proceeding and am fully familiar with all the facts and circumstances herein.

2. I make this motion for a directed judgment on the amount of coverage that Defendant Chai Lifeline Inc (Chai Lifeline) had under the Markel, Evanston Insurance Company (Hereinafter, "Markel") Policy (Exhibit 1).

3. The policy limits are: "$1,000,000.00 All Claims Made By Each Claimant" and "$1,000,000.00 All Claims under Sexual Acts Liability Coverage." (See Section F Limit of Liability- Sexual Acts Liability Coverage: Page 2 of 2 of the SEXUAL ACTS LIABILITY ENDORSEMENT).

4. Section G, Multiple Sexual Acts: states, "Two or more Sexual Acts against one

person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

5. Plaintiff has opined that there is $1,000,000.00 per claimant, therefore, Plaintiff is entitled to coverage with a policy limit of $1,000,000.00.

6. Whereas Defendant Chai Lifeline claims this is an eroding policy and that there is only a total of $1,000,000.00 of coverage for all claims made against their insured. In other words, there was another claimant, with an unrelated action, not related to the events alleged in Plaintiff's complaint; that matter was settled, and Defendant Chai Lifeline is alleging that Plaintiff's policy limits of $1,000,000.00 was reduced by the amount of that settlement.

7. The Plaintiff is asking this Court to order that the policy limit for the Plaintiff's cause of action is $1,000,000.00 for all claims made by Plaintiff. Furthermore, the policy limit is not eroded by any other matter settled by the Defendant Chai Lifeline's insurance company, which is unrelated to the allegations made by the Plaintiff against the Defendant Chai Lifeline.

**ARGUMENT**

8. The Plaintiff argues that at a minimum, there is $1,000,000.00 of coverage on behalf of a claimant of sexual abuse against the Defendant under the Markel Sexual Acts Liability Endorsement under policy number SM937777.

9. The language of the policy sets forth that there is $1,000,000 of coverage for "All Claims Made by Each Claimant" and $1,000,000 of coverage for "All

Claims under Sexual Acts Liability Coverage."

10. There is no conjunction like "and", "or" between those clauses and there is no exclusion of separate sexual abuse on separate dates and over long periods of time. In other words, for each separate day that the Plaintiff was sexually abused would be a new occurrence and subject the Defendant for a new event and new claim under the policy.

11. In one respect the policy provides simply $1,000,000 "All Claims Made by Each Claimant"; there is no language which excludes the Claimant from bringing a separate claim for each separate sexual abuse that occurred on different dates and at different times or at different locations.

12. The policy also provides $1,000,000 for "All Claims under Sexual Acts Liability Coverage"; again, there is no language which excludes the Claimant from bringing a separate claim for each separate sexual abuse that occurred on different dates and at different times or at different locations.

13. Accordingly, at a minimum there is $1,000,000 in coverage and, pursuant to our reading of the policy, there is $1,000,000 for each occurrence which was separate and distinct from another occurrence.

14. Furthermore, the policy does not set forth any provision which would allow for an erosion of the $1,000,000 policy limits from any case that is unrelated to the causes of action by the Plaintiff.

15. The Defendant Chai Lifeline's insurer has claimed that the policy was eroded from a settlement on a matter that is totally unrelated to the claims made by the

Plaintiff. (I do not have any of the information on that settlement, it has not been provided, however, I was informed that it is unrelated). The remaining policy limits were tendered to me, on behalf of my client (Due to these being settlement discussions, I will not provide the amount in this affirmation, however, I can provide the amount in camera to the Court, if required.

16. The policy is ambiguous, it does not have any language which states that this policy is an eroding policy that would include erosion from a separate cause of action against the Defendant, completely unrelated to the Plaintiffs allegations in the complaint (Exhibit 2).

17. The Court in <u>Arthur A. Johnson Corp., v. Indemnity Ins. Co. of N. Am</u>, 7 N.Y.2d 222 (1959), set forth how to determine whether there are one or more occurrences within the meaning of an insurance clause limiting coverage to a certain amount per occurrence. <u>Appalachian Ins. Co. v. General Elec. Co.</u>, 8 N.Y.3d 162 (2007), held that incidents of sexual abuse that spanned over different periods of time on different dates cannot share the temporal and spatial characteristics as one event. The unfortunate event test was applied to determine how occurrences are categorized for insurance coverage purposes. The Court opined that nothing evinces an intent to aggregate the incidents of sexual abuse into a single occurrence.

18. After reviewing the Markel Sexual Acts Liability Endorsement under policy number SM937777, the Markel only has one policy to cover all claims of Sexual Acts against one of its insureds. The New York case law is very clear that multiple occurrences of sexual abuse of multiple victims cannot be viewed

as one occurrence. In the same respect, multiple occurrences of sexual abuse of a single victim would only be limited if the language of the policy is specific enough to limit the scope of the policy.

19. There is no language within Markel's policy indicating an intent to aggregate multiple victims of sexual abuse into a single occurrence or single policy limit.

20. Rather, the policy only states that two or more sexual acts against one person shall be deemed one sexual act. In other words, if multiple sexual acts on any occurrence.

21. Markel's policy states: "Sexual Act means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services." The policy does not limit the coverage by occurrence. Therefore, the Plaintiff is entitled to separate coverage for each of the occurrences covered by this policy.

