# Exhibit F



Skarzynski Marick & Black LLP
One Battery Park Plaza, 32nd Floor
New York, NY 10004
P 212.820.7700 | F 212.820.7740
skarzynski.com

**Evan Shapiro, Esq.**
Direct Line: 212.820.7712
eshapiro@skarzynski.com

November 15, 2024

**VIA E-MAIL AND U.S. MAIL**

Darren Epstein, Esq.
254 South Main Street, Suite 406
New City, New York 10956
darren@depsteinesq.com

Kevin T. Mulhearn, Esq.
60 Dutch Hill Road, Suite 6B
Orangeburg, New York 10962
Kmulhearn@ktmlaw.net

Re: *John and Mary Doe v. Chai Lifeline, Inc., et al.*
Insured:        Chai Lifeline, Inc.
Insurer:        Evanston Insurance Company
Policy No.:     SM937777
Policy Period:  October 15, 2020 to November 15, 2021
File No.:       SM411502

Dear Attorneys Epstein and Mulhearn,

Please be advised that this firm has been retained as coverage counsel representing Evanston Insurance Company (Evanston) in connection with the above-referenced matter (the "Doe Action") as against Chai Lifeline, Inc. DBA: Camp Simcha ("Chai" or the "Insured"). As you are aware, Evanston issued to Chai a Specified Medical Professions Insurance Policy, policy number SM937777 (the "Evanston Policy").[1] This letter is to confirm Evanston's position regarding the limits of the coverage afforded by the Evanston Policy and to provide you with Evanston's position regarding your motion in the Doe Action, which seeks "an Order granting Directed Judgment on the amount of the [Evanston Policy] limits available for the Plaintiff" (the "Limits Motion") and your proposed declaratory judgment action by the Does directly against Evanston (the "proposed Limits Action").

**For the reasons set forth below, we hereby advise that both the Limits Motion and the proposed Limits Action are flawed for multiple reasons and proceeding with either would be completely without merit, frivolous and a waste of judicial resources. As such, should you maintain either or both proceedings Evanston will seek sanctions pursuant to 22 NYCRR 130-1.1 or any other similar rules or powers of the relevant court. Please be guided accordingly.**

---

[1] You have clearly received a copy of the Evanston Policy as it was attached as Exhibit 1 to the Limits Motion. Accordingly, we do not attach it to this letter. Nonetheless, should you like an additional copy of the Evanston Policy, please advise the undersigned and it will be provided.

Darren Epstein, Esq.
Kevin T. Mulhearn, Esq.
November 15, 2024
Page 2

### The Doe Action

As an initial matter, we understand that you do not dispute that the Doe Action Complaint, which was verified by Attorney Epstein, asserts claims against Chai (and others) for Damages based on the alleged sexual abuse and/or sexual assault of plaintiff John Doe within the scope of the Sexual Acts Liability Coverage Part. In addition, it is also our understanding that the Doe Action is in very early stages of discovery and Plaintiffs have not obtained a judgment of liability against Chai.

Please promptly advise the undersigned if you contend that these understandings are incorrect.

### Plaintiffs John and Mary Doe Do Not Have Standing to Sue Evanston Prior to a Judgment Against Chai

New York law is clear that plaintiffs in a personal injury action do not have standing to sue a defendant/tortfeasor's insurer directly unless the injured party has first obtained a judgment against the tortfeasor that remains unsatisfied for 30 days. *See* N.Y. Ins. Law § 3420; *see also, e.g., Lang v. Hanover Ins. Co.,* 3. N.Y. 3d 350, 353-55 (2004) (holding that compliance with the requirements of N.Y. Ins. Law § 3420 is a condition precedent to any injured third-party's direct action against an insurance company, including an action for declaratory relief); *Carr v. Haas,* 163 A.D.3d 1212, 1213-14 (3d Dept. 2018) (holding that injured plaintiff has no right to seek relief directly from a tortfeasor's insurer prior to obtaining a judgment against the insured); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. State of New York*, 72 A.D.3d 620, 621, 901 N.Y.S.2d 176, 177 (1st Dept. 2010) (under N.Y. Ins. Law § 3420 a judgment against the insured is a condition precedent to a direct suit against its insurer).[2]

