UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
"JOHN DOE" (A PSEUDONYM) AND MARY DOE (A PSEUDONYM),

                             Plaintiffs,

      -against-

MARKEL, EVANSTON INSURANCE COMPANY,

                             Defendants.
-----------------------------------------------------------------X

CASE NO: 1:24-cv-09670-VLB-KHP

**AFFIRMATION IN OPPOSITION**

Darren Epstein, an attorney and member of Epstein Legal Services, PC, duly admitted to practice in the United States District Court for the Southern District of New York, affirms the following under penalty of perjury based upon a review of the file and upon information and belief:

1. I am the attorney for the Plaintiffs in the above-entitled proceeding and am fully familiar with all the facts and circumstances herein.

2. Plaintiff filed the Declaratory Judgment action against the Defendant's in order to make a determination on the language of the policy

3. This is an affirmation in opposition to Defendants' motion for sanctions. The Defendants' motion is without any merit.

4. Defendants' allegations that Plaintiffs Declaratory Judgment action is barred by CPLR § 3420, which prohibits a party not in privity from seeking monetary damages against an insurer unless and until that third party obtains a judgment against the insured, is inapposite.

5. Indeed, CPLR § 3001 provides that a party not in privity may seek a declaratory judgment from a court to determine insurance policy language when, as here, that

policy language is ambiguous.

6. As Plaintiffs seek only such declaratory relief, and do not seek any monetary indemnification (pursuant to CPLR § 3420 or otherwise) from Defendants, CPLR § 3001, rather than CPLR § 3420, controls.

7. Plaintiffs have pointed out this distinction to Defendants. Yet Defendants insist on prosecuting their baseless sanctions motion for alleged frivolous litigation conduct against Plaintiffs.

8. Plaintiffs are entitled to bring a Declaratory Judgment action pursuant to §3001 since it seeks the Court's determination of the insurance policy language and does not seek any monetary indemnification. Plaintiffs are not seeking to get the Defendants to provide coverage, they already have done so. Rather, Plaintiffs seek clarification of the policy coverage since the policy is ambiguous as to how much coverage is now available.

9. The language of Defendants policy is ambiguous as it relates to the sexual abuse rider of the policy. Plaintiff is entitled, pursuant to §3001, to have a Court render a decision on the language of the policy which is ambiguous. For the reasons set forth above, this is a "Direct Action" and for the purpose of diversity, as argued in the Motion to Remand, the Defendants now stand in the shoes of their insured.

10. Plaintiffs' counsel is entitled to protect the interests of his clients without the threat of a sanctions motion to attempt to have the Declaratory Judgment action dismissed prior to the Motion to Remand being decided. While I understand that the Court does have a right to hear this motion, the Court did stay all other proceedings because if this matter is remanded, the Court will no longer have jurisdiction on this matter.

Taking that a step further, thereafter the State court would decide the merits of the pending Declaratory Judgment action.

11. Accordingly, Defendants' motion for sanctions is frivolous and Plaintiff provided the distinction in our letters to them.

## CPLR §3001 DOES NOT REQUIRE A JUDGEMENT

### Plaintiff's Declaratory Judgment Has Sought a Judicial Declaration Not Money Damages, CPLR §3420 Does Not Apply

12. Plaintiff does not need to have a judgment in order to bring a declaratory judgment pursuant to CPLR §3001.

13. Whether or not a provision in an insurance policy is ambiguous is a question of law for the court to determine (see General Elec. Capital Corp. v Volchyok, 2 AD3d 777, 778, 770 NYS2d 419 [2003]; Atlantic Mut. Ins. Co. v Terk Tech. Corp., 309 AD2d 22, 28, 763 NYS2d 56 [2003]). The determination of whether the policy is ambiguous is made pursuant to §3001 in a declaratory judgment action.

14. The declaratory judgment action was filed due to the ambiguity in Defendant Markel's Sexual Acts Liability Coverage Endorsement. The purpose of the declaratory judgment action pursuant to §3001 is for the court to make a judicial determination on the ambiguities.

