UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE (a pseudonym) and MARY DOE (a pseudonym),

          Plaintiffs,

-against-

MARKEL, EVANSTON INSURANCE COMPANY,

          Defendant.

Index No. 1:24-cv-09670-VSB-KHP

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION FOR SANCTIONS**

SKARZYNSKI MARICK & BLACK LLP
One Battery Park Plaza, 32nd Floor
New York, NY 10004
Tel: (212) 820-7700
Email: eshapiro@skarzynski.com

*Attorneys for Defendant named as
Markel, Evanston Insurance Company*

Of Counsel:
    Evan Shapiro, Esq.
    Rossella Scarpa, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................... 1

    I.    Plaintiffs' Positions Are Frivolous As They Are Without Legal Or Factual Basis ............ 1

        A.    Plaintiffs' Reliance on § 3001 Is Contrary To Well-Established Law ..................... 1

        B.    The Cases Cited By Plaintiffs Do Not Support Their Legal Contentions .............. 5

        C.    The Policy Defines The Term "Claim" And The Number of Claims ..................... 6

        D.    The SAL Limit Of Liability Provision is Not Ambiguous ....................................... 7

        E.    This Is Not A "Direct Action" For Purposes of Diversity Jurisdiction ................... 9

CONCLUSION ................................................................................................................. 9

# PRELIMINARY STATEMENT[1]

The "Affirmation in Opposition" submitted by Plaintiffs (Doc. 19) continues to misstate and ignore well-established controlling law and the terms of the Policy as detailed in Evanston's opening brief on this motion ("Opening Brief"), Evanston's prior correspondence with Plaintiffs' Counsel, and Evanston's opposition to Plaintiffs' Remand Motion (respectively, Doc. 16; Doc. 15-1; Doc. 15-6; Doc. 15-8; Doc. 11; Doc. 13) and as further noted below. Moreover, Plaintiffs' Affirmation in Opposition does not present any reasonable basis to depart from this law. Simply put, Plaintiffs have no right to bring this action against Evanston absent a judgment against Evanston's Insured. As such, Plaintiffs' Counsel has violated Rule 11 and sanctions are warranted.

Because Plaintiffs' Affirmation in Opposition includes multiple misstatements of the controlling law and the terms of the Policy, pursuant to § 4.I. of this Court's Individual Rules & Practices in Civil Cases, Evanston respectfully requests a hearing on this motion if the Court would find it helpful.

# ARGUMENT

## I. Plaintiffs' Positions Are Frivolous As They Are Without Legal Or Factual Basis

### A. Plaintiffs' Reliance on § 3001 Is Contrary To Well-Established Law

Plaintiffs' Affirmation in Opposition asserts that the New York Court of Appeals ruling in *Lang v. Hanover Ins. Co.,* 3 N.Y.3d 350 (2004), does not apply because (1) this action, unlike *Lang*, does not seek damages but seeks only a declaration pursuant to CPLR § 3001 and (2) Evanston, unlike the insurer in *Lang*, has not denied coverage to its insured. The first part of this argument is astonishing as it is directly contradicted by Plaintiffs' own Complaint which, in fact,

---

[1] Capitalized terms are used as defined in Evanston's opening brief on this motion and citations to documents filed with this court continue to be cited herein by the Document Number ("Doc.") and page number assigned by the ECF system.

1

demands monetary damages. Doc. 5-1 at 11 (WHERFORE ¶ (2)). For this reason alone, the majority of the arguments in Plaintiffs' Opposition fail on their face.

The second part of this argument also fails on its face as New York law is well-established that § 3001 does not create a substantive cause of action. Contrary to Plaintiffs' Counsel's views, *Lang* expressly holds that § 3001 is not, standing alone, a basis for an injured person to bring a declaratory judgment action against the insurer of an alleged tortfeasor prior to a judgment against the insured. *See Lang,* 3 N.Y.3d at 355. As that is precisely the nature of the action here, *Lang* controls and prohibits this action.

