UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JOHN DOE (a pseudonym) and MARY DOE   :
(a pseudonym),                                              :
                                                            :
                                        Plaintiffs,    :                24-CV-9670 (VSB)
                                                            :
                        - against -                       :                **OPINION & ORDER**
                                                            :
MARKEL, EVANSTON INSURANCE      :
COMPANY,                                              :
                                                            :
                                        Defendant.     :
                                                            :
------------------------------------------------------------X

Appearances:

Darren Epstein
Epstein Legal Services, P.C.
New City, NY
*Counsel for Plaintiffs*

Evan Shapiro
Rossella Scarpa
Skarzynski Marick & Black LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs John and Mary Doe ("Plaintiffs") originally brought this action in New York

Supreme Court, County of New York, against Defendant Markel, Evanston Insurance Company

("Evanston" or "Defendant"). Defendant removed the case to this Court on the basis of diversity

jurisdiction.

Before me is Plaintiffs' motion to remand for lack of subject matter jurisdiction, (Doc. 8),

Defendant's motion for leave to file a sur-reply to Plaintiffs' remand motion, (Doc. 13), and

Defendant's motion for sanctions, (Doc. 14). For the reasons stated below, Plaintiffs' motion to

remand is DENIED, Defendant's motion for leave to file a sur-reply is DENIED,[1] and Defendant's motion for sanctions is DENIED.

### I.    Factual Background & Procedural History[2]

On August 18, 2021, Plaintiffs commenced an action against Chai Lifeline, Inc. ("Chai") and other parties in New York state court for personal injuries allegedly sustained by John Doe when he was a minor as a result of sexual abuse at a premises owned, operated, controlled and/or supervised by Chai (the "Chai Lawsuit"). (*See* Compl. ¶ 15; *see also* Doc. 5-3 (Summons & Complaint in *John Doe, et al. v. Yaakov David Klar, et al.*, Index No. 951468/2021 (N.Y. Sup. Ct.)).) The Chai Lawsuit is ongoing. *See John Doe, et al. v. Yaakov David Klar, et al.*, Index No. 951468/2021 (N.Y. Sup. Ct.)). On December 2, 2024, Plaintiffs commenced a declaratory judgment action in New York state court against Evanston related to injuries alleged in the Chai Lawsuit pursuant to the liability insurance policy (the "Policy") issued by Evanston to Chai. (Compl. ¶¶ 6, 9–16, 24; *see also* Doc. 5-1 (Summons & Complaint in *John Doe, et al. v. Markel, Evanston Insurance Co.*, Index No. 161011/2024 (N.Y. Sup. Ct.)).)

The Complaint in this case seeks a declaratory judgment against Defendant as follows: (1) "declaring that Plaintiff is entitled to $1,000,000.00 of coverage under the terms of the insurance agreement as a claimant against CHAI LIFELINE and the Defendant" and (2) "declaring that Defendant is in breach of the insurance agreement, that it is material and continuing, Plaintiff suffered severe and permanent injuries and is entitled to monetary damages all in excess of the jurisdictional limits, which is continuing, plus pre- and post-judgment

---

[1] I did not previously rule on Defendant's letter motion for leave to file a sur-reply to Plaintiffs' remand motion. Since I am denying the motion to remand, I see no need for a sur-reply and Defendant's letter motion is DENIED.

[2] Unless otherwise noted, the facts in this section are drawn from Plaintiffs' state-court complaint, (Doc. 5-1 ("Complaint" or "Compl.")), which I assume to be true for purposes of this Opinion & Order. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

interest, attorneys' fees, costs, and other disbursements incurred in connection with this action."
(Compl. 11.)  The Complaint does not allege that Plaintiffs obtained a judgment of liability against Chai which is unsatisfied.

Chai sent the Chai Lawsuit to Defendant pursuant to the Policy.  (Compl. ¶¶ 17, 21–23.)  Plaintiffs allege that Defendant, wrongfully, and in breach of the Policy,[3] advised Plaintiffs that there was a total of $1,000,000.00 in coverage under the Policy, but that the applicable limit of liability was eroded by payments for expenses and a settlement in an unrelated case, and that the Policy only has a balance of approximately $425,000.00 in coverage for Plaintiffs.  (Id. ¶¶ 18, 25; see also id. ¶¶ 26, 31–32.)  Plaintiffs also state that Defendant asserted that Plaintiffs are not entitled to a total of $1,000,000.00 in coverage as a claimant under the Policy.  (Id. ¶ 18.)  Plaintiffs allege that Defendant breached its contract with Chai because it does not want to indemnify Chai or provide Plaintiffs with coverage for the full $1,000,000.00 pursuant to the terms of the Policy.  (Id. ¶¶ 26–34.)  In opposition to Defendant's sanctions motion, however, Plaintiffs asserted that "[i]n this case, the Defendants have indemnified and agreed to defend the insured, and the current action merely seeks a judicial declaration . . . to determine the language of the policy."  (Doc. 19 at ¶ 15.)  Plaintiffs seek declaratory relief to determine the limits of coverage pursuant to the Policy and a judgment that the Defendant has $1,000,000.00 in coverage on behalf of Chai and that Plaintiffs are entitled to such amount.  (Compl. ¶¶ 24, 26, 33–34, 39–41.)