22. While unambiguous provisions of a policy are given their plain and ordinary meaning, where there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer (see Lavanant v General Acc. Ins. Co. of Am., 79 NY2d 623, 629, 595 NE2d 819, 584 NYS2d 744 [1992]). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162, 566 NE2d 639, 565 NYS2d 440 [1990]).

23. Moreover, if the provisions of the policy are regarded as ambiguous, given the facts of this case, it is proper to resolve any such ambiguities "against the insurer who drafted the policy" (City of New York v Evanston Ins. Co., 39

AD3d 153, 156, 830 NYS2d 299 [2007].

24. "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162, 566 NE2d 639, 565 NYS2d 440 [1990]).

25. "Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations" (Ellington v EMI Music, Inc., 24 NY3d 239, 244, 997 NYS2d 339, 21 NE3d 1000 [2014].

26. The language in the Sexual Acts Liability Endorsement is ambiguous and does not set forth language that this is an eroding policy, it does not set forth language that the policy limits would be eroded by a separate claim unrelated to the Plaintiff's allegations in the complaint and the language does not prevent a claimant from bringing multiple claims for separate sexual abuse that happened on different dates and times. In other words, the Plaintiff is entitled to $1,000,000 per claim on the separate dates of sexual abuse.

27. In R.C. Diocese of Brooklyn v Natl. Union Fire Ins. Co. of Pittsburgh, PA., 21 NY3d 139 (2013), the argument by the Diocese that the language in the policy regarding "continuous or repeated exposures to conditions" constitutes such language was decided to be without basis. The Court of Appeals in Diocese of Brooklyn specifically rejected the argument by the Diocese that the acts of sexual abuse were one occurrence because they constituted "continuous or repeated exposure to substantially the same general harmful conditions", as

defined in the policies. Id. at 150. The court considered the identical language that the Diocese is relying on here concerning "continued or repeated exposure to conditions" and found that "nothing in the language of the policies, nor the definition of 'occurrence,' evinces an intent to aggregate the incidents of sexual abuse into a single occurrence." Diocese of Brooklyn, 21 N.Y.3d at 149. According to the court:

28. ...[S]exual abuse does not fit neatly into the policies' definition of "continuous or repeated exposure" to "conditions." This "sounds like language designed to deal with asbestos fibers in the air, or lead-based paint on the walls, rather than with priests and choirboys. A priest is not a 'condition' but a sentient being.

29. The Court adopted the "unfortunate event" test, In Appalachian Ins. Co. v General Elec. Co., 8 NY3d 162, 863 NE2d 994, 831 NYS2d 742 (2007), the Court stated that absent policy language indicating an intent to aggregate separate incidents into a single occurrence, the unfortunate event test should be applied to determine how occurrences are categorized for insurance coverage purposes (see Appalachian, 8 NY3d at 173). The Court determined that the unfortunate event test requires consideration of "whether there is a close temporal and spatial relationship between the incidents giving rise to injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors" (Id. at 171).

30. In Natl. Liab. & Fire Ins. Co. v Itzkowitz, 624 F App'x 758, 760-761 (2d Cir 2015), the Court held under New York law, "absent policy language indicating an intent to aggregate separate incidents into a single occurrence, the

unfortunate event test should be applied to determine how occurrences are categorized for insurance coverage purposes." Citing, Roman Catholic Diocese v. Nat'l Union Fire Ins. Co., 21 N.Y.3d 139, 991 N.E.2d 666, 672, 969 N.Y.S.2d 808 (N.Y. 2013).

31. The unfortunate event test, in turn, involves a two-part inquiry. First, the Court identifies the "operative incident . . . giving rise to liability in this factual context." See, Appalachian Ins. Co. v. Gen. Elec. Co., 8 N.Y.3d 162. Second, after identifying the operative incident or incidents, the Court considers "whether there is a close temporal and spatial relationship between the incidents giving rise to injury or loss, and whether the incidents can be viewed as part of the same causal continuum, without intervening agents or factors." Id. at 999.

32. In the present case, the events at the Defendants' property were on different dates, at different times and over the course of several years. These events are not one occurrence; accordingly, the Defendants' policy would be available for each incident as a separate occurrence. Furthermore, even if the $1,000,000.00 for "All Claims Made by Each Claimant" was available, the $1,000,000.00 would be available for each policy period that he was sexually abused. In other words, every year there is an additional $1,000,000.00 available.

33. Accordingly, there is a minimum of $1,000,000.00 in coverage. Moreover, even if there was an eroding policy, the language of the policy does not set forth that the amount could be deducted based on a separate set of victims who were sexually abused, who are not connected to the Plaintiff's causes of action, and who have separate claims against the insured.

34. In other words, the only Defendants' insurance company is required to provide a minimum of $1,000,000 of coverage per occurrence for the Plaintiff.

35. WHEREFORE, the Plaintiff demands a directed judgment that the policy limits of the above-mentioned policy are $1,000,000 per claim of sexual abuse by the Plaintiff on the separate dates and times and/or in the alternative that there is $1,000,000 of coverage for the Plaintiff, that there is no eroding policy provision.

**WHEREFORE**, the undersigned respectfully requests the within motion to be granted.

DATED:   October 9, 2024
         New City, New York

_____
Darren Epstein
Epstein Legal Services, P.C.
*Attorney(s) for Plaintiffs*
254 South Main Street
Suite 406
New City, NY 10956
(845) 634-6800