The Evanston Policy also prohibits a direct claim against Evanston by third parties prior to a judgment against the Insured. Specifically, Section M of the COMMON POLICY CONDITIONS Part of Evanston Policy provides, in relevant part: "no action shall lie against [Evanston] unless, as a condition precedent thereto, … the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company." Thus, there is no basis for the Does to argue that they have a right to bring a direct cause of action under the Evanston Policy prior to a judgment. *See, e.g., Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 45 (1985) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party' in question."); *Tillman v. Fireman's Fund Ins. Co,,* 590 F. Supp. 246, 250–51 (S.D.N.Y. 1984) (a third party has no right of action against an insurer under insurance policy that expressly prohibits third parties from suing the insurer).

In sum, as there has been no judgment against Chai in the Doe Action, both New York Law and the Evanston Policy provide that Does have no right to sue Evanston directly and any such action would be frivolous. It would also be subject to a motion to dismiss as well as a motion for sanctions.

---

[2] As you should also be aware, although the NY CPLR § 3001 provides that a party who has brought a claim for personal injury or wrongful death against another party "may maintain a declaratory judgment action directly against the insurer of such other party" it further states that such an action may only be maintained "as provided in [NY Ins. Law § 3420]."

Darren Epstein, Esq.<br>
Kevin T. Mulhearn, Esq.<br>
November 15, 2024<br>
Page 3

## The Relevant Terms of the Evanston Policy

In addition to the above, the following explains the provisions of the Evanston Policy which demonstrate the errors of your position as stated in the Limits Motion and proposed Limits Action. You are advised to review the Policy together with this letter as this letter is not intended to, and does not, alter the terms or conditions of the Evanston Policy and there are other provisions of the Evanston Policy which potentially limit coverage for the Doe Action. The fact that any provision of the Evanston Policy is not addressed in this letter is not intended to be, and shall not be construed as waiver of such other provisions, and shall not in any way preclude Evanston from relying on such other provision as may be relevant to this matter. Rather, we focus on the provisions relevant to the available limit of liability as that is the focus of your Limits Motion and proposed Limits Action.[3]

Pursuant to all of its terms, conditions, limitations, exclusions, and endorsements, and applicable law, the Evanston Policy provides certain specified coverage on a <u>Claims Made basis</u> for those Claims that are first made against an Insured during the Policy Period from October 15, 2020 to November 15, 2021, and reported to Evanston pursuant to the terms of the Policy. *See, e.g.,* Declarations, first paragraph and Item 5., Coverage Schedule; Specified Medical Professions Professional Liability Coverage Part, Insuring Agreement A; and Policy Changes Endorsement No. 2.

As indicated in the Coverage Schedule in Item 5 of the Declarations, the Insured purchased coverage <u>only</u> under Coverage Part A, the "Specified Medical Professions Profession Liability Insurance Coverage Part – Claims Made Coverage." Although the Coverage Schedule notes that other coverages are available, including General Liability Insurance Coverage under either Claims Made Coverage or Occurrence Coverage, it unambiguously indicates that the Insured <u>did not</u> purchase such other coverages. *See* Declarations, Item 5. B-C.

Further, although we understand you acknowledge that coverage for Chai in the Doe Action, if any, is subject to the Evanston Policy's Sexual Acts Liability Coverage, we direct your attention to the terms of the Insuring Agreement of the Sexual Acts Liability Coverage, which is as follows (underscoring added):

   I.   Specified Medical Professions Professional Liability Insurance Coverage Part is amended as follows

   Section INSURING AGREEMENT is amended by the addition of the following:

   **1. Sexual Acts Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, <u>which the Insured shall become legally obligated to pay as Damages as a result of a Claim</u> first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section

---

[3] Although we understand that you are aware of this, for avoidance of doubt, we note that Evanston has not denied coverage for the Doe Action and is providing Chai with a defense in subject to a full reservation of rights as detailed in correspondence by or on behalf of Evanston to Chai.