15. Defendants rely on the idea that a judgment is required to bring a "direct action" against the insurance company pursuant to §3024, however, they fully rely on cases which had a party attempting to bring an insurance company into an action to indemnify the insured and sought money damages. Conversely, in this case, the Defendants have indemnified and agreed to defend the insured, and the current action

merely seeks a judicial declaration pursuant to CPLR § 3001 to determine the language of the policy.

16. Defendants rely on §3420 cites cases in which the party bringing an action for declaratory relief were seeking to have the insurance company indemnify their insured after the insurance company denied coverage. Defendants cite <u>Lang v. Hanover Ins. Co.</u>, 3 N.Y. 3d 350 (2004), in this case Hanover Insurance denied homeowners coverage and David Lang, the injured party, sought a declaration that Hanover was therefore obligated to compensate Lang for the injuries their insured negligently caused.

17. Defendant failed to consider the entire <u>Lang</u> decision, failed to inform this Court that the Court of Appeals made a distinction between the types of declaratory relief and how it applies to §3001 and §3420.

18. Pursuant to <u>Lang v. Hanover Ins. Co.</u>, 3 N.Y. 3d 350, 355 (2004), CPLR §3001 provides a mechanism for the Courts to determine "'the rights and other legal relations of the parties to a justiciable controversy,' providing a procedure for parties to resolve disputes over existing rights and obligations. What distinguishes declaratory judgment actions from other types of actions or proceedings is the nature of the primary relief sought--a judicial declaration rather than money damages or other coercive relief. <u>Id</u> at 355 ([citing] <u>Solnick v Whalen</u>, 49 N.Y.2d 224, 229, 401 N.E.2d 190, 425 N.Y.S.2d 68 [1980])."

19. <u>Lang</u> distinguished a party seeking indemnification and a defense from a party seeking a judicial declaration. That same distinction applies to this controversy.

20. Whereas §3420 applies to a party seeking to have the insurance company indemnify

and defend the insurer, thus, seek money damages from the insurer after they denied coverage. (See also, <u>Crummell v Avis Rent A Car Sys., Inc.</u>, 62 AD3d 825, 826 [2d Dept 2009]). The Court in <u>Crummell</u> specifically set forth the distinction described in <u>Lang</u> and held that a determination of rights regarding the policy language is a permissive CPLR §3001 declaratory judgment action and a judgment was not required to bring the declaratory judgment action against the insurer.

21. Defendant Markel's failure to recognized the distinctions is apparent with regard to the cases they cite.

22. Defendants cite <u>Carr v Haas</u>, 163 AD3d 1212 (3d Dept 2018), in which the injured party sought payment for his vehicle which was damaged in an accident with a tractor trailer and sued the insurance company of the tractor trailer to provide coverage.

23. Each case that Defendant refers to, including, <u>Natl. Union Fire Ins. Claim No. Co. of Pittsburgh, PA. v State of NY</u>, 72 AD3d 620 (1st Dept 2010), <u>Affordable Hous. Found., Inc. v Silva</u>, 469 F3d 219 (2d Cir 2006), <u>Knox v Ironshore Indem. Inc.</u>, 2021 US Dist LEXIS 14337 (SDNY, 2021), and <u>Zyburo v Cont. Cas. Co.</u>, 60 F Supp 3d 531 (SDNY, 2014), all involve an injured party that is seeking *monetary compensation* in the declaratory action through asserting claims for indemnification or coverage from the insurance company. As Plaintiffs do not seek monetary compensation in their declaratory relief action, the cases cited by Defendants are all inapposite.

24. Our case is distinguished from a denial of coverage by the insurer. First, Defendant Markel did not deny coverage. Furthermore, Plaintiff seeks declaratory relief requiring a judicial determination on the language of the policy, since there is

ambiguity with the clauses for the limits of liability section of Defendant Markel's policy. Plaintiff is not looking for an advisory opinion, rather, we are seeking to have the Court determine if the language provides $1,000,000 for **EACH** claimant.