Plaintiffs' argument here is also based on mischaracterization of the facts, procedural context, and holding of *Lang*. Contrary to Plaintiffs' argument, *Lang* is not distinguishable from this case. Like Plaintiffs here, the plaintiff in *Lang* first filed a personal injury action. Then, when coverage of that action was denied by a defendants' insurer, and while the personal injury action was still pending, the plaintiff initiated a declaratory judgment action against the defendants' insurer. That action, like this one, sought a declaration that the insurer was obligated to provide coverage to the underlying defendant and therefore, ultimately, to compensate the plaintiff for the injuries the insured negligently caused. *Id. Lang* is clearly on all fours here.

Additionally, neither the fact that Evanston is defending its insured in the Underlying Action, nor the fact that this action seeks a declaration regarding a purported ambiguity in the Policy are meaningful distinctions for at least three reasons.

First, as noted in Evanston's Opening Brief, the Complaint in this action does in fact, allege that Evanston has denied coverage (insofar as it alleges Evanston does not wish to provide Plaintiffs with the full amount of coverage Plaintiffs contend should be afforded) and seeks a declaration that coverage is available for Plaintiffs' injuries. *See* Doc. 16 at 5; Doc. 5-1 ¶ 31. This

is precisely the posture of *Lang*. Thus, this action is not materially distinguishable from *Lang* with respect to the insurer's positions on coverage.

Second, as *Lang* notes, under longstanding New York common law, strangers to an insurance policy (such as Plaintiffs here) have no right (*i.e.,* no standing) to bring a suit against the insurer (such as Evanston here). *See Lang,* 3 N.Y.3d at 353. Plaintiffs do not cite any rule supporting their assertion that an exception to this rule exists to address a non-party's claim that there is a purported ambiguity in the insurance policy.[2] Rather, as *Lang* and Evanston's Opening Brief demonstrate, the only relevant exception to the common law rule is the limited exception created by § 3420, which requires an injured person to obtain a judgment against the insured tortfeasor before it brings suit against the tortfeasor's insurer. *Id.* at 352; Doc. 16 at 8-9; Doc. 15-6 at 3. There is no dispute that Plaintiffs here, as plaintiffs in *Lang*, have not satisfied this condition precedent. *See* Doc. 16 at 3-5.

Third, *Lang* addressed—and expressly rejected—the very same argument made here by Plaintiffs' Counsel that an injured party has a right pursuant to § 3001 to seek a declaratory judgment regarding insurance coverage prior to obtaining a judgment against an insured. Specifically, *Lang* states:

> Plaintiff's reliance on CPLR 3001, the statute that governs declaratory judgment actions, is misplaced. CPLR 3001 authorizes a court to declare "the rights and other legal relations of the parties to a justiciable controversy," providing a procedure for parties to resolve disputes over existing rights and obligations. What distinguishes declaratory judgment actions from other types of actions or proceedings is the nature of the primary relief sought—a judicial declaration rather than money damages or other coercive relief (*Solnick v. Whalen,* 49 N.Y.2d 224, 229, 425

---

[2] Plaintiffs appear to cite *General Elec. Capital Corp. v. Volchyok*, 2 A.D.3d 777 (2d Dept. 2003) and *Atlantic Mut. Ins. Co. v Terk Tech. Corp.*, 309 A.D.2d 22 (1st Dept. 2003) for their proposition that the issue of whether an insurance policy is ambiguous can be addressed by a declaratory judgment action pursuant to § 3001. However, neither case supports their position. *Volchyok* was an action by an insured against its insurer to recover damages for breach of contract breach of contract and *Atlantic Mutual* was a suit by an insurer for a declaration that its policy did not provide coverage for an underlying judgment based on a policy exclusion.