On December 19, 2024, Defendant removed the case to this Court on the basis of diversity jurisdiction.  (Doc. 5.)  On January 22, 2025, Plaintiffs filed a motion to remand for

---

[3] Plaintiffs claim that contrary to Evanston's statements, the Policy does not reduce the $1,000,000.00 limit of liability by expenses and a settlement in an unrelated case.  (See Compl. ¶¶ 18, 25.)  However, it is unclear why Evanston's alleged statement to Plaintiffs regarding the erosion of coverage was itself a breach of the Policy.  (See id. ¶¶ 31–32.)

lack of subject matter jurisdiction.  (Doc. 8.)  On February 14, 2025, Defendant filed an opposition to Plaintiffs' remand motion.  (Doc. 11.)  On February 28, 2025, Plaintiffs filed a reply in support of their remand motion.  (Doc. 12.)  On March 7, 2025, Defendant filed a letter motion for leave to file a sur-reply to Plaintiffs' remand motion.  (Doc. 13.)

On March 21, 2025, Defendant filed a motion for sanctions, (Doc. 14), along with a declaration in support, (Doc. 15), and a memorandum of law, (Doc. 16), against Plaintiffs' counsel pursuant to Fed. R. Civ. P. 11.  Specifically, Defendant seeks:  (1) an order requiring Plaintiffs' counsel to pay Defendant's reasonable costs and fees incurred in opposing Plaintiffs' frivolous remand motion and its planned motion to dismiss the Complaint; (2) dismissal of this action with prejudice as to the declarations sought in the Complaint regarding the Policy's applicable limits of liability; and (3) any such other relief as I might deem just.  (Doc. 16 at 13.)  On April 9, 2025, Plaintiffs filed an opposition to Defendant's sanctions motion.  (Doc. 19.)  On April 15, 2025, Defendant filed a reply in support of its sanctions motion.  (Doc. 20.)

## II.    Legal Standards

### A.  Remand

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  "If the removing party is invoking diversity jurisdiction, it is that party's burden to demonstrate, by a preponderance of the evidence, that complete diversity among the parties existed not only at the time of removal, but also when the state complaint was filed."  *Segal v. Firtash*, No. 13-CV-7818, 2014 WL 4470426, at *2 (S.D.N.Y. Sept. 9, 2014) (collecting cases); *see Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56–57

(2d Cir. 2006) ("We generally evaluate jurisdictional facts . . . on the basis of the pleadings, viewed at the time when defendant files the notice of removal."). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Hum. Affs. Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (internal quotation marks omitted). If at any time it appears that the district court lacks subject matter jurisdiction because there is not complete diversity among the parties, the case must be remanded back to state court. 28 U.S.C. § 1447(c).

### B. Sanctions

Federal Rule of Civil Procedure 11(b) provides that:

[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). A pleading or motion violates Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). Rule 11 sanctions may also be imposed where an attorney's "behavior was objectively unreasonable." *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (internal quotation marks omitted), *aff'd in*

*part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d Cir. 2015) (summary order). If a party is found to have violated Rule 11, they may be subject to sanctions. Fed. R. Civ. P. 11(c).

Rule 11 also sets forth certain procedural requirements. Rule 11 requires that "[a] motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2). This provision is commonly known as the "safe harbor provision."[4] *Garcia v. Bilotta*, No. 23-CV-4146, 2025 WL 2614071, at *3 (S.D.N.Y. Sept. 10, 2025).

Courts have wide discretion in deciding when sanctions are appropriate. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("[S]anctions under Rule 11 are discretionary, not mandatory."). Rule 11 sanctions should be granted with caution and applied only when "a particular allegation is utterly lacking in support." *In re Highgates Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (internal quotation marks omitted).

After determining that sanctions are appropriate, courts wield "'significant discretion in determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.'" *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes).

---

[4] Defendant complied with the safe harbor provision because "on February 26, 2025, Evanston served Plaintiffs' Counsel via email and first class mail with a letter providing the notice required by Rule 11(c)(2), explaining that Plaintiffs Complaint and Motion for Remand in this action violates Rule 11(b) and attaching Evanston's Draft Notice of Motion and Draft Memorandum of Law in Support of this Motion for Sanctions." (Doc. 14 at 1; *see also* Doc. 15-1 (Feb. 26, 2025 letter from Defendant's counsel to Plaintiffs' counsel advising that Defendants will file a motion for sanctions and attaching a Notice of Motion and Memorandum of Law).) Twenty-three days later, Defendant filed the motion for sanctions. (*See* Doc. 14.)