CLAIMS A., Claim Reporting Provision, <u>for Sexual Injury arising out of any Sexual Act perpetrated or alleged to have been perpetrated by the Insured natural person or by any person for whose actions the Insured is legally responsible, or for allegations that the Insured was negligent in hiring, training or supervising any Insured natural person who perpetrated or is alleged to have perpetrated a Sexual Act resulting in Sexual Injury</u> provided:

1. Such Sexual Act is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the Retroactive Date stated in the Declarations and before the end of the Policy Period; and

2. Prior to the effective date of this policy the Insured had no knowledge of such Sexual Act or any fact, circumstance, situation or incident involving such Sexual Act which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.

We further direct your attention to the DEFINITIONS Section of the Evanston Policy's Specified Medical Professions Liability Coverage Part, as amended by the SEXUAL ACTS LIABILITY ENDORSEMENT Section I.2., provides the following definitions relevant to the above-quoted Sexual Acts Liability Insuring Agreement:

**B.** **Claim** means the Insured's receipt of:

  **1.** A written demand for Damages or Professional Services; or

  **2.** The service of suit or institution of arbitration proceedings against the Insured seeking Damages.

**C.** **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include;

  **1.** Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

  **2.** Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

**D.** **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include …

**Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the Insured's Professional Services.

**Sexual Injury** means bodily injury, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a Sexual Act.

The plain and unambiguous meaning of the above is that coverage is afforded for Damages an Insured is legally obligated to pay as the result of a Claim against an Insured (*i.e.*, a written demand seeking damages or a suit seeking damages, such as the Doe Action), within the scope of the Sexual Act Liability Insuring Agreement. Coverage is not afforded based on an "occurrence."

Moreover, the LIMITS OF LIABILITY section of the SEXUAL ACTS LIABILITY ENDORSEMENT unambiguously refers to, and limits Evanston's liability based on, the "Claims Made" – whether by a single claimant or multiple claimants, regardless of whether the claims are related – for which coverage is afforded under this coverage part. Specifically, paragraph 5 of this Endorsement provides (underscoring added):

> F. **Limit of Liability - Sexual Acts Liability Coverage:** The total liability of the Company for the combined total of Damages and Claim Expenses for all Claims under Sexual Liability Coverage insured herein is limited to:
>
>   1. $1,000,000 All Claims Made by Each Claimant
>   2. $1,000,000 All Claims under Sexual Acts Liability Coverage
>
> G. **Multiple Sexual Acts**: Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

In the face of this wording, the arguments and case rulings cited in your Limits Motion regarding the number of "occurrences" in the context of an insurance clause limiting coverage to a certain amount "per occurrence," are inapplicable here. First, your argument that John Doe could conceivably be entitled to multiple additional "each Claim" limits by bringing multiple separate "Claims" based on the multiple separate "occurrences" of sexual abuse in multiple Policy Period is directly contradicted by, and fails on the face of the above-quoted Sections F.1 and G., which provide, respectively, that (a) all Claims Made by Each Claimant are subject to a single $1,000,000 limit of liability; and (b) two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first such act. Put another way, while the Evanston Policy does not "exclude" a claimant from bringing multiple separate Claims, as you assert is possible, Sections F.1 and G. expressly limits the liability of Evanston for any and all such separate Claims, assuming, of course, that the plaintiff establishes liability of Evanston's Insured for covered Damages.

Second, there is no ambiguity in the Limit of Liability provision with respect to the maximum aggregate liability of Evanston under the Sexual Acts Liability Coverage, regardless of the number of "unrelated" Claims. Rather, Section F.2. clearly states that $1,000,000 is "[t]he total liability of [Evanston] for the combined total of Damages and Claim Expenses for all Claims under the Sexual Liability Coverage" afforded by the Evanston Policy. Once again, the argument in your Limits Motion