25. Plaintiff is not seeking a determination which would result in money damage, we are seeking a determination on the ambiguous language of the policy pursuant to CPLR §3001. This is distinctly different from the cases that Defendant relies on. That is the difference between a declaratory judgment action pursuant to CPLR §3001 and a declaratory judgment seeking monetary damages which would require a judgment pursuant to CPLR §3420.

26. This distinction was made to Defendants counsel, and they obviously ignored our letter of May 18, 2025 (Defendants Exhibit I), clarifying our position. In both letters (Defendants Exhibits G and I) we provided case law which set forth the distinctions and our basis for the declaratory judgment action.

27. Plaintiff has a legitimate basis for the declaratory judgment, for arguing that Defendant Markel steps in the shoes of their insured for jurisdictional purposes, and to make the motion to remand.

28. As Plaintiff in this case seek declaratory relief requiring a judicial determination on the language of the policy defining the limits of the policy, this case is not subject to CPLR §3024. The distinction between CPLR § 3001 and CPLR § 3024 makes all the difference.

### The Sexual Acts Liability Endorsement of the Markel Policy is Ambiguous
### There is a legal basis for the Declaratory Judgment Action

29. The Sexual Acts Liability Endorsement is ambiguous. The ambiguity concerns the

limits of coverage that an injured party could potentially receive because of their insureds perpetrating a sexual act that results in a sexual injury.

30. When there is an ambiguity, it must be construed against the insurer. (Mostow v State Farm Ins. Cos., 88 NY2d 321 [1996]).

31. The reason for construing the ambiguities against the insurance company is based on contract law. If the insurer meant to exclude coverage they could have written it into the contract, the fact that they did not write it into the contract requires the Court to adopt the language which is most beneficial to the Plaintiff seeking declaratory judgment.

32. In the present case, Plaintiff brought the declaratory judgment action due to the ambiguities in the Sexual Acts Liability Coverage Endorsement.

33. Section I (5)(F) of the Sexual Acts Liability Coverage Endorsement states:

> **F. Limit of Liability – Sexual Acts Liability Coverage:** The total liability of the company for the combined total of Damages and Claim Expenses for all Claims under Sexual Liability Coverage insured herein is limited to:
>
> 1. $1,000,000 All Claims Made by Each Claimant
>
> 2. $1,000,000 All Claims under Sexual Acts Liability Coverage
>
> **G. Multiple Sexual Acts:** Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time for the first Sexual Act.

34. The ambiguity arises as there are two identifiable coverage options listed in the Limit of Liability Sections I (5)(F)(1) & (2).

35. Section I (5)(F)(1) clearly states that there is $1,000,000 coverage for all claims made by **EACH** claimant. In other words, **EACH** claimant is entitled to $1,000,000 in

coverage. There is no exclusion from multiple claims by multiple claimants, the language to a lay person provides that **EACH** claimant, individually, is entitled to $1,000,000 for their claims.

36. Respectfully the language must be from the viewpoint of a reasonable layperson reading the policy would read the plain language which provides for $1,000,000 of coverage for all claims by **EACH** claimant.

37. Accordingly, the plain language "$1,000,000 All Claims Made by Each Claimant" by the insurer includes the word **EACH**, which has a definition of: individually, separately, apiece, and per person. Thus, the language establishes that all claims by every claimant, individually, are **EACH** entitled to $1,000,000.

38. In <u>Mostow v State Farm Ins. Cos.</u>, 88 NY2d 321 (1996) the insurer had a policy which provided a $100,000 recovery per-person limit; however, the policy did not have any language which limited the $300,000 per accident maximum to a "per person" limit. The Court of Appeals opined that a Plaintiff that received a $190,000 award was entitled to the entire amount of $190,000 due to the failure of the insurer to include language to limit the $300,000 per accident maximum to the $100,000 per person limit. The Court in <u>Mostow</u> clearly establishes that in order for the insurer to avoid ambiguity in their policy they need to draft policy language which provides "subject to" language or specific exclusionary language which the average insured employing common speech can understand. <u>Id</u> at 326,327.