3

> N.Y.S.2d 68, 401 N.E.2d 190 [1980]). <u>But nothing in the language of CPLR 3001 alters the precedent regarding an injured party's standing to sue a tortfeasor's insurer. Plaintiff has no common-law right to seek relief directly from a tortfeasor's insurer, and the statutory right created in Insurance Law § 3420 arises only after plaintiff has obtained a judgment in the underlying personal injury action.</u>

*Id.* at 355 (underscoring added).[3]

Plaintiffs' further arguments attempting to distinguish *Lang* are red herrings. For example, there is no basis for Plaintiffs' position that *Lang* does not apply because Plaintiffs have asserted a justiciable controversy between themselves and Evanston due to Plaintiffs' claim that the Policy is ambiguous. Even if the Policy limits provision is ambiguous (it is not, as discussed below) there is currently no justiciable controversy between Plaintiffs and Evanston because Plaintiffs have no rights under the Policy unless and until they obtain a judgment against Chai. *See* Doc. 16 at 8-10. Until they have such a judgment, Plaintiffs have no more than hypothetical, contingent, or remote rights under the Policy and there is no justiciable controversy and any ruling on their action would be advisory. *E.g.*, *Foto Elec. Supply Co. v. Marut Enters. LLC*, 2025 WL 969979, at *2 (S.D.N.Y. Apr. 1, 2025).

For the same reasons, Plaintiffs' reference to *Lang's* discussion of the risks faced by an insurer which erroneously denies coverage and fails to participate in the defense of a lawsuit against its insured (*Lang*, 3. N.Y.3d at 356), has no relevance here as Evanston is in fact participating the defense of its insured in the Underlying Action. This is, of course, different than the denial of a duty to indemnify raised by Plaintiffs, which is hypothetical as it would only be relevant <u>if</u> Plaintiffs obtain a judgment against Chai for matters covered under the Policy and in excess of the remaining Sexual Abuse Liability Limit under the Policy.

---

[3] This full holding is quoted because Plaintiffs' March 18, 2025 Letter and Affirmation in Opposition (respectively, Doc. 15-9 and Doc 19) repeatedly reference an excerpt from this holding out of context, suggesting that their right to pursue this lawsuit is supported by the reasoning of *Lang*. The full context of the statement belies their argument.

Plaintiffs' attempt to distinguish the cases cited by Evanston which follow *Lang* (Doc. 16 at 12-13), also fails on its face. Plaintiffs argue that these cases are inapposite because they involve claims for damages rather than solely for a declaratory judgment. Yet, as noted above, the Complaint in this action does in fact seek money damages. In addition, Plaintiffs' argument ignores the fact that these rulings all conclude that declaratory judgment statutes are procedural, and unlike § 3420, do not create an independent, substantive cause of action. *E.g., Knox v. Ironshore Indem. Inc.*, 2021 WL 256948, at *3 (S.D.N.Y. Jan. 26, 2021) (noting that a plaintiff "cannot circumvent the requirements of [§ 3420] simply by styling their claim as one for a declaratory judgment").

In sum, Plaintiffs' arguments are contradicted by their own Complaint and there is no reading of *Lang* and its progeny, or any other rule, which supports Plaintiffs' position that an injured person has a right under § 3001 to seek declaratory relief from a tortfeasor's insurer prior to a judgment against the tortfeasor as required by § 3420. As such, Plaintiffs' attempt to distinguish *Lang* is specious and sanctions under Rule 11 are warranted.

**B.    The Cases Cited By Plaintiffs Do Not Support Their Legal Contentions**

Plaintiffs' Affirmation in Opposition cites just two post-*Lang* decisions as purported support for their argument that an injured party may bring a declaratory judgment action against an insurance company prior to obtaining a judgment against the insured tortfeasor. Reliance on these cases is also wholly misplaced as each allows a declaratory judgment action against an insurer to proceed because they are <u>by the insured party</u>, which is of course in privity with the insurer. One of these cases, *Crummell v. Avis Rent A Car Sys., Inc.*, 62 A.D.3d 825 (2d Dept. 2009), expressly contradicts Plaintiffs' position as it explains that <u>"[§ 3420] governs the right of an injured party who is a stranger to an insurance contract</u> to maintain a direct action against the tortfeasor's insurer <u>[but] does not apply where, as here, a signatory to a contract seeks a declaration of his rights</u> with respect to another contracting party." *Id.* at 826 (underscoring added). Since Plaintiffs

5

in this action are strangers to the Policy, *Crummell* supports Evanston's position that this action is controlled by § 3420. The other case cited by Plaintiffs, *Penna v. Fed. Ins. Co.,* 28 A.D.3d 731 (2006), similarly allowed a declaratory judgment action <u>by an insured against her insurer</u> for declaratory judgment regarding the scope of the policy's coverage.