### III.   Discussion

#### A. Remand

The basis of Plaintiffs' remand motion is the citizenship of Defendant, an insurance company.  Plaintiffs are citizens of New York and Evanston is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business in Rosemont, Illinois.  (Compl. ¶¶ 1–2.)  However, Plaintiffs argue that Evanston (an Illinois corporation) is also a citizen of New York because its insured, Chai, is a citizen of New York[5] and Chai's citizenship should be imputed to Evanston.  (Doc. 8 at 4, ¶ 9 ("the citizenship of defendants is New York, based on their insured's citizenship"); *id.* at 8–9 ("CHAI LIFELINE'S non-diverse citizenship is imputed to [Evanston], maintaining the lack of complete diversity necessary for federal subject matter jurisdiction.").)  Plaintiffs claim that this case is a "direct action" within the meaning of 28 U.S.C. § 1332(c)(1), (*id.* at 4), which provides that in such a suit, an insurer is deemed a citizen of the state of which the insured is a citizen.

A "direct action" refers to those cases "where the insurer's responsibility to the injuring party is already established, so that the injured party, in suing the insurer directly, is simply 'cutting out the middle man.'"  *Curet v. United Nat. Ins.*, 785 F. Supp. 2d 440, 443 (S.D.N.Y. 2011); *see also In re Johns-Manville Corp.*, 759 F.3d 206, 209 n.2 (2d Cir. 2014) ("A direct action is a lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured.").  "For insurance companies, where 'an injured party . . . [brings] a tort action directly against an insurer' in order to bypass litigating against 'the alleged tortfeasor insured as a party-defendant," the citizenship of an insured is

---

[5] It is unclear from the documents in the record whether Chai is a corporation organized and existing under the laws of New York and whether its principal place of business is in New York.  However, neither party disputes that Chai's citizenship is New York.  (Doc. 8 at 4, ¶ 5 ("CHAI LIFELINE is a New York resident[.]"); Doc. 11 at 1 ("Plaintiffs nonetheless seek remand, arguing that Chai's New York citizenship should be imputed to Evanston…").)

imputed to an insurer.'"  *Robinson v. Sedgwick Claims Mgmt. Serv.*, No. 24-CV-3152, 2024 WL 3696369, at *3 n.4 (S.D.N.Y. July 31, 2024) (quoting *Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 672 (2d Cir. 1992)).  "[S]imply because an insurer is a direct party does not make the litigation a 'direct action.'"  *Rosa*, 981 F.2d at 674.  The Second Circuit has held that "the general rule is that the proviso [of § 1332(c)] does not affect suits against the insurer based on its independent wrongs[,] such as actions brought against the insurer either by the insured for failure to pay policy benefits or by an injured third party for the insurer's failure to settle within policy limits or in good faith."  *Id.* at 675.  Thus, "unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action."  *Id.* (internal quotation marks omitted).

This action is not a "direct action" against an insurer in which the special rules of diversity jurisdiction in 28 U.S.C. § 1332(c)(1)(A) apply because Plaintiffs are seeking declaratory relief related to the alleged actions of Defendant, and not the actions of Chai.  (*See* Compl. 11.)  Specifically, Plaintiffs are suing Evanston for Evanston's own alleged wrongdoing in denying coverage and breaching its contract with Chai, not for the alleged actions of the insured, Chai.  (*See id.* (seeking a declaratory judgment against Evanston as follows:  (1) "declaring that Plaintiff is entitled to $1,000,000.00 of coverage under the terms of the insurance agreement as a claimant against CHAI LIFELINE and the Defendant" and (2) "declaring that Defendant is in breach of the insurance agreement, that it is material and continuing, Plaintiff suffered severe and permanent injuries and is entitled to monetary damages all in excess of the jurisdictional limits, which is continuing, plus pre- and post-judgment interest, attorneys' fees, costs, and other disbursements incurred in connection with this action.").)  "Accordingly, [this] is an 'action[ ] brought against the insurer . . . for failure to pay policy benefits,' precisely the kind

8

of action the Second Circuit held is *not* a 'direct action' under [the] section 1332(c) proviso." *Curet*, 785 F. Supp. 2d at 443 (quoting *Rosa*, 981 F.2d at 675) (emphasis in original).  "Because this lawsuit was brought to remedy [Evanston's] failure to provide coverage" to Plaintiffs, and Defendant's alleged breach of contract related to its Policy with its insured, Chai, "it falls beyond the scope of a 'direct action' for purposes of diversity jurisdiction." *Catlin Ins. Co. v. Sentinel Ins. Co., Ltd.*, No. 23-CV-5355, 2024 WL 3445057, at *3 (S.D.N.Y. July 17, 2024).  *See also Curet*, 785 F. Supp. 2d at 443 (determining that the action was not a "direct action" because it was "the insured's allegedly wrongful disclaimer that [wa]s in issue.  Specifically, the gravamen of the [] complaint [wa]s that defendants failed to pay the insured sums it was legally obligated to pay under the terms of the Policy."); *Mittlefehldt v. Travelers Prop. Cas. Ins.*, No. 21-CV-497, 2021 WL 4994034, at *3 (W.D.N.Y. Aug. 24, 2021) ("Where, as here, an action seeks a declaration that the insurance company improperly disclaimed coverage, the action is not a direct action."), *report and recommendation adopted*, 2021 WL 4993335 (W.D.N.Y. Oct. 26, 2021); *Robinson*, 2024 WL 3696369, at *3 n.4 (rejecting the plaintiff's attempt to impute the citizenship of an insured employer onto an insurance company because the plaintiff "appears to be suing the insurer and claims administrator for their own alleged wrongdoing, not for the alleged torts of the insured employer").