that the "total liability" of Evanston for "all Claims" is not reduced by Evanston's payments for "other" or "unrelated" Claims is directly contradicted by this unambiguous language. Indeed, your reading of the Evanston Policy ignores the express reference in Section F. to the "combined total of Damages" for "all Claims" and the limit in F.2. applicable to "All Claims under Sexual Acts Liability Coverage" as distinct from the limit in F.2. applicable to "All Claims Made by Each Claimant." The fact that the "All Claims" aggregate limit is the same dollar amount as the "Each Claim" limit clearly informs that a payment on one Claim will reduce the total limit available for any other separate Claim(s), even if unrelated. Any other reading of this provision would violate the basic rule of insurance policy construction, which requires that policy language be interpreted in a manner that "gives [the actual language] full force and effect … and does not render any portion of the provision meaningless." *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 323 (2017) (quoting *Cragg v. Allstate Indem. Corp.,* 17 N.Y. 3d 118, 122 (2011)).[4]

Additionally, the "total liability" for "all Claims" wording further distinguishes the cases you cite in your Limits Motion, which involved insurance policies that provide coverage limits (or retentions) "per occurrence" without any "aggregate limit" (or retention). For example, the insurance policies discussed in *Appalachian Ins. Co. v. Gen. Elec. Co.*, 8 N.Y.3d 162 (2007), provided that the insurer provided coverage with a "per-occurrence limit" but did not incorporate an aggregate limit of liability or a "per Claim" limit. *Id.* at 167. Similarly, the insurance policy discussed in *Roman Catholic Diocese of Brooklyn, v. National Union Fire Ins. Co.,* 21 N.Y.3d 139 (2013), provided coverage on an "occurrence" basis and, as the Court found: "nothing in the language of the policies, nor the definition of 'occurrence,' evinces an intent to aggregate the incidents of sexual abuse into a single occurrence." *Id.* at 149.

Finally, although it appears that you do not dispute Evanston's position that Claim Expenses also reduce the available limits of liability under the Sexual Acts Liability Coverage Part, we again refer you to paragraph 5 of the Sexual Acts Liability Endorsement, Section F., quoted above, which states that the limit for "Each Claimant" and "All Claims" are the "total liability" of Evanston for the "the combined total of Damages <u>and Claim Expenses</u>." (underscoring added). Thus, based on the above definition of Claim Expenses, amounts incurred by Evanston in defending the Doe Action (as well as the amounts incurred by Evanston in defending and settling the separate, unrelated Claim under the Policy), also serve to reduce the limit of liability afforded by the Sexual Acts Liability Coverage.

Conclusion

For all of the foregoing reasons, Evanston is confident that there is no basis under New York law or the Evanston Policy for the Does to maintain their Limits Motion or to bring their proposed Limits Action against Evanston at this time. Evanston is also confident that its interpretation and application of the limits of liability provisions of the Sexual Acts Liability Endorsement is correct and will be upheld by any Court if the issue ripens.

---

[4] In addition, in advance of the settlement of the separate Claim under the Policy, Chai – which unlike the Does is a party to the Evanston Insurance Policy – was reminded of the aggregate limit provisions and the fact that the total coverage available for both Claims is limited to a total of $1,000,000, for all Claim Expenses and Damages. After being so-advised, Chai consented to the settlement of the separate Claim without objection.

Darren Epstein, Esq.<br>
Kevin T. Mulhearn, Esq.<br>
November 15, 2024<br>
Page 7

    Subject to the above, Evanston remains willing to consider a reasonable settlement of the Doe Action as against Chai within the remaining available limit of liability, and before Claim Expenses for additional litigation of the Doe Action further reduce the available limit. Should your clients be interested in discussing settlement, whether directly or with the assistance of a mediator, please advise the undersigned and Chai's defense counsel, Mara Goltsman of Clausen Miller.

    As also noted above, Evanston continues to reserve, and does not waive, all rights, remedies, positions, and defenses under the Evanston Policy and applicable law.

    Please do not hesitate to contact me at the phone number or email address listed above should you wish to discuss Evanston's position as set forth above.

                                            Very truly yours,

                                            Evan Shapiro

cc:    <u>Via First Class Mail:</u>
        Ms. Esther Bergman
        Chai Lifeline, Inc.
        151 West 30th Street
        New York, NY 10001

4875-0540-1594