39. Plaintiff's "reasonable inquiry" is that the Defendant Markel wrote this policy, they wrote that **EACH** claimant is entitled to $1,000,000. In this case, Defendant Markel eroded the policy of the insured from $1,000,000 to approximately $450,000 based on

a settlement for an unrelated claimant on an unrelated claim. Defendant claims their policy permitted them to erode the policy for this unrelated claim. However, the policy is silent, thus, ambiguous on this as there is no language which states that Markel can erode the policy based on an unrelated claim and an unrelated claimant, whereas the Policy does state that **EACH** claimant is entitled to $1,000,000 of coverage per claim.

40. Additionally, the policy does not define the word claim. In other words, is a claim when the sexual acts and sexual injuries take place on a certain date? If sexual acts are not consecutively occurring on a given date and are spread out during different days or weeks or months or years, are those all separate claims? There is no language in the policy which provides any exclusion by a definition of the terms claim or claims. (See, R.C. Diocese of Brooklyn v Natl. Union Fire Ins. Co. of Pittsburgh, PA., 21 NY3d 139, 149-150 [2013]).

41. The language of the policy at section I (5)(G) adds language to exclude an individual claimant from using multiple sexual acts to bring multiple claims against the coverage, however, it does not have any language regarding sexual acts that occurred on multiple dates. Therefore, there can be two interpretations of this clause. Either it can be interpreted that this covers multiple sexual acts <u>against one person</u> as one sexual act on a given date; or it can be interpreted that it is two or more sexual acts considered one sexual act anytime the covered person committed sexual abuse of the claimant. R.C. Diocese of Brooklyn, 21 NY3d at 149-150 (2013) (When there is nothing in the policy nor definition of "occurrence" which provides language to aggregate multiple incidents of sexual abuse into one occurrence, sexual abuse on

multiple dates is not deemed one occurrence, they are considered multiple occurrences).

42. The second option I (5)(F)(2) stating $1,000,000 coverage for all claims under the Sexual Acts Liability Coverage, likewise, can have more than one interpretation. However, before discussing this, it is important to note that the policy does not have any language which limits, excludes or requires a claimant to choose which option they must use or whether the two clauses I (5)(F)(1) and I (5)(F)(2) exclude the use of either clause. The Court in <u>Mostow</u> was clear that the insurer had to have specific exclusionary language to limit the policy, that language is not present in the Defendant Markel's policy. Therefore, since I (5)(F)(1) is not limited by any language, by way of example: "unless there are multiple claims by multiple claimants, then I (5)(F)(2) applies", then, do to the fact that there is no exclusionary language the Plaintiff has coverage of $1,000,000 for **EACH** claimant. Thus, each claimant is entitled to $1,000,000 pursuant to the language of Defendant Markel's policy.

43. There are two or more interpretations of I (5)(F)(2), one of those interpretations is that it applies to all claims made by a claimant when they have multiple claims from multiple sexual attacks on different dates, which I(5)(G) defines two or more sexual attacks will be deemed one sexual act. However, I(5)(G) does not apply any language with regard to sexual abuse that happens on a different day, weeks later, months later or years later. The New York Courts have held that sexual abuse which occurs on different dates are considered separate claims. The New York Courts use the unfortunate event test. (See, <u>R.C. Diocese of Brooklyn</u>).

44. A claimant must share the "requisite temporal and spatial closeness to join the incidents" into a single occurrence. Id at 149. Again, there is no policy language which contemplates erosion of the policy limits for **EACH** claimant by unrelated claimants with an unrelated sexual act and sexual injury.

45. Looking at the definitions of sexual act and sexual injury in the policy do not provide any guidance on these issues as they refer to a singular claim; nor are there any other definitions which provide any guidance. The Courts have all held that if there is no language in the Sexual Acts Liability Endorsement that provides specific language for an exclusion, then, there is more than one interpretation of the language, the policy is ambiguous and, in this case, the Court cannot hold that this policy erodes the $1,000,000 of coverage to **EACH** Plaintiff, for an unrelated claim by an unrelated claimant.