It is also noteworthy that Plaintiffs' Affirmation in Opposition does not rely on the same pre-*Lang* rulings cited in their March 14, 2025 letter responding to Evanston's February 6, 2025 Rule 11(c) notice letter. *See* Doc. 15-1; Doc. 15-7; and Doc. 15-8. This is because Evanston explained that they are inapposite. *See* Doc. 15-8. The shifting case citations and theories in Plaintiffs' Counsel's communications attempting to support their right to proceed with this action further demonstrate that Plaintiffs' Counsel filed the Complaint in this action without conducting a reasonable inquiry into applicable the law as required by Rule 11. Appropriate sanctions should therefore be issued by the Court.

**C.     The Policy Defines The Term "Claim" And The Number of Claims**

Plaintiffs' argument that the Policy is ambiguous because the term "Claim" is not defined is another a red herring. <u>First</u>, the Policy does in fact define the term Claim, as Evanston noted in its November 2024 pre-suit Letter to Plaintiffs' Counsel. *See* Doc. 15-6 at 4-5; Doc. 5-2 at 19 (DEFINITIONS B.); and Doc. 5-2 at 42 (§ I.). <u>Second</u>, contrary to Plaintiffs' argument, the Policy expressly addresses the issue of the number of "Claims" and recovery available to a single person regardless of the number and timing of alleged multiple sexual acts. *See* Doc. 5-1 at 43 (§ 5.F.1. and 5.G.). In the face of these provisions, the ruling in *Roman Catholic Diocese of Brooklyn v. Nat'l Union*, 21 N.Y.S.2d 808 (2013), cited by Plaintiffs has no relevance: it addressed a policy which did not include any language "indicating an intent to aggregate separate incidents into a single occurrence." *Id.* at 148-49. *See also* Doc. 15-6 at 6.

This argument by Plaintiffs also demonstrates that Plaintiffs did not conduct a reasonable

6

inquiry into the Policy terms relevant to this action. As Plaintiffs' arguments are based on their failure to properly read the Policy, even after being advised of relevant terms by Evanston (*see* Doc. 15-6 at 4), Plaintiffs' Counsel has violated Rule 11 and sanctions should be awarded.

### D. The SAL Limit Of Liability Provision is Not Ambiguous

New York law provides that a policy must be read as a whole and is ambiguous <u>only</u> where its words "may be <u>reasonably</u> interpreted in two conflicting manners[.]" *Lend Lease (U.S. Const. LMB Inc. v. Zurich Am Ins. Co.*, 28 N.Y.3d 675, 682 (2017) (underscoring added).

Here, contrary to Plaintiffs' multiple and circular arguments attempting to muddy the meaning of the Policy terms, the coverage and limits of liability provision of the SAL Limit Endorsement are clear as day. They advise that Evanston's <u>liability to a single Claimant</u> under the SAL Coverage is no more than $1,000,000 and, separately, Evanston's <u>total</u> <u>liability</u> under the SAL Coverage, for "<u>All Claims</u>" is $1,000,000. Thus, payment by Evanston of less than $1,000,000 for Damages[4] and Claim Expenses defend or settle one Claim reduces Evanston's liability for any other Claim(s) by the amount of those payments. Further, once Evanston has paid $1,000,000, in Damages and Claim Expenses—whether for a single Claim or multiple Claims—it has no further liability. There is no <u>reasonable</u> alternative or conflicting reading of these provisions.