Thus, because the Complaint alleges misconduct by Defendant due to its contractual liability, instead of any misconduct that could be asserted against Chai, it is not a direct action against Defendant.  Indeed, the declaratory judgment requested here—(1) "declaring that Plaintiff is entitled to $1,000,000.00 of coverage under the terms of the insurance agreement as a claimant against CHAI LIFELINE and the Defendant" and (2) "declaring that Defendant is in breach of the insurance agreement, that it is material and continuing, Plaintiff suffered severe and

permanent injuries and is entitled to monetary damages all in excess of the jurisdictional limits, which is continuing, plus pre- and post-judgment interest, attorneys' fees, costs, and other disbursements incurred in connection with this action," (Compl. 11)—could not be imposed on Chai, and is therefore not a direct action.

Given that Plaintiffs are citizens of New York and Defendant is a citizen of Illinois, the parties are diverse, and Plaintiffs seek a judgment against Defendant declaring that Plaintiffs are entitled to $1,000,000 in coverage under the terms of the Policy, (Compl. 11), I have subject matter jurisdiction.  *See* 28 U.S.C § 1332.  Thus, Plaintiffs' remand motion is DENIED, and I find that Defendant's removal of this action to federal court based on diversity jurisdiction was proper.

### B.  Sanctions

Defendant filed a sanctions motion against Plaintiffs' counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure, contending that the Complaint and remand motion are frivolous and meritless because Plaintiffs' counsel ignored arguments that were contrary to well-established controlling law.  (Doc. 16 at 1–2.)  Moreover, Defendant states that the Complaint and remand motion are "particularly egregious" because they were filed after Defendant's counsel advised Plaintiffs' counsel of statutory and legal authority prohibiting their filing.  (*Id.* at 2–3.)

First, Defendant states that "after this action was removed by Evanston to this Court, during a telephone conversation regarding scheduling, Plaintiffs' Counsel advised that he planned to move to remand this action to State Court on the basis that this action is a 'direct action' under 28 U.S.C. § 1334(c), such that Evanston stands in the shoes of its insured (Chai) for purposes of diversity jurisdiction.  Evanston's counsel noted that [28 U.S.C. § 1334(c)] does

10

not apply because Plaintiffs had not yet obtained a judgment against Chai in the [Chai Lawsuit]," which Defendant advised was necessary to obtain prior to bringing any action against Evanston. (Doc. 16 at 1–2.)

Second, Defendant states that it further notified Plaintiffs, prior to the filing of the instant action in state court, that pursuant to the terms of the Policy and well-established law, New York Ins. Law § 3420 ("§ 3420"), Plaintiffs' declaratory judgment lawsuit could not be brought against Evanston prior to obtaining a judgment against Chai. (*See* Doc. 16 at 1–4; *see also* Doc. 15-6 (Nov. 15, 2024 letter from Defendant's counsel to Plaintiffs' counsel advising that their proposed declaratory judgment action is "without merit" and "frivolous" because "New York law is clear that plaintiffs in a personal injury action do not have standing to sue a defendant/tortfeasor's insurer directly unless the injured party has first obtained a judgment against the tortfeasor that remains unsatisfied for 30 days" (citing § 3420)).) Defendant's November 15, 2024 letter to Plaintiffs' counsel cited *Lang v. Hanover Ins. Co*., 820 N.E.2d 855 (N.Y. 2004), and noted that *Lang* held "that compliance with the requirements of N.Y. Ins. Law § 3420 is a condition precedent to any injured third-party's direct action against an insurance company, including an action for declaratory relief." (Doc. 15-6 at 2.) Defendant's letter also explained that the Policy "also prohibits a direct claim against Evanston by third parties prior to a judgment against" Chai. (*Id.*) Despite Defendant's letter, Plaintiffs filed the declaratory judgment action in New York state court approximately two weeks later on December 2, 2024, without a judgment against Chai in the Chai Lawsuit. (*See* Doc. 5-1.)