46. "The test for ambiguity is whether the language in the insurance contract is 'susceptible of two reasonable interpretations" (MDW Enters. v CNA Ins. Co., 4 AD3d 338, 340-341, 772 NYS2d 79 [2004], quoting State of New York v Home Indem. Co., 66 NY2d 669, 671, 486 NE2d 827, 495 NYS2d 969 [1985]). The focus of the test is on "the reasonable expectations of the average insured upon reading the policy" (Penna v Federal Ins. Co., 28 AD3d 731, 732, 814 NYS2d 226 [2006], quoting Matter of Mostow v State Farm Ins. Co., 88 NY2d 321, 326-327, 668 NE2d 392, 645 NYS2d 421 [1996]; see Butler v New York Cent. Mut. Fire Ins. Co., 274 AD2d 924, 925-926, 711 NYS2d 607 [2000]).

47. In other words, since the policy must be read in a light most favorable to the Claimant, or Plaintiff in this case, it must be declared that there is $1,000,000 in

coverage per claimant. The Courts have held "any ambiguity must be construed in favor of the insured and against the insurer" (White v Continental Cas. Co., 9 NY3d 264, 267, 878 NE2d 1019, 848 NYS2d 603 [2007]; see Federal Ins. Co. v International Bus. Machs. Corp., 18 NY3d 642, 646, 965 NE2d 934, 942 NYS2d 432 [2012]).

48. In a Declaratory Judgment action, *before a final judgment*, in Penna v Fed. Ins. Co., 28 AD3d 731 (2d Dept 2006), the Appellate Division, Second Department opined that the Plaintiff was entitled to SUM policy limits of $1,000,000 rather than $50,000 due to the ambiguity of the language written in the policy. The Court concluded that there were two interpretations of the endorsement of the policy, therefore, since the ambiguity is construed against the insurer and in favor of the insured, the Plaintiff was entitled to a declaratory judgment that the SUM coverage was $1,000,000 and not the $50,000 that the insurer alleged. Not lost in this decision is that the matter was sent down to the lower court declaring there was $1,000,000 available for the SUM coverage prior to the SUM arbitration judgment.

49. Penna clearly indicates that §3420 does not apply to a declaratory finding on the ambiguity of the policy. Thus, a Party does not need to get a judgment prior to a §3001 declaratory judgment action regarding the ambiguity of the language in the insurer's policy. Defendant Markel has erroneously continued with these allegations even after defense counsel were advised of the decision in Lang which clearly set forth this controlling distinction.

## The Policy Only Contemplates Separate Claims
## Against the Insured's of Defendant Markel

50. The policy never contemplates more than one injured party bringing a claim against the policy. Section I (1) states: "The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages *__as a result of a Claim__* first made against the Insured…"

51. The language of the Sexual Acts Liability Endorsement is in the singular, a lay person would read this endorsement as it applies to each individual claim against an individual insured. This language even has "sexual act" and "sexual injury" in the singular.

52. Throughout the Sexual Acts Liability Endorsement, the policy language refers to the singular "claim" when referring to the sexual act and sexual injury perpetrated by the insured. Accordingly, the language of the policy is silent or ambiguous as to multiple claims and there is no language in the policy which supports Defendant Markel's argument that this policy has a clear interpretation of the applicable limit of liability.

53. It is well-settled law in New York that ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356, 361). Ambiguities in an insurance policy must be construed in favor of the insured (Sperling v Great Amer. Ind. Co., 7 NY2d 442, 450; Greaves v Public Serv. Mut. Ins. Co., 5 NY2d 120, 125).

54. In section I (F), which provides the limits of liability or the coverage limits, if the Defendant Markel wanted to exclude coverage for multiple claimants against this

policy or limit the coverage for multiple claimants then they were required to make sure the policy had clear language to support this limitation in the policy. They failed to provide any language, exclusion, definition or clarification, like section I (G) which states that an unrelated claim by an unrelated claimant would erode the $1,000,000 coverage of another claimant.

55. Rather, the language states that each individual claimant is entitled to $1,000,000 of coverage for all claims made against that insured. Again, the key word is **EACH**. ($1,000,000 All Claims Made by *Each* Claimant). It does not say $1,000,000 All Claims Made by all Claimants or $1,000,000 All Claims Made by every Claimant, it specifically says ***EACH CLAIMANT***.