Moreover, because the SAL Endorsements limits of liability provisions expressly provide a "total" limit for all Claim Expenses and Damages for all Claims by an individual Claimant, regardless of the number or timing of alleged Sexual Acts against that Claimant, and for "All Claims" under the SAL Coverage, Plaintiffs' attempts to argue that these limitation provisions are

---

[4] The Policy defines "Damages" to mean "the monetary portion of any judgment, award or settlement" subject to certain limitations. *See* Doc 5-1 at 19 (DEFINITIONS § D) and Doc. 15-6 at 5. The term "Claim Expenses" is defined to mean, in relevant part: "reasonable and necessary amounts incurred … in defense of that portion of any Claim for which coverage is afforded …" Doc 5-1 at 19 (DEFINITIONS C) and Doc. 15-6 at 5.

not clear are woefully misplaced. These provisions are readily distinguishable from the limits provisions in the cases cited in Plaintiffs' Affirmation in Opposition. For example, *Mostow v. State Farm Ins. Cas. Cos.*, 88 N.Y.2d 321 (1996), found ambiguity in a policy which provided a $100,000 "per-person" limit and a $300,000 "per accident" limit applicable when two or more persons are injured in the same accident. The court found these provisions ambiguous because they could reasonably be construed to provide that $100,000 is available where bodily injury damages are owed only to "one person," but also that, when two persons are injured in an automobile accident, the full $300,000 per accident policy limit is available. *Id.* at 326. The Policy here has no such ambiguity because the limits language explains that there is one limit for "Each Claimant" subject to a total limit for "All Claims" under the SAL Coverage. Although Plaintiffs were advised of this prior to filing this action (*see* Doc. 15-6 at 5-6), even now, they do not, because they cannot, provided any reasonable alternative construction of these provisions.

Plaintiffs further attempt to suggest ambiguity in the Policy by isolating and presenting SAL Endorsement provisions in underlined, bold and all capitals, and using the term "exclusion" without explanation. This tactic fails to demonstrate ambiguity because it does not present a reasonable alternative construction of the Policy. Further, despite Plaintiffs' statements, a limit of liability provision is not an exclusion. *E.g., New York Univ. v. Factory Mut. Ins. Co.,* 374 F. Supp. 3d 315, 323 n.3 (S.D.N.Y. 2019), *aff'd,* 2021 WL 3136078 (2d Cir. July 26, 2021), *and aff'd,* 2021 WL 3136078 (2d Cir. July 26, 2021); *Lonstein L. Off., P.C. v. Evanston Ins. Co.,* 2022 WL 311391, at *7 n.4 (S.D.N.Y. Feb. 2, 2022).

In sum, the limit of liability under the SAL Coverage is plainly stated in the Policy and Plaintiffs are not entitled to the declarations they seek on this issue. Again, Plaintiffs' Counsel has violated Rule 11 and appropriate sanctions should be issued.

### E. This Is Not A "Direct Action" For Purposes of Diversity Jurisdiction

Evanston's Moving Brief (Doc. 16) and its opposition to Plaintiffs Remand Motion (Docs. 11 and 13) fully address Plaintiffs' erroneous assertions that this is a "direct action" against Evanston for purposes of diversity jurisdiction. Evanston further notes that the arguments and case law above demonstrating that Plaintiffs do not have standing to bring this action are based on New York statutes and multiple decisions by New York courts, including the New York Court of Appeals decision in *Lang*. Thus, even if this Court were to grant Plaintiffs' Remand Motion, Plaintiffs' Complaint will be subject to dismissal and possibly sanctions (if not awarded by this Court) based on the same lack of standing arguments presented above.

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in Evanston's Opening Brief on this motion and Evanston's response to Plaintiffs' Remand Motion, Evanston's motion for sanctions should be granted.

Dated: April 15, 2025  
       New York, New York

Respectfully submitted,

SKARZYNSKI MARICK & BLACK LLP

By:  */s/ Evan Shapiro*  
    Evan Shapiro, Esq.  
    One Battery Park Plaza, 32nd Floor  
    New York, NY 10004  
    Phone: 212-820-7700  
    Email: eshapiro@skarzynski.com  
*Attorneys for Defendant Evanston Insurance Company*