I briefly summarize the parties' correspondence regarding the issues of diversity and whether a judgment is required prior to initiating an action. After Defendant provided Plaintiffs' counsel with a letter giving notice of its forthcoming sanctions motion on February 26, 2025,

11

(Doc. 15-1), Plaintiffs' counsel sent a letter to Defendant's counsel on March 14, 2025, (Doc. 15-7), setting forth its position that the instant declaratory action is appropriate to determine Plaintiffs' rights and coverage under the Policy based on, among other reasons, two New York state court decisions—*Watson v. Aetna Cas. & Sur. Co.*, 675 N.Y.S.2d 367 (2d Dep't 1998) and *Mortillaro v. Pub. Serv. Mut. Ins. Co.*, 728 N.Y.S.2d 185 (2d Dep't 2001)—both decided before *Lang*, 820 N.E.2d 855.  (Doc. 15-7 at 2–3.)  Plaintiffs stated that these cases distinguished between a direct action against an insurer to recover an unsatisfied judgment and an action against an insurer to determine the rights and obligations of the respective parties, including an action to declare issues of defense and indemnification, which *Watson* and *Mortillaro* determined were permissible challenges prior to obtaining judgment against the policyholder.  (Doc. 15-7 at 2–3.)  Plaintiffs asserted that the latter is the case here because the Policy is ambiguous as to the coverage it provides for each claimant and the erosion of a claimant's coverage limit.  (*Id.* at 3.)  Plaintiffs further noted that their position is supported by *Tenkate v. Moore*, 711 N.Y.S.2d 587 (3d Dep't 2000), another case decided before *Lang*, 820 N.E.2d 855, which permitted a declaratory action against an insurer pursuant to C.P.L.R. § 3001 "to determine if they had a duty to defend, prior to any judgment, when the court denied their motion for summary judgment."  (Doc. 15-7 at 3.)  With regard to the question of diversity, Plaintiffs asserted, without any citations to statute or caselaw, that it is their "position that both Federal and New York law sets forth that there is no diversity as the insurance company steps in the shoes of the insured."  (*Id.*)

On March 17, 2025, Defendant's counsel responded to Plaintiffs' counsel's letter and pointed out that, except for two cases which are factually dissimilar, all of the cases cited in Plaintiffs' letter were issued prior to the *Lang* decision.  (*See* Doc. 15-8 at 1.)  Defendant also referred Plaintiffs to the case law cited in the memorandum of law in opposition to the remand

12

motion, draft memorandum of law in support of its forthcoming sanctions motion, and March 7, 2025 letter motion with Evanston's proposed sur-reply in opposition to Plaintiffs' remand motion. (*Id.* at 2.)

On March 18, 2025, Plaintiffs' counsel responded and reiterated their point that "[t]his is a Direct Action to get a decision on the meaning of the language within the [P]olicy" and attempted to distinguish *Lang* because *Lang* "deals with a Plaintiff attempting to get a determination of whether [the insurer] has to indemnify and defend the party Defendant, [whereas Evanston] has already agreed to coverage." (Doc. 15-9 at 1.) Plaintiffs' counsel asserted that "this is not a case in which Plaintiff seeks a money judgment from [Evanston], rather it is a determination on the coverage pursuant to the language of the [P]olicy." (*Id.*) I note, however, that the Complaint seeks a judgment declaring that "Plaintiff is entitled to $1,000,000.00 of coverage under the terms of the insurance agreement as a claimant" and that "Defendant is in breach of the insurance agreement, that it is material and continuing, Plaintiff suffered severe and permanent injuries and is entitled to monetary damages." (Compl. 11.)

### 1.  New York Insurance Law § 3420

Defendant argues that Plaintiffs' counsel did not conduct a reasonable inquiry into New York law regarding "the right of an injured person (here, the Does) to bring an action against the insurer (here, Evanston) of an alleged tortfeasor (here, Chai), in connection with an insurance policy issued to the alleged tortfeasor, [which] would have educated Plaintiffs' Counsel that Plaintiffs have no standing to bring this action. The Policy also expressly prohibits this action." (Doc. 16 at 8.) Moreover, Defendant points out that Plaintiffs' counsel proceeded to commence this action in state court despite Defendant's counsel's letter asserting that commencing such an action is prohibited prior to obtaining a judgment against the insured pursuant to New York law

13

and the language of the Policy. (*Id.* at 8–9; *see also* Doc. 15-6 (Nov. 15, 2024 letter from Defendant's counsel to Plaintiffs' counsel).)