56. "Where an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language" (Minchala v 829 Jefferson, LLC, 177 AD3d 866, 867, 114 N.Y.S.3d 377 [2d Dept 2019]).

57. Defendant Markel's Sexual Acts Liability Endorsement of the policy has no language which supports their position, whereas the language of the refers to a singular claim on behalf of a singular claimant except when it refers to section I (F) which recognizes that a claimant can have more than one claim from multiple sexual acts and sexual injuries.

58. As previously stated, Defendant Markel clearly wrote I (G) to exclude coverage for multiple sexual acts. However, they did not write any clause with an exclusion for unrelated claims for unrelated claimants or multiple claimants when the policy is written as it is for a singular claimant.

59. Accordingly, the Defendant's argument is without any merit.

60. Defendant's erroneous argument that we did not conduct a reasonable inquiry, likewise, has no merit as Plaintiff can only argue about the language within the policy and the understanding that Plaintiff has of the Sexual Acts Liability Endorsement.

61. Defendant Markel cites <u>Cincinnati Ins. Co. v TV Eng'g Corp.</u>, 265 F. Supp. 2d 1078 (E.D. Mo. 2003) for the proposition that Courts recognized "total liability" for "all" matters under a particular coverage, however, the facts of that case are not similar to this case. In the current case, the policy specifically provides $1,000,000 for all claims to **<u>EACH</u>** claimant without any other language or definitions, whereas the policy in the <u>Cincinnati</u> case has a very specific set of language clarifying their limits and breaking down the multiple limits in the policy.

62. In <u>Cincinnati</u>, the decision sets forth the definitions that the Court relies on to decide a summary judgment motion, most importantly, that policy is "each occurrence" and both Plaintiffs were involved in the same occurrence, when the truck they were in hit an electric utility line causing their electrocution. The present case has two unrelated claims with unrelated claimants. Defendant Markel's policy does not have any language which supports their argument.

63. Defendant Markel also cites <u>Spokane County v Am. Re-Insurance Co.</u>, 1993 U.S. Dist. LEXIS 21038 (E.D. Wash. May 10, 1993, NO. CS-90-256-WFN) which involves the continuous contamination of groundwater which the Court held was one occurrence and thus only one injury. As the present case involves multiple sexual acts and injuries on separate occasions, <u>Spokane County</u> is inapposite.

64. The Defendant's argument that these cases are consistent with the present case are meritless, both cases involve factual scenarios which have one event whether the two

people being electrocuted in the same truck at the same time or the continuous contamination of groundwater from one location. Therefore, the Defendant's reliance on these cases is misguided.

### Defendant Markel's Erroneous Contention Regarding the Application of a "Direct Action" is Frivolous
### Plaintiff has the right to file a Declaratory Judgment Pursuant to CPLR §3001

### Diversity is Established as Defendant Steps in the Shoes of its Insured

65. Defendant's argument that Plaintiff did not conduct a reasonable inquiry into a "Direct Action" under 28 U.S.C. § 1332(C)(A)(1) is similarly without merit. Moreover, this argument is another attempt to argue the Motion to Remand after their letter requesting a sur reply. I submit this is a disingenuous attempt to rehash their arguments on the diversity issue.

66. Based on the facts in this case, that there are two distinct types of declaratory judgment actions; Defendant Markel's policy is ambiguous, Plaintiff's argument that this is a "Direct Action" has merit and Defendant's argument is not only unpersuasive but problematic.

67. Defendants have argued that if Plaintiff has an opinion regarding the ambiguity of an insurance policy then they cannot file a declaratory judgment action without facing the wrath of a sanctions motion. In this case, after the Motion to Remand was fully submitted, Plaintiffs were threatened with a sanctions motion if we did not dismiss the declaratory judgment action (See Defendant's letters as part of their exhibits). This is not good practice. Rather than allowing the Court to decide the Motion to Remand on its merits, Defendants have brought this motion in order to attempt to put

the Plaintiffs in a bad light because we have called out the ambiguity in this policy.