As Defendant's counsel correctly pointed out in its March 17, 2025 letter to Plaintiffs' counsel, (Doc. 15-8), the 1998 decision in *Watson*, 675 N.Y.S.2d 367, and the 2001 decision in *Mortillaro*, 728 N.Y.S.2d 185, as well as several of the other cases cited in Plaintiffs' counsel's March 14, 2025 letter, (Doc. 15-7), predate the decision of the New York Court of Appeals in *Lang*, 820 N.E.2d 855. "*Lang* resolved a split among New York's Appellate Divisions concerning whether an injured third party could bring an action against an insurer for declaratory relief to determine whether the insurer owed a defense or coverage under a policy, notwithstanding Section 3420's conditions precedent to a similar action for damages. . . . The Second Department had permitted a declaratory judgment action on the basis that, 'because Section 3420 does not prohibit a declaratory judgment action, such action [was] therefore permitted.' . . . By contrast, the First and Fourth Departments, along with [the Eastern District of New York] in *Vargas* [*v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92 (E.D.N.Y. 2003)], did not permit such actions, reasoning that New York common law does not recognize such actions, that an injured third party's cause of action against an insurer exists solely by virtue of Section 3420, and that strict compliance with the requirements set forth in Section 3420(a)(2) (entry of a judgment and a thirty day waiting period) is a condition precedent to such an action." *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266, 2014 WL 672926, at *5 (E.D.N.Y. Feb. 20, 2014) (quoting *Vargas*, 269 F. Supp. 2d at 97 (E.D.N.Y. 2003)); *see also Vargas*, 269 F. Supp. 2d at 95 (noting that "[a]lthough the Third Department has not addressed this precise issue, it has in *dicta* cited, with approval, to the First Department's leading case on this matter" and "[a]s such, the greater weight of authority in the New York Appellate

14

Divisions favors the position of" the insurer that a third party cannot bring a direct action against an insurer until after an entry of judgment. (citing *State v. Fed. Ins. Co.*, 594 N.Y.S.2d 445, 446 n. 1 (3d Dep't 1993))). "The *Lang* decision . . . determined that compliance with the requirements of Section 3420(a)(2) is a condition precedent to any direct action against the insurance company. Thus, under *Lang*, an injured third party has no cause of action against an insurer at common law, but may bring such an action under Section 3420 so long as the plaintiff has met the conditions precedent set forth in Section 3420(a)(2)." *Id.* at *5 (citing *Lang*, 820 N.E.2d 855). Even before the *Lang* decision was issued, the court in *Vargas* expressly declined to follow the Second Department cases, including *Watson* and *Mortillaro*, because, among other reasons, the Second Department did "not follow the plain meaning of Section 3420. Rather, it reads into the statute a right on behalf of a third party—absent a judgment against an insured—to bring a declaratory judgment action against an insurer where the legislature has not expressly authorized this right. . . . Section 3420 creates a statutory cause of action where one did not exist under common law. As such, the statute is strictly construed and does not create any rights which are not expressly provided in it." 269 F. Supp. 2d at 96–97 (internal citation omitted) (holding that the plaintiff lacked standing to bring a declaratory judgment action against an insurance company, absent a judgment against an insured).

Despite the apparent requirement of a judgment to bring an action under § 3420, Plaintiffs argue that "Defendants' allegations that Plaintiffs['] Declaratory Judgment action is barred by CPLR [sic] § 3420 . . . is inapposite" because "CPLR § 3001 provides that a party not in privity may seek a declaratory judgment from a court to determine insurance policy language when, as here, that policy language is ambiguous." (Doc. 19 at ¶¶ 4–5.) Thus, Plaintiffs argue that because they "seek only such declaratory relief, and do not seek any monetary

15

indemnification (pursuant to CPLR § [sic] 3420 or otherwise) from Defendants, CPLR § 3001, rather than CPLR [sic] § 3420, controls."  (*Id.* ¶ 6.)

Plaintiffs' § 3001 argument is not supported by the law.  *Lang* "held that the requirements for relief under Section 3420 apply to a declaratory judgment action under state law." *Zyburo v. Cont'l Cas. Co.*, 60 F. Supp. 3d 531, 534 (S.D.N.Y. 2014) (citing *Lang*, 820 N.E.2d 855). Notably, the New York Court of Appeals specifically held that reliance on CPLR 3001 in circumstances such as those at issue here is "misplaced."  *Lang*, 820 N.E.2d at 858.  The *Lang* Court noted that "nothing in the language of CPLR 3001 alters the precedent regarding an injured party's standing to sue a tortfeasor's insurer.  Plaintiff has no common-law right to seek relief directly from a tortfeasor's insurer, and the statutory right created in [NY] Insurance Law §3420 arises only after plaintiff has obtained a judgment in the underlying personal injury action."  *Id.*  Thus, because the plaintiff "did not obtain a judgment against . . . the alleged tortfeasor," the court held that "[h]aving failed to fulfill the condition precedent to suit, plaintiff could not pursue a direct action against [the insurer]."  *Id.*

Thus, Plaintiffs' exclusive reliance on pre-*Lang* cases and contention that § 3420 is irrelevant is misplaced.  The court in *Commonwealth Land Title Insurance Company* addressed the exact issue presented here, holding that "under *Lang*, an injured third party has no cause of action against an insurer at common law, but may bring such an action under Section 3420 so long as the plaintiff has met the conditions precedent set forth in Section 3420(a)(2). . . . By contesting the application of Section 3420, plaintiffs appear to misconstrue Section 3420 as a limitation on direct actions by injured third parties against insurers.  In essence, plaintiffs rely on pre-*Lang*, Second Department law, according to which actions by third parties against insurers that were not specifically limited by Section 3420 were otherwise permitted."  2014 WL 672926,