68. The timing of this motion after the Motion to Remand has been fully submitted is curious.

69. The sole purpose of the declaratory judgment action is to allow a Court to make a decision on the ambiguity of a contract or policy when a party is adversely affected by a discrepancy or ambiguity with the language in the policy. Any attempt to stifle the use of the declaratory judgment action because the party defending does not agree with the party bringing the action, would be contrary to legislative intent of §3001.

70. Plaintiff should not have to provide Defendants with their reasoning for bringing the declaratory judgment, the allegations in the Complaint set forth the causes of action. Yet, in an attempt to avoid this unnecessary motion practice, in our letters dated March 14, 2025 and March 18, 2025 Plaintiff shared with them our basis for the action, pointed out the discrepancy with their policy and the distinction between the two types of declaratory judgment actions (judicial determination on the language of the policy vs. monetary determination-whether the claimant/insured has coverage based on a denial of coverage).

71. Nevertheless, the Defendants erroneously brought this motion *after* Plaintiffs' counsel notified them in writing of the two distinctive types of declaratory judgment and that a judicial determination on the language of the policy is permitted pursuant to §3001, whereas §3420 is not applicable pursuant to the facts of this case.

72. Plaintiff has a legitimate basis for the declaratory judgment action based on the ambiguities which Plaintiff has alleged are present in the policy.

73. For the court to hold otherwise it is premature, the only thing which has taken place is a Motion to Remand, otherwise there is a stay in place until the motion is decided. While I understand that the Court can hear a sanctions motion at any time, this motion requires the Court to make the ultimate decision on the declaratory judgment action and then make a determination on our state of mind, by example, do we believe there are ambiguities in the policy, with regard to allegations in the complaint?

74. The Defendant's motion for sanctions is premature because if the matter is remanded to state court, this Court divests itself of jurisdiction and the ultimate decision on the declaratory judgment would be in the jurisdiction of New York County Supreme Court.

75. Thus, I respectfully submit, this motion for sanctions was another attempt by the Defendants to argue against the Motion to Remand, since there is a "Direct Action" and that would eliminate diversity jurisdiction of this Court.

76. For this Court to grant sanctions at this time would mean that this Court is deciding the ultimate issues of fact before any discovery is complete and sua sponte without any Motion for Summary Judgment.

77. The Court should not allow Defendants to make these frivolous motions for sanctions when there are outstanding issues, questions of fact on the ambiguities in the policy, and when they are asking the Court to prevent a party from filing a declaratory judgment action unless the party filing the action has a 100% chance of winning.

78. What prevents every insurance company from making the same motion every time a party has an opinion that a policy or contract is ambiguous or contains ambiguous language? Isn't that the purpose of a declaratory judgment action?

79. Isn't that the purpose of a declaratory judgment action? Defendants' motion is both preposterous on its face and contrary to well-settled legal and equitable principles.

### Defendant Markel was Provided Reasonable Explanations for the Declaratory Judgment Action and Their Motion for Sanctions is Frivolous

80. I submit that the Defendants should not be permitted to erode the policy at issue any further for this frivolous motion. The only sanctions should be against the Defendants for asking this Court to make a decision on the ultimate issue knowing the Motion to Remand was fully submitted and the matter was stayed until a decision was rendered.

81. More importantly, this motion was made after the Defendant was provided a reasonable explanation that there is an ambiguity in the language of policy and they were provided the distinction between §§ 3001 and 3420 for declaratory judgment due to a judicial determination of the language of the policy and not as to whether an insured should be indemnified and provide a defense.

**WHEREFORE**, the undersigned respectfully requests an Order which provides (1) that Defendants' motion be denied in its entirety; and (2) that Plaintiffs be granted any other, different, or further relief to which this Court may seem just, proper, or necessary, including but not limited to Defendants' reasonable legal fees incurred in the defense of this frivolous and baseless motion.

DATED: April 9, 2025
New City, New York

_____
Darren Epstein
Epstein Legal Services, P.C.
*Attorney(s) for Plaintiffs*
254 South Main Street
Suite 406
New City, NY 10956
(845) 634-6800