16

at *5–6.  As relevant here, § 3420 only creates a statutory right after a judgment against the insured.  *Id.*

The law is clear that "[t]he appropriateness of sanctions is distinct from the underlying merits of a claim."  *Rothenhaus*, 252 F.R.D. at 179; *see also Young v. Suffolk Cnty.*, 922 F. Supp. 2d 368, 397 (E.D.N.Y. 2013) (denying a sanctions motion "even though the basis for this lawsuit was extremely thin" (collecting cases)); *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim.  However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90-CV-8280, 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the Court deems premature, or ill-advised, or weak."); *see generally Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (warning against the use of "hindsight logic" that "because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation").  "Rule 11 motions should not be used 'to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.'"  *Rothenhaus*, 252 F.R.D. at 179 (quoting the Rule 11 Advisory Committee Note to the 1993 amendments).  "Thus, not all unsuccessful legal arguments are frivolous or warrant sanction."  *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990).  "As noted, the question of whether sanctions are appropriate under Rule 11 is an inquiry separate and distinct from a resolution of the underlying merits of a claim."  *Hines v. Experian Info. Sols., Inc.*, No. 24-CV-4641, 2025 WL 2555555, at *7 (E.D.N.Y. Sept. 5, 2025) (citing *Rothenhaus*, 252 F.R.D. at 179).  Thus, whether Plaintiffs can bring this lawsuit against Defendant under NY

Insurance Law § 3420 is not at issue in the sanctions motion and it would be inappropriate to decide this question in connection with the sanctions motion.

Although Defendant's counsel seems to suggest otherwise, I do not hold that Plaintiffs' counsel—who cited caselaw and other documents in support of his claims, (*see* Doc. 15-7; Doc. 15-9; Doc. 19)—lacked a reasonable basis to bring this action or that doing so was sanctionable. *See, e.g.*, *Mareno*, 910 F.2d at 1047 ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction.  Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against.").  I have no reason to believe that Plaintiffs' counsel brought this action in "bad faith," or that it was "frivolous" or "legally unreasonable" to bring this action, *Wechsler*, 216 F. Supp. 2d at 356, because Plaintiffs' counsel made several arguments in support of Plaintiffs' position, including attempting to distinguish *Lang* and other cases to argue that the cases Defendant cites in opposition to the remand motion are inapplicable, (*see* Doc. 15-7; Doc. 15-9; Doc 19 at ¶¶ 15–24).  *See In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 267 (S.D.N.Y. 2010) (denying a sanctions motion because, among other reasons, "in opposition to the motion to dismiss, the lead plaintiff made a nonfrivolous argument for extending, modifying, or reversing existing law insofar as it attempted to distinguish the key authorities relied upon by defendant[]" (internal quotation marks omitted)).  Thus, the sanctions motion related to Plaintiffs commencing the action after Defendant's counsel made Plaintiffs' counsel aware of the statutory requirement in NY Insurance Law § 3420 is DENIED.

### 2.  The Policy

Defendant also argues that a reasonable inquiry into the interpretation of the Policy would have revealed that Plaintiffs' position that coverage should not be eroded by payments made to unrelated claims "is contradicted by the plain language of the Policy" and courts "have

recognized that similar policy provisions are not ambiguous." (Doc. 16 at 10–11.) The Policy

provides, in relevant part:

> **F. Limits of Liability – Sexual Acts Liability Coverage:** The total liability of [Evanston] for the combined total of Damages and Claim Expenses for all Claims under the Sexual Liability Coverage insured herein is:
>
> 1. $1,000,000 All Claims Made by Each Claimant.
>
> 2. $1,000,000 All Claims under the Sexual Acts Liability Coverage.
>
> **G. Multiple Sexual Acts:** Two or more Sexual Acts against one person shall be deemed to be one Sexual Act and shall be subject to the coverage and limits in effect at the time of the first Sexual Act.

(Doc. 5-2 at 43 § I.5.F–G.) Plaintiffs' position is that the language of the Sexual Acts Liability

Endorsement of the Policy is ambiguous because it provides for two coverage options: (1)

"$1,000,000 All Claims Made by Each Claimant" and (2) "$1,000,000 All Claims under Sexual

Acts Liability Coverage." (Doc. 19 at ¶¶ 33–35; *see also* Doc. 15-7 at 3 (asserting that the

Policy "provides for $1,000,000.00 of coverage per claimant or $1,000,000.00 for all claims

under the Sexual Acts coverage" and that "[t]here is no conjunction that provides that a claimant,

by themselves is not entitled to $1,000,000.00 of coverage").) Therefore, Plaintiffs assert that

the Policy provides that "each claimant, individually, is entitled to $1,000,000 for their claims"

and "[t]here is no exclusion from multiple claims by multiple claimants." (Doc. 19 at ¶ 35

(emphasis omitted).) In contrast, Defendant contends that the "plain language of the Policy"

makes clear that it is an eroding policy and that there is only a total of $1,000,000 of coverage

for all claims made against Chai, *i.e.*, the $1,000,000.00 of coverage is an aggregate limit,

regardless of the number of claims, and is reduced by payments for expenses and settlements in

unrelated actions. (Doc. 16 at 10–11.) Defendant cites several out-of-Circuit cases for the

proposition that "[c]ourts recognize that limits expressed in terms of the total liability of the

19

insurer for all matters under a particular coverage is the maximum amount that the insurer will pay regardless of the number of claims." (*Id.* at 11 (internal quotation marks omitted).)

Without weighing in on whether either party would ultimately prevail on the coverage issue, Plaintiffs' counsel's interpretation of the Policy is not so "frivolous, legally unreasonable, or factually without foundation." *Wechsler*, 216 F. Supp. 2d at 356. Accepting for the sake of the sanctions motion but not making a legal determination regarding the language of the Policy, if Plaintiffs are incorrect about the interpretation of the Policy, Plaintiffs' theories would be "grounded in an incorrect understanding of the effect of [the Sexual Acts Liability Coverage in the Policy] but [Plaintiffs] nonetheless relied on the facts of the parties' contractual relationship. [Plaintiffs] also made arguments derived from established case law." *Bridgeton 396 Broadway Fee LLC v. Anthony T. Rinaldi LLC*, No. 20-CV-02052, 2020 WL 5983205, at *4 (S.D.N.Y. Oct. 8, 2020). Even if I ultimately reject Plaintiffs' arguments, which I do not do here, "sanctions are not appropriate simply because a party is incorrect. 'Merely incorrect legal statements are not sanctionable under Rule 11(b)(2).'" *Id.* (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003)). Thus, the sanctions motion related to Plaintiffs commencing the action despite the language in the Policy is denied.

### 3. "Direct Action" Under 28 U.S.C. § 1332(c)

With regard to the direct action issue, Defendant argues that Plaintiffs' counsel did not conduct a reasonable inquiry into the application of the term "direct action" as used in § 1332(c), which "would have revealed that the term 'direct action' . . . is interpreted narrowly . . . [and] does not apply to actions against insurers for their own misconduct." (Doc. 16 at 12.) In contrast, Plaintiffs asserts that Defendant's argument is "without merit" and a "disingenuous attempt to rehash their arguments on the diversity issue." (Doc. 19 at ¶ 65.) Plaintiffs argue that this action is a "direct action" because Plaintiffs have a "legitimate basis" for a "judicial

20

determination on the language of the [P]olicy," which Plaintiffs assert is "permitted pursuant to §3001, whereas §3420 is not applicable." (*Id.* ¶¶ 71–72, 75.)

I have no reason to believe that the legal arguments made in the motion to remand concerning the "direct action" provision of 28 U.S.C. § 1332(c), were "made in bad faith [or] with knowledge that the argument was wholly without merit. Moreover, there is no basis to conclude that the motion was frivolous from a legal standpoint, as [Plaintiffs'] counsel made several arguments in favor of granting the motion to [remand] and attempted to cite case law in support of [Plaintiffs'] position. Finally, the fact that [I] rejected the arguments and denied the motion to [remand] does not warrant the imposition of sanctions in this case." *U.S. Underwriters Ins. Co. v. Ziering*, No. 06-CV-1130, 2010 WL 3419666, at *10 (E.D.N.Y. Aug. 27, 2010). Although I determined that the remand motion was without merit, I do not view the motion to have been submitted in bad faith. Indeed, there is no evidence that the direct action "argument, while incorrect, is anything other than a good-faith misreading of the case law," *Bilotta*, 2025 WL 2614071, at *8, and the arguments that Plaintiffs made in the motion to remand, "however faulty, were not so untenable as a matter of law as to necessitate sanction," *Mareno*, 910 F.2d at 1047. Thus, the motion for sanctions related to Plaintiffs' counsel filing the remand motion after Defendant's counsel made it aware of caselaw regarding § 1332(c)'s narrow interpretation is DENIED.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' motion to remand this action to the New York County Supreme Court is DENIED, Defendant's motion for leave to file a sur-reply is DENIED, and Defendant's motion for sanctions is DENIED.

21

Within 30 days of the issuance of this Opinion & Order, the parties shall submit a status update as to the Chai Lawsuit in New York state court and shall also submit briefing on the issue of standing pursuant to NY Insurance Law § 3420.  Specifically, the briefing shall address whether Plaintiffs' lawsuit, seeking a declaratory judgment against Defendant as to the insurance policy at issue, is premature prior to obtaining judgment in the Chai Lawsuit.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 8, 13, and 14.

SO ORDERED.

Dated: April 17, 2026
      New York, New York

Vernon S. Broderick
United States